1  Alan Gura (Calif. Bar No. 178221)
   Gura & Possessky, PLLC
2  101 N. Columbus St., Suite 405
   Alexandria, VA 22314
3  703.835.9085/Fax 703.997.7665

4  Donald E.J. Kilmer, Jr. (Calif. Bar No. 179986)
   Law Offices of Donald Kilmer, A.P.C.
5  1645 Willow Street, Suite 150
   San Jose, CA 95125
6  408.264.8489/Fax 408.264.8487

7
                    IN THE UNITED STATES DISTRICT COURT
8
                   FOR THE EASTERN DISTRICT OF CALIFORNIA
9

10     Adam Richards, et al.,                    )    Case No. 2:09-cv-01235-MCE-KJM
                                                 )
11           Plaintiffs,                         )    MEMORANDUM OF POINTS
                                                 )    AND AUTHORITIES IN SUPPORT
12           v.                                  )    OF PLAINTIFFS' MOTION FOR
                                                 )    SUMMARY JUDGMENT
13     Ed Prieto, et al.,                        )
                                                 )    Date:   February 10, 2011
14           Defendants.                         )    Time:   2:00 p.m.
       _____       )    Courtroom 7
15
              MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
16                 PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

17          COME NOW the Plaintiffs, Adam Richards, Brett Stewart, Second Amendment

18   Foundation, Inc., and The Calguns Foundation, Inc., by and through undersigned counsel, and

19   submit their Memorandum of Points and Authorities in Support of their Motion for Summary

20   Judgment.

21          Dated: January 13, 2011                  Respectfully submitted,

22   Donald E.J. Kilmer, Jr. (Calif. Bar No. 179986)  Alan Gura (Calif. Bar No. 178221)
     Law Offices of Donald Kilmer, A.P.C.             Gura & Possessky, PLLC
23   1645 Willow Street, Suite 150                    101 N. Columbus St., Suite 405
     San Jose, CA 95125                               Alexandria, VA 22314
24   408.264.8489/Fax 408.264.8487                    703.835.9085/Fax 703.997.7665
     E-Mail: Don@DKLawOffice.com
25
       By:  /s/ Donald E.J. Kilmer, Jr.         By:   /s/ Alan Gura
26          Donald E.J. Kilmer, Jr.                   Alan Gura

27                                                   Attorneys for Plaintiffs

28

1

# TABLE OF CONTENTS

2  Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

3  Preliminary Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

4  Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

5  Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

6  Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

7          I.      The Second Amendment Protects The Right To Carry Functional
                   Handguns For Self-Defense. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
8
           II.     California Has Selected Concealed Carrying As The Permissible Mode of
9                  Exercising The Right To Arms. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

10         III.    The Second Amendment Forbids Conditioning Gun Carry Licenses On
                   Demonstration of"Good Cause" or "Good Moral Character" . . . . . . . . . . . . . . 11
11
           IV.     "Good Cause" and "Good Moral Character" Requirements Violate the
12                 Right to Equal Protection. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

13  Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TABLE OF AUTHORITIES

Cases

*Andrews* v. *State*,
    50 Tenn. 165 (1871). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Ashcroft* v. *ACLU*,
    542 U.S. 656 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Aymette* v. *State*,
    21 Tenn. 154 (1840). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Baby Tam & Co.* v. *City of Las Vegas*,
    154 F.3d 1097 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Bayside Enterprises, Inc.* v. *Carson*,
    450 F. Supp. 696 (M.D. Fla. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Beal* v. *Stern*,
    184 F.3 117 (2d Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Berger* v. *City of Seattle*,
    569 F.3d 1029 (9th Cir. 2009) (en banc). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Broadway Books, Inc.* v. *Roberts*,
    642 F. Supp. 486 (E.D.Tenn. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Cantwell* v. *Connecticut*,
    310 U.S. 296 (1940). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Cent. Hudson Gas & Elec. Corp.* v. *Public Serv. Comm'n*,
    447 U.S. 557 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Chesapeake B & M, Inc.* v. *Harford County*,
    58 F.3d 1005 (4th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Citizens United* v. *FEC*,
    130 S. Ct. 876 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*City of Cleburne* v. *Cleburne Living Center*,
    473 U.S. 432 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*City of Lakewood* v. *Plain Dealer Publishing Co.*,
    486 U.S. 750 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*City of Las Vegas* v. *Moberg*,
    485 P.2d 737 (N.M. Ct. App. 1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Clark* v. *City of Lakewood*,
    259 F.3d 996 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Clark* v. *Jeter*,
    486 U.S. 456 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Commonwealth v. Blanding,*
    20 Mass. 304 (1825) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Desert Outdoor Advertising v. City of Moreno Valley,*
    103 F.3d 814 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Diamond v. City of Taft,*
    29 F. Supp. 2d 633 (C.D. Cal. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*District of Columbia v. Heller,*
    128 S. Ct. 2783 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Elam v. Bolling,*
    53 F. Supp. 2d 854 (W.D.Va. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Erdelyi v. O'Brien,*
    680 F.2d 61 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Forsyth County v. Nationalist Movement,*
    505 U.S. 123 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*FW/PBS v. City of Dallas,*
    493 U.S. 215 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Gaudiya Vaishnava Society v. City of San Francisco,*
    952 F.2d 1059 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Genusa v. Peoria,*
    619 F.2d 1203 (7th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Guillory v. County of Orange,*
    731 F.2d 1379 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Hague v. Committee for Indus. Org.,*
    307 U.S. 496 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Harper v. Virginia Board of Elections,*
    383 U.S. 663 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hussey v. City of Portland,*
    64 F.3d 1260 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Application of McIntyre,*
    552 A.2d 500 (Del. Super. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Brickey,*
    70 P. 609 (Idaho 1902) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Kellogg v. City of Gary,*
    562 N.E.2d 685 (Ind. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Kunz v. New York,*
    340 U.S. 290 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Largent* v. *Texas,*
  318 U.S. 418 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

*Long Beach Area Peace Network* v. *City of Long Beach,*
  574 F.3d 1011 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

*Louisiana* v. *United States,*
  380 U.S. 145 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*McDonald* v. *City of Chicago,*
  130 S. Ct. 3020 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 17

*MD II Entertainment* v. *City of Dallas,*
  28 F.3d 492 (5th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Mom N Pops, Inc.* v. *City of Charlotte,*
  979 F. Supp. 372 (W.D.N.C. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Muscarello* v. *United States,*
  524 U.S. 125 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*N.J. Envtl. Fed'n* v. *Wayne Twp.,*
  310 F. Supp. 2d 681 (D.N.J. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Nat'l Fed'n of the Blind* v. *FTC,*
  420 F.3d 331 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Niemotko* v. *Maryland,*
  340 U.S. 268 (1951). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Nunn* v. *State,*
  1 Ga. 243 (1846). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-8, 16

*Ohio Citizen Action* v. *City of Mentor-On-The-Lake,*
  272 F. Supp. 2d 671 (N.D. Ohio 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Ohio Citizen Action* v. *City of Seven Hills,*
  35 F. Supp. 2d 575 (N.D. Ohio 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Parker* v. *District of Columbia,*
  478 F.3d 370 (D.C. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

*Peruta* v. *County of San Diego,* __ F. Supp. 2d __,
  2010 U.S. Dist. LEXIS 130878 (S.D. Cal. Dec. 10, 2010). . . . . . . . . . . . . . . . . . . . 9

*R.W.B. of Riverview, Inc.* v. *Stemple,*
  111 F. Supp. 2d 748 (S.D.W.Va. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Respublica v. Oswald,*
  1 U.S. (1 Dall.) 319 (Pa. 1788) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Robertson* v. *Baldwin,*
  165 U.S. 275 (1897). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Salute* v. *Pitchess*,
      61 Cal. App. 3d 557 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Schneider* v. *New Jersey (Town of Irvington)*,
      308 U.S. 147 (1939). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

*Shuttlesworth* v. *Birmingham*,
      394 U.S. 147 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13-15

*Simon & Schuster, Inc.* v. *N.Y. State Crime Victims Bd.*,
      502 U.S. 105 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*State ex rel. City of Princeton* v. *Buckner*,
      377 S.E.2d 139 (W. Va. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*State* v. *Chandler*,
      5 La. Ann. 489 (1850). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 16

*State* v. *Delgado*,
      692 P.2d 210 (Or. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*State* v. *Kerner*,
      107 S.E. 222 (N.C. 1921). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*State* v. *Reid*,
      1 Ala. 612 (1840). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 16

*State* v. *Rosenthal*,
      55 A. 610 (Vt. 1903). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Staub* v. *City of Baxley*,
      355 U.S. 313 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 15

*Tom T., Inc.* v. *City of Eveleth*,
      2003 U.S. Dist. LEXIS 3718 (D. Minn. March 11, 2003). . . . . . . . . . . . . . . . . . . . . 15

*United States* v. *Carolene Products Co.*,
      304 U.S. 144 (1938). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States* v. *Chester*, __ F.3d __,
      2010 U.S. App. LEXIS 26508 (4th Cir. Dec. 30, 2010). . . . . . . . . . . . . . . . . 6, 11, 18

*United States* v. *Emerson*,
      270 F.3d 203 (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States* v. *Engstrum*,
      609 F. Supp. 2d 1227 (D. Utah 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States* v. *Everist*,
      368 F.3d 517 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States* v. *Marzzarella*,
      614 F.3d 85 (3d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States* v. *Skoien*,
 614 F.3d 638 (7th Cir. 2010) (en banc). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*United States* v. *Williams*,
 616 F.3d 685 (7th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States* v. *Williams*,
 616 F.3d 685 (7th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States* v. *Yancey*,
 621 F.3d 681 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States* v. *Yancey*,
 621 F.3d 681 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Zobel* v. *Williams*,
 457 U.S. 55 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19


Constitutional Provisions

U.S. Const. amend. II. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

U.S. Const. amend. VI. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

U.S. Const. amend. VIII. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

U.S. Const. amend. XIV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim


Statutes

Cal. Elections Code § 9005. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Cal. Penal Code § 12031(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Cal. Penal Code § 12050. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 17

D.C. Code § 22-4504(a) (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

D.C. Code § 22-4506 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Tex. Gov't Code § 411.177(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Tex. Penal Code § 46.035(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10


Other Authorities

Black's Law Dictionary (6th Ed. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Cal. Joint Budget Committee Analysis,
 SA 1999-RF0053, Dec. 22, 1999. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

1

Cal. Joint Budget Committee Analysis,
    SA 2001-RF0041, Dec. 13, 2001.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

2

Eugene Volokh, *Implementing the Right to Keep
    and Bear Arms for Self-Defense: An Analytic
    Framework and a Research Agenda*,
    56 UCLA L. Rev. 1443 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

3

4

5

The American Students' Blackstone (G. Chase ed. 1884).. . . . . . . . . . . . . . . . . . . . . . . . 8, 9

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

PRELIMINARY STATEMENT

When individuals enjoy a constitutional "right" to engage in some activity, a license to engage in that activity cannot be conditioned on the government's determination of their "good moral character" or "good cause" to exercise that right. Defendants must be enjoined from imposing this classic form of unconstitutional prior restraint against the fundamental individual right to keep and bear arms. Where fundamental rights are concerned, a system of prior restraint cannot employ unbridled discretion.

Of course, Defendants have an interest in regulating firearms in the interest of public safety, just as Defendants have an interest in regulating the time, place, or manner of speech or public assemblies. Nor do Plaintiffs challenge the idea that the state may license the carrying of firearms, just as the state might license parades or demonstrations.

But the regulatory interest here is not absolute. Whatever else the state may do, it cannot reserve for itself the power to arbitrarily decide, in all cases, whether individuals deserve to carry guns for self-defense. That decision has already been made in the federal constitution, which guarantees law-abiding individuals their right to carry handguns for self-defense.

STATEMENT OF FACTS

California law generally bars the open carrying of functional firearms, allowing the practice only in unincorporated areas or, with a special license, in select sparsely populated counties. SUF 1. California law also prohibits the concealed carrying of functional firearms without a license. SUF 2. Accordingly, for most people and throughout most of the state, a license to carry a concealed weapon provides the only legal option available to those who wish to carry functional firearms for self-defense. SUF 3.

Applicants seeking a license to carry a handgun must pass a criminal background check, and successfully complete a course of training in the proper use of handguns. SUF 4. Applications for a permit to carry a handgun are made to the Sheriff of the county in which the applicant either resides or spends a substantial period of time in owing to the applicant's

1  principal place of employment or business being located in that county. SUF 5. Alternatively,

2  application may be made to the chief or other head of a municipal police department of any city

3  or city and county in which the applicant resides. SUF 6.

4      In addition to the successful completion of a background check and training, the issuance

5  of a permit to carry a handgun is left to the discretion of the issuing authority, based upon that

6  authority's determination that an applicant "is of good moral character, [and] that good cause

7  exists for the issuance" of the permit. SUF 7. Issuing authorities must publish policies regarding

8  the issuance of handgun carry permits. SUF 8.

9      Defendant Ed Prieto is the Sheriff of Yolo County. SUF 9. Prieto's "Concealed Weapons

10  License Policy" provides that applicants "Be of good moral character," "Show good cause for the

11  issuance of the license," and "Provide at least three letters of character reference" from non-

12  relatives.  SUF 10. The application requires disclosure of "substantial personal information [that]

13  may be subject public access under the Public Records Act." SUF 11.

14      Prieto and Yolo County reject self-defense, without more, as a reason to even apply for a

15  permit. Defendant Prieto's written policy regarding the issuance of gun carry permits includes

16  among "examples of invalid reasons to request a permit" "self-protection and protection of

17  family (without credible threats of violence)." SUF 12. Applicants are not scheduled for

18  fingerprinting and background checks unless "the Sheriff or his designee feels there is sufficient

19  reason to grant the license." SUF 13. Even if issued, Prieto reserves the right to impose "any and

20  all reasonable restrictions and conditions" that he "has deemed warranted," the violation of

21  which can lead to summary revocation of the permit. SUF 14. Prieto maintains that "the issuance,

22  amendment or revocation" of a gun carry license "remains exclusively within the discretion of

23  the Sheriff." SUF 15. Gun licenses may be renewed "[i]f the Sheriff or his designee feels there is

24  sufficient reason to renew the license." SUF 16.

25      Plaintiffs Adam Richards and Brett Stewart are law-abiding residents of Yolo County,

26  fully qualified under federal and California law to purchase and possess firearms. SUF 17. In

27  March, 2009, Plaintiff Adam Richards contacted Defendant Prieto's office to inquire about the

28  process for obtaining a permit to carry a handgun. Defendant Prieto's office advised Plaintiff

1   Richards that the desire to have a gun available for self-defense would not constitute "good

2   cause" for the issuance of the permit, and that he should not apply because doing so would be a

3   futile act. SUF 18. Plaintiff Richards was further advised that as a matter of policy, his

4   application would also not be considered unless he first applied to the Chief of Police in the City

5   of Davis, where he resides. SUF 19.

6       Richards subsequently applied to Davis Police Chief Lanny Black for a permit to carry a

7   handgun. On April 1, 2009, Police Chief Black denied Plaintiff Richards' application for a

8   permit to carry a handgun, stating that for budgetary reasons his department no longer processes

9   handgun carry permit applications, and suggesting that Richards seek a permit from Prieto. SUF

10  20. Plaintiff Richards seeks to exercise his Second Amendment right to carry a handgun for

11  personal protection. SUF 21. He seeks a handgun carry permit so that he might protect himself

12  and his family. However, Richards has received no threats of violence and is unaware of any

13  specific threat to him or his family. SUF 22.

14      Richards has read Defendant Prieto's written policy declaring that "self-protection and

15  protection of family (without credible threats of violence)" is among "examples of invalid

16  reasons to request a permit," which is consistent with his experience in unsuccessfully seeking a

17  handgun carry permit. SUF 23. Richards thus understands that he lacks "good cause" to obtain a

18  permit as that term is defined and implemented by Defendants Prieto and Yolo County. SUF 24.

19  Richards fears arrest, prosecution, fines and imprisonment were he to carry a handgun without a

20  permit. But for the lack of a handgun carry permit and fear of prosecution, Richards would carry

21  a handgun in public for self-defense. SUF 25.

22      On or about March 17, 2010, Stewart applied to Davis Police Chief Lanny Black for a

23  permit to carry a handgun. On March 18, 2010, Police Chief Black denied Plaintiff Stewart's

24  application for a permit to carry a handgun, stating that for budgetary reasons his department no

25  longer processes handgun carry permit applications, but suggested that Stewart seek a permit

26  from Prieto. SUF 26. On or about March 23, 2010, Plaintiff Stewart applied to Defendant Prieto

27  for a permit to carry a handgun. On April 27, 2010, Stewart was informed that his application

28  was denied, because "the reasons listed in your application do not meet the criteria in our policy."

1   SUF 27. Plaintiff Stewart seeks to exercise his Second Amendment right to carry a handgun for

2   personal protection. He seeks a handgun carry permit so that he might protect himself and his

3   family. However, Stewart has received no threats of violence and is unaware of any specific

4   threat to him or his family. SUF 28. Stewart fears arrest, prosecution, fines and imprisonment

5   were he to carry a handgun without a permit. But for the lack of a permit to do so, Stewart would

6   carry a handgun in public for self-defense. SUF 29.

7        Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership

8   organization incorporated under the laws of Washington with its principal place of business in

9   Bellevue, Washington. SUF 30. SAF has over 650,000 members and supporters nationwide,

10  including many in California. SUF 31. The purposes of SAF include education, research,

11  publishing and legal action focusing on the Constitutional right to privately own and possess

12  firearms, and the consequences of gun control. SUF 32.

13       Plaintiff The Calguns Foundation, Inc. is a non-profit organization incorporated under the

14  laws of California with its principal place of business in Redwood City, California. SUF 33. The

15  purposes of Calguns include supporting the California firearms community by promoting

16  education for all stakeholders about firearm laws, rights and privileges, and securing the civil

17  rights of California gun owners, who are among its members and supporters. SUF 34.

18       SAF and Calguns expend their resources encouraging exercise of the right to bear arms,

19  and advising and educating their members, supporters, and the general public about the varying

20  policies with respect to the public carrying of handguns in California, including in Yolo County.

21  Defendants' policies regularly cause the expenditure of resources by SAF and Calguns as people

22  turn to these organizations for advice and information. The issues raised by, and consequences

23  of, Defendants' policies, are of great interest to SAF and Calguns' constituencies. SUF 35.

24  Defendants' policies bar the members and supporters of SAF and Calguns from obtaining

25  permits to carry handguns. SUF 36.

26                    SUMMARY OF ARGUMENT

27       The Second Amendment plainly guarantees Plaintiffs a fundamental, individual right to

28  carry handguns for self-defense. Although the state may regulate the right to bear arms in the

1  interest of public safety, the fact that such regulations touch upon a fundamental right has long

2  confirmed a distinction between regulation and prohibition.

3    California law expresses a preference that individuals carrying handguns for self-defense

4  do so in a concealed manner, subject to a licensing regime administered by local law enforcement

5  officials. This is a constitutionally permissible legislative choice. Open and concealed carrying of

6  handguns both satisfy the personal interest in self-defense, and precedent confirms that either

7  may be preferred by government officials for various reasons. But a blanket prohibition on all

8  handgun carrying for self-defense is unconstitutional.

9    Having been charged with the task of implementing California's licensing regime for the

10  carrying of handguns, Defendants may not refuse to do so. *Salute* v. *Pitchess*, 61 Cal. App. 3d.

11  557 (1976). Nor may Defendants exercise that discretion in a manner that deprives individuals of

12  a fundamental constitutional right. This case is not difficult. The Second Amendment secures a

13  right to carry arms for self-defense. Defendants refuse to acknowledge that carrying arms is a

14  right, and instead demand that applicants prove their need to do so.

15    There is no such thing as a "right" that can be denied unless people prove a special need

16  to exercise it. Prior restraints on constitutionally-protected conduct cannot allow regulators

17  unbridled discretion in choosing who may exercise the right, nor can regulators substitute their

18  own judgment for that of the Constitution as to whether the exercise of a particular right is a

19  good idea. The challenged provision, or at least its implementation, violates basic prior restraint

20  standards. And because the challenged practice arbitrary classifies individuals in the exercise of a

21  fundamental right, it also violates the Equal Protection Clause.

22                                         ARGUMENT

23  I.    THE SECOND AMENDMENT PROTECTS THE RIGHT
        TO CARRY FUNCTIONAL HANDGUNS FOR SELF-DEFENSE.
24
25        The Second Amendment protects the right "to keep and bear arms." U.S. Const. amend.

26  II. This syntax is not unique within the Bill of Rights. For example, the Sixth Amendment

27  guarantees the right to a "speedy and public trial," U.S. Const. amend. VI, while the Eighth

28  Amendment secures individuals from "cruel and unusual" punishment. U.S. Const. amend. VIII.

1   Just as the Sixth Amendment does not sanction secret, speedy trials or public, slow trials, and the

2   Eighth Amendment does not allow the usual practice of torture, the Second Amendment's

3   reference to "keep and bear" refers to two distinct concepts.

4            The Supreme Court confirmed as much, rejecting the argument that "keep and bear arms"

5   was a unitary concept referring only to a right to possess weapons in the context of military duty.

6   To "bear arms," as used in the Second Amendment, is to "wear, bear, or carry . . . upon the

7   person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for

8   offensive or defensive action in a case of conflict with another person." *District of Columbia* v.

9   *Heller*, 128 S. Ct. 2783, 2793 (2008) (quoting *Muscarello* v. *United States*, 524 U.S. 125, 143

10  (1998) (Ginsburg, J., dissenting); Black's Law Dictionary 214 (6th Ed. 1998)); *see also*

11  *Heller*, 128 S. Ct. at 2804 ("the Second Amendment right, protecting only individuals' liberty to

12  keep *and carry* arms . . ."), at 2817 ("the right to keep *and carry* arms") (emphasis added).

13  "[T]he core right identified in *Heller* [is] the right of a *law-abiding, responsible* citizen to

14  possess *and carry* a weapon for self-defense." *United States* v. *Chester*, __ F.3d __,  2010 U.S.

15  App. LEXIS 26508 at *26 (4th Cir. Dec. 30, 2010).

16           Having defined the Second Amendment's language as including a right to "carry" guns

17  for self-defense, the Supreme Court helpfully noted several exceptions that prove the rule.

18  Explaining that this right is "not unlimited," in that there is no right to "carry any weapon

19  whatsoever in any manner whatsoever and for whatever purpose," *Heller*, 128 S. Ct. at 2816

20  (citations omitted), the Court confirmed that there is a right to carry at least some weapons, in

21  some manner, for some purpose. The Supreme Court then listed as "presumptively lawful,"

22  *Heller*, 128 S. Ct. at 2817 n.26, "laws forbidding the carrying of firearms in sensitive places," *id.*,

23  at 2817, confirming both that such "presumptions" may be overcome in appropriate

24  circumstances, and that carrying bans are *not* presumptively lawful in non-sensitive places.

25           In upholding the right to carry a handgun under the Second Amendment, the *Heller* court

26  broke no new ground. As early as 1846, Georgia's Supreme Court, applying the Second

27  Amendment, quashed an indictment for the carrying of a handgun that failed to allege whether

28  the handgun was being carried in a constitutionally-protected manner. *Nunn* v. *State*, 1 Ga. 243,

1   251 (1846); *see also In re Brickey*, 70 P. 609 (Idaho 1902) (Second Amendment right to carry

2   handgun). Numerous state constitutional right to arms provision have likewise been interpreted

3   as securing the right to carry a gun in public, albeit often, to be sure, subject to some regulation.

4   *See*, *e.g. Kellogg* v. *City of Gary*, 562 N.E.2d 685 (Ind. 1990); *State ex rel. City of Princeton* v.

5   *Buckner*, 377 S.E.2d 139 (W. Va. 1988); *City of Las Vegas* v. *Moberg*, 485 P.2d 737 (N.M. Ct.

6   App. 1971); *State* v. *Kerner*, 107 S.E. 222 (N.C. 1921); *State* v. *Rosenthal*, 55 A. 610 (Vt. 1903)

7   (striking down ban on concealed carry); *Andrews* v. *State*, 50 Tenn. 165 (1871); *see also State* v.

8   *Delgado*, 692 P.2d 210 (Or. 1984) (right to carry a switchblade knife).

9        Plaintiffs thus enjoy an individual Second Amendment right to carry a handgun for

10   purposes of self-defense. The Second Amendment applies as against Defendants by operation of

11   the Fourteenth Amendment. *McDonald* v. *City of Chicago*, 130 S. Ct. 3020 (2010).

12   II.    CALIFORNIA HAS SELECTED CONCEALED CARRYING AS
       THE PERMISSIBLE MODE OF EXERCISING THE RIGHT TO BEAR ARMS.

13

14        As discussed *supra*, *Heller* confirms that states enjoy meaningful leeway in proscribing

15   the manner in which guns are carried. Traditionally, "the right of the people to keep and bear

16   arms (Article 2) is not infringed by laws prohibiting the carrying of *concealed* weapons . . . ."

17   *Robertson* v. *Baldwin*, 165 U.S. 275, 281-82 (1897) (emphasis added). But more recently, the

18   Supreme Court has suggested that such bans are only "presumptively" constitutional. *Heller*, 128

19   S. Ct. at 2817 n.26 (emphasis added).

20        Surveying the history of concealed carry prohibitions, it appears time and again that such

21   laws have always been upheld as mere regulations of the manner in which arms are carried – with

22   the understanding that a complete ban on the carrying of handguns is unconstitutional.

23        *Heller* discussed, with approval, four state supreme court opinions that referenced this

24   conditional rule. *See Heller*, 128 S. Ct. at 2818 (discussing *Nunn*, *supra*, 1 Ga. 243; *Andrews*,

25   *supra*, 50 Tenn. 165; and *State* v. *Reid*, 1 Ala. 612, 616-17 (1840)) and 128 S. Ct. at 2809 (citing

26   *State* v. *Chandler*, 5 La. Ann. 489, 490 (1850)). In *Reid*, upholding a ban on the carrying of

27   concealed weapons, Alabama's high court explained:

28        We do not desire to be understood as maintaining, that in regulating the manner of
     bearing arms, the authority of the Legislature has no other limit than its own discretion. A

statute which, under the pretence of regulating, amounts to a destruction of the right, or which requires arms to be so borne as to render them wholly useless for the purpose of defense, would be clearly unconstitutional. But a law which is merely intended to promote personal security, and to put down lawless aggression and violence, and to this end prohibits the wearing of certain weapons in such a manner as is calculated to exert an unhappy influence upon the moral feelings of the wearer, by making him less regardful of the personal security of others, does not come in collision with the Constitution.

*Reid*, 1 Ala. at 616-17.

The *Nunn* court followed *Reid*, and quashed an indictment for publicly carrying a pistol for failing to specify how the weapon was carried:

so far as the act . . . seeks to suppress the practice of carrying certain weapons *secretly*, that it is valid, inasmuch as it does not deprive the citizen of his *natural* right of self-defence, or of his constitutional right to keep and bear arms. But that so much of it, as contains a prohibition against bearing arms *openly*, is in conflict with the Constitution, and *void*.

*Nunn*, 1 Ga. at 251 (emphasis original).

*Andrews* presaged *Heller* by finding that a revolver was a protected arm under the state constitution's Second Amendment analog. It therefore struck down as unconstitutional the application of a ban on the carrying of weapons to a man carrying a revolver, declaring:

If the Legislature think proper, they may by a proper law regulate the carrying of this weapon publicly, or abroad, in such a manner as may be deemed most conducive to the public peace, and the protection and safety of the community from lawless violence. We only hold that, as to this weapon, the prohibition is too broad to be sustained.

*Andrews*, 165 Tenn. at 187-88.[1]

Finally, in *Chandler,*

the Louisiana Supreme Court held that citizens had a right to carry arms openly: "This is the right guaranteed by the Constitution of the United States, and which is calculated to incite men to a manly and noble defence of themselves, if necessary, and of their country, without any tendency to secret advantages and unmanly assassinations."

*Heller*, 128 S. Ct. at 2809 (quoting *Chandler*, 5 La. Ann. at 490).

The legal treatises relied upon by the *Heller* court explained the rule succinctly. For supporting the notion that concealed carrying may be banned, *Heller* further cites to THE AMERICAN STUDENTS' BLACKSTONE, 84 n.11 (G. Chase ed. 1884). *Heller*, 128 S. Ct. at 2816.

---

[1]*Andrews* appeared to abrogate in large part *Aymette* v. *State*, 21 Tenn. 154 (1840), upholding the prohibition on the concealed carry of daggers. But even *Aymette*, which found a state right to bear arms limited by a military purpose, deduced from that interpretation that the right to bear arms protected the open carrying of arms. *Aymette*, 21 Tenn. at 160-61.

1    That source provides:

2        [I]t is generally held that statutes prohibiting the carrying of *concealed* weapons are not in
         conflict with these constitutional provisions, since they merely forbid the carrying of arms
3        in a particular manner, which is likely to lead to breaches of the peace and provoke to the
         commission of crime, rather than contribute to public or personal defence. In some States,
4        however, a contrary doctrine is maintained.

5    Exh. E, AMERICAN STUDENTS' BLACKSTONE, 84 n.11 (emphasis original). This understanding

6    survives today. *See, e.g. In re Application of McIntyre*, 552 A.2d 500, 501 n.1 (Del. Super. 1988)

7    ("'the right to keep and bear arms' does not of necessity require that such arms may be kept

8    concealed").

9        It is important, then, to recall that (1) the Supreme Court's definition of "bear arms" as

10   that language is used in the Second Amendment includes the concealed carrying of handguns:

11   "wear, bear, or carry . . . *in the clothing or in a pocket* . . ." *Heller*, 128 S. Ct. at 2793 (citations

12   omitted) (emphasis added); (2) the legality of bans on concealed carrying is only "presumptive,"

13   *Heller*, 128 S. Ct. at 2817 n.26, and (3) the cases supporting concealed carry prohibition explain

14   that no abrogation of the right to carry arms is effected because open carrying is still permitted.

15       Legislatures might well prefer one form of carrying over another. Precedent relied upon

16   by *Heller* reveals an ancient suspicion of weapons concealment where social norms viewed the

17   wearing of arms as virtuous. But today, the open carrying of a handgun may be mistakenly

18   viewed as provocative or alarming by segments of the population unfamiliar with firearms. *See*

19   Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytic*

20   *Framework and a Research Agenda*, 56 UCLA L. Rev. 1443, 1523 (2009).[2]

21       California's mode of regulating the carrying of handguns thus makes perfect sense. In

22   rural, sparsely populated areas, Sheriffs are allowed to issue permits to carry handguns openly.

23   But in more populous areas, the state deprives Sheriffs of this ability, and specifies that permits

24   to carry must be limited to concealed handguns. This manner of regulation is not unusual, and

25   has been adopted by some jurisdictions where the public acceptance of gun rights is relatively

26   _____

27       [2]California law permits individuals to openly carry *unloaded* firearms, subject to
     warrantless search and seizure. Cal. Penal Code § 12031(e). But the right to arms is a right to
28   *functional* firearms. *Heller*, 128 S. Ct. at 2818; *contra Peruta* v. *County of San Diego*, __ F.
     Supp. 2d __, 2010 U.S. Dist. LEXIS 130878 (S.D. Cal. Dec. 10, 2010).

1    high. For example, in Texas, where concealed handgun permits are readily available on a "shall

2    issue" basis, Tex. Gov't Code § 411.177(a), a permit holder who "intentionally fails to conceal

3    the handgun" commits a misdemeanor. Tex. Penal Code § 46.035(a).

4         *Heller*'s recognition of a right to carry a handgun does not force states such as California

5    and Texas to allow the carrying of handguns in a manner they understandably perceive may cause

6    needless public alarm, so long as a more socially-conducive option exists to allow people to

7    exercise the right to bear arms. But *Heller* confirms that once a choice has been made by the

8    legislature as to which manner of carrying will be permitted, that choice must be honored.

9         Support for this view comes not merely from the plain language of *Heller* and other

10   precedent, but also from the California Legislature's Legislative Analyst. In 1999 and again in

11   2001, efforts were made to qualify for the California ballot an initiative constitutional

12   amendment securing a "right to keep and bear arms." Pursuant to Cal. Elections Code § 9005, the

13   proposed amendment was submitted for review by the Joint Budget Committee. Each time, the

14   Legislative Analyst concluded that if the state were to adopt a right to keep and bear arms

15   constitutional amendment, existing state law regulating the carrying of guns would not likely be

16   impacted save for limiting discretion in issuing permits:

17          While individuals may possess and carry firearms, many of the state's existing systems
            for . . . weapons permits . . . would likely not change . . . However, local jurisdictions
18          would not be able to limit who obtains concealed weapons permits unless the applicant
            does not meet federal or state criteria.
19
20   Exh. F, Cal. Joint Budget Committee Analysis, SA 2001-RF0041, Dec. 13, 2001, p. 2; Exh. G,

     Cal. Joint Budget Committee Analysis, SA 1999-RF0053, Dec. 22, 1999, p. 2.
21
22        The Legislature did not express the view that adoption of a state right to bear arms would

23   render unconstitutional the general prohibition on open carrying, nor did the Legislature believe

     that local officials could continue to take a parsimonious approach to the issuance of concealed
24
25   carry permits. Rather, the view was that which would years later be implicit in *Heller*: the state

     can continue to prefer concealed to open carry, and regulate the carrying of concealed handguns,
26

27

28

so long as the right to carry is not completely abrogated. This is all that Plaintiffs request, and it is very limited relief.[3]

III.    THE SECOND AMENDMENT FORBIDS CONDITIONING GUN CARRY LICENSES ON DEMONSTRATION OF "GOOD CAUSE" OR "GOOD MORAL CHARACTER."

Because the practice of bearing arms is secured by the Second Amendment, the decision to issue a license to bear arms cannot be left to the government's unbridled discretion.

> It is settled by a long line of recent decisions of this Court that an ordinance which . . . makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official -- as by requiring a permit or license which may be granted or withheld in the discretion of such official -- is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.

*Staub* v. *City of Baxley*, 355 U.S. 313, 322 (1958) (citations omitted); *see also FW/PBS* v. *City of Dallas*, 493 U.S. 215, 226 (1990) (plurality opinion); *Shuttlesworth* v. *Birmingham*, 394 U.S. 147, 151 (1969). "Rules that grant licensing officials undue discretion are not constitutional." *Berger* v. *City of Seattle*, 569 F.3d 1029, 1042 n.9 (9th Cir. 2009) (en banc).

"While prior restraints are not unconstitutional per se, any system of prior restraint comes to the courts bearing a heavy presumption against its constitutional validity." *Clark* v. *City of Lakewood*, 259 F.3d 996, 1009 (9th Cir. 2001) (citations omitted); *Baby Tam & Co.* v. *City of Las Vegas*, 154 F.3d 1097, 1100 (9th Cir. 1998).

The law of prior restraint, well-developed in the First Amendment context, supplies useful guidance here. *Cf. Chester*, 2010 U.S. App. LEXIS 26508 at *24 ("we agree with those who advocate looking to the First Amendment as a guide in developing a standard of review for the Second Amendment") (citations omitted); *United States* v. *Marzzarella*, 614 F.3d 85, 89 n.4 (3d Cir. 2010) ("the structure of First Amendment doctrine should inform our analysis of the Second Amendment"); *Parker* v. *District of Columbia*, 478 F.3d 370, 399 (D.C. Cir. 2007), *aff'd sub nom Heller* ("The protections of the Second Amendment are subject to the same sort of

---

[3]Although the Ninth Circuit once held that there is no liberty interest in obtaining a concealed carry permit, *Erdelyi* v. *O'Brien*, 680 F.2d 61 (9th Cir. 1982), the Second Amendment was not considered in that case. *Erdelyi* does not mention, let alone discuss, the Second Amendment, and was decided long before the Second Amendment was clarified to protect a fundamental right.

1    reasonable restrictions that have been recognized as limiting, for instance, the First

2    Amendment.") (citation omitted). This is especially so, considering that in *Staub* and its progeny,

3    the Supreme Court did not limit its disapproval of prior restraints to First Amendment freedoms,

4    but spoke more generally of "freedoms which the Constitution guarantees." *Staub*, 355 U.S. at

5    322. As discussed *infra*, *Heller* itself summarily applied established prior restraint principles in a

6    Second Amendment context.[4]

7        In *Staub*, the Supreme Court struck down an ordinance authorizing a mayor and city

8    council "uncontrolled discretion," *Staub*, 355 U.S. at 325, to grant or refuse a permit required for

9    soliciting memberships in organizations. Such a permit, held the Court,

10       makes enjoyment of speech contingent upon the will of the Mayor and Council of the
         City, although that fundamental right is made free from congressional abridgment by the
11       First Amendment and is protected by the Fourteenth from invasion by state action. For
         these reasons, the ordinance, on its face, imposes an unconstitutional prior restraint upon
12       the enjoyment of First Amendment freedoms and lays "a forbidden burden upon the
         exercise of liberty protected by the Constitution."

13   *Staub*, 355 U.S. at 325 (quoting *Cantwell* v. *Connecticut*, 310 U.S. 296, 307 (1940)); *see also*

14   *Largent* v. *Texas*, 318 U.S. 418, 422 (1943) (striking down ordinance allowing speech permit

15   where mayor "deems it proper or advisable."); *Louisiana* v. *United States*, 380 U.S. 145, 153

16   (1965) ("The cherished right of people in a country like ours to vote cannot be obliterated by the

17   use of laws . . . which leave the voting fate of a citizen to the passing whim or impulse of an

18   individual registrar.").

19       "Traditionally, unconstitutional prior restraints are found in the context of judicial

20   injunctions or a licensing scheme that places 'unbridled discretion in the hands of a government

21   official or agency.'" *Nat'l Fed'n of the Blind* v. *FTC*, 420 F.3d 331, 350 n. 8 (4th Cir. 2005)

22   (quoting *FW/PBS*, 493 U.S. at 225-26). "Unbridled discretion naturally exists when a licensing

23

24       [4]Concerns regarding the abuse of First and Second Amendment protected activities have

25   long been viewed as similar. *See Commonwealth v. Blanding*, 20 Mass. 304, 314 (1825) ("The
     liberty of the press was to be unrestrained, but he who used it was to be responsible in case of its

26   abuse; like the right to keep fire arms, which does not protect him who uses them for annoyance
     or destruction."); *Respublica v. Oswald*, 1 U.S. (1 Dall.) 319, 330 n.* (Pa. 1788) ("The right of

27   publication, like every other right, has its natural and necessary boundary; for, though the law
     allows a man the free use of his arm, or the possession of a weapon, yet it does not authorize him

28   to plunge a dagger in the breast of an inoffensive neighbour.").

1   scheme does not impose adequate standards to guide the licensor's discretion." *Chesapeake B &*

2   *M, Inc.* v. *Harford County*, 58 F.3d 1005, 1009 (4th Cir. 1995) (en banc). "Regulations must

3   contain narrow, objective, and definite standards to guide the licensing authority, and must

4   require the official to provide an explanation for his decision. The standards must be sufficient to

5   render the official's decision subject to effective judicial review." *Long Beach Area Peace*

6   *Network* v. *City of Long Beach*, 574 F.3d 1011, 1025 (9th Cir. 2009) (citations and internal

7   punctuation marks omitted).

8          Penal Code § 12050's "good moral character" and "good cause" easily meet the test for

9   unbridled discretion. For example, in *Gaudiya Vaishnava Society* v. *City of San Francisco*, 952

10  F.2d 1059, 1065 (9th Cir. 1990), the Ninth Circuit considered the constitutionality of a permitting

11  system under which "the Chief of Police *may* issue a permit . . ." to peddle constitutionally-

12  protected articles (emphasis supplied by opinion). "Because the Chief of Police is granted

13  complete discretion in denying or granting such permits, we hold that the City's ordinance is not

14  saved from constitutional infirmity by its commercial peddler's permit system." *Id.* at 1066. In

15  the First Amendment context, the presumption against prior restraints is not aimed exclusively at

16  preventing content-based decision-making. "[W]hether or not the review is based upon content, a

17  prior restraint arises where administrative discretion involves judgment over and beyond

18  applying classifying definitions." *Mom N Pops, Inc.* v. *City of Charlotte*, 979 F. Supp. 372, 387

19  (W.D.N.C. 1997) (citations omitted); *Beal* v. *Stern*, 184 F.3 117, 124 (2d Cir. 1999).

20  Accordingly, standards governing prior restraints must be "narrow, objective and definite."

21  *Shuttlesworth*, 394 U.S. at 151. Standards involving "appraisal of facts, the exercise of judgment,

22  [or] the formation of an opinion" are unacceptable. *Forsyth County* v. *Nationalist Movement*, 505

23  U.S. 123, 131 (1992) (quoting *Cantwell*, 310 U.S. at 305).

24         Public safety is invoked to justify most laws, but where a fundamental right is concerned,

25  a mere incantation of a public safety rationale does not save arbitrary licensing schemes. In the

26  First Amendment arena, where the concept has been developed extensively,

27         [W]e have consistently condemned licensing systems which vest in an administrative
            official discretion to grant or withhold a permit upon broad criteria unrelated to proper
28

> regulation of public places . . . There are appropriate public remedies to protect the peace and order of the community if appellant's speeches should result in disorder or violence.

*Kunz* v. *New York*, 340 U.S. 290, 294 (1951); *Shuttlesworth*, 394 U.S. at 153. "But uncontrolled official suppression of the privilege cannot be made a substitute for the duty to maintain order in connection with the exercise of the right." *Hague* v. *Committee for Indus. Org.*, 307 U.S. 496, 516 (1937) (plurality opinion).

> Even when the use of its public streets and sidewalks is involved, therefore, a municipality may not empower its licensing officials to roam essentially at will, dispensing or withholding permission to speak, assemble, picket, or parade, according to their own opinions regarding the potential effect of the activity in question on the "welfare," "decency," or "morals" of the community.

*Shuttlesworth*, 394 U.S. at 153. Accordingly, the Ninth Circuit rejects alleged public health and safety concerns as a substitute for objective standards and due process. *Desert Outdoor Advertising* v. *City of Moreno Valley*, 103 F.3d 814, 819 (9th Cir. 1996).

For an example of these prior restraint principles applied in the Second Amendment context, the Court need look no further than *Heller*. Among other provisions, Heller challenged application of the District of Columbia's requirement that handgun registrants obtain a discretionary (but never issued) permit to carry a gun inside the home.[5] The Supreme Court held that the city had no discretion to refuse issuance of the permit: "Assuming that Heller is not disqualified from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it in the home." *Heller*, 128 S. Ct. at 2822. In other words, the city could deny Heller a permit if it could demonstrate there was some constitutionally valid reason for denying him Second Amendment rights. But the city could not otherwise refuse to issue the permit. The city repealed its home carry permit requirement.[6]

---

[5] Former D.C. Code § 22-4504(a) (2008) provided that carrying a gun in one's home without a permit constituted a misdemeanor offense. Former D.C. Code § 22-4506 (2008) provided for a license to carry issued at the police chief's discretion, although licenses were never issued. Heller did not seek a permit to carry a handgun in public. *Parker*, 478 F.3d at 400.

[6] The city also adopted a complete ban on carrying handguns in public, prompting additional litigation. *Palmer* v. *District of Columbia*, U.S. Dist. Ct. D.C. No. 09-CV-1482-HHK.

1    The same logic governs this case. California's "good moral character" and "good cause"

2  requirement for issuance of a handgun carry permit, Cal. Penal Code §12050 fails constitutional

3  scrutiny as an impermissible prior restraint. The right to carry a firearm for self-defense is plainly

4  among the "freedoms which the Constitution guarantees." *Staub*, 355 U.S. at 322. Accordingly,

5  the government bears the burden of proving that the an applicant may not have a permit, for some

6  constitutionally-compelling reason defined by application of standards that are "narrow, objective

7  and definite." *Shuttlesworth*, 394 U.S. at 151.

8     "Good cause" is plainly among the impermissible "illusory 'constraints'" amounting to

9  "little more than a high-sounding ideal." *City of Lakewood* v. *Plain Dealer Publishing Co.*, 486

10  U.S. 750, 769-70 (1988); *see, e.g. Largent*, 318 U.S. at 422 ("proper or advisable"); *Diamond* v.

11  *City of Taft*, 29 F. Supp. 2d 633, 650 (C.D. Cal. 1998) (rejecting condition that license be

12  "essential or desirable to the public convenience or welfare"), *aff'd*, 215 F.3d 1052 (9th Cir.

13  2000). Even less defensible is the requirement of "good moral character." The Supreme Court

14  long ago rejected the constitutionality of an ordinance demanding "good character" as a

15  prerequisite for a canvassing license. *Schneider* v. *New Jersey (Town of Irvington)*, 308 U.S. 147,

16  158 (1939). Absent further definition, courts typically reject all forms of "moral character"

17  standards for the licensing of fundamental rights. *MD II Entertainment* v. *City of Dallas*, 28 F.3d

18  492, 494 (5th Cir. 1994); *Genusa* v. *Peoria*, 619 F.2d 1203, 1217 (7th Cir. 1980); *N.J. Envtl.*

19  *Fed'n* v. *Wayne Twp.*, 310 F. Supp. 2d 681, 699 (D.N.J. 2004); *Ohio Citizen Action* v. *City of*

20  *Mentor-On-The-Lake*, 272 F. Supp. 2d 671, 682 (N.D. Ohio 2003); *Tom T., Inc.* v. *City of*

21  *Eveleth*, 2003 U.S. Dist. LEXIS 3718 at *14-15 (D. Minn. March 11, 2003); *R.W.B. of*

22  *Riverview, Inc.* v. *Stemple*, 111 F. Supp. 2d 748, 757 (S.D.W.Va. 2000); *Elam* v. *Bolling*, 53 F.

23  Supp. 2d 854, 862 (W.D.Va. 1999); *Ohio Citizen Action* v. *City of Seven Hills*, 35 F. Supp. 2d

24  575, 579 (N.D. Ohio 1999); *Broadway Books, Inc.* v. *Roberts*, 642 F. Supp. 486, 494-95

25  (E.D.Tenn. 1986); *Bayside Enterprises, Inc.* v. *Carson*, 450 F. Supp. 696, 707 (M.D. Fla. 1978).

26     An argument may be advanced that because Penal Code § 12050 permits Sheriffs to

27  define further their licensing standards, the provision can only be challenged in light of such

28  actual policies and practices. But it is not enough to claim that the licensing official will not act

1    arbitrarily. "A presumption that a city official 'will act in good faith and adhere to standards

2    absent from the ordinance's face . . . is the very presumption that the doctrine forbidding

3    unbridled discretion disallows.'" *Long Beach*, 574 F.3d at 1044 (quoting *Lakewood*, 486 U.S. at

4    770).

5           And Prieto cannot reasonably claim that his policy cabins his discretion in any sort of

6    meaningful, constitutionally-acceptable way. To the contrary, Prieto's written policy repeatedly

7    confirms his exclusive and absolute discretion to adjudicate applicants' moral character and good

8    cause, and even goes so far as to declare that gun carry permits will be issued or renewed only

9    when "the Sheriff or his designee *feels*" like it. Exh. A (emphasis added). Worse still, the

10   Sheriff's written policy provides that "self-protection and protection of family (without credible

11   threats of violence)" are "invalid reasons to request a permit." *Id.* This position categorically

12   violates the Second Amendment. As the Supreme Court has made clear, self-defense is at the

13   core of the Second Amendment right to bear arms.

14          "[T]he inherent right of self-defense has been central to the Second Amendment right."

15   *Heller*, 128 S. Ct. at 2817. Self-defense "was the *central component* of the right itself." *Heller*,

16   128 S. Ct. at 2801 (emphasis original) (citation omitted). The English right to arms "has long

17   been understood to be the predecessor to our Second Amendment . . . . It was, [Blackstone] said,

18   'the natural right of resistance and self-preservation,'and 'the right of having and using arms for

19   self-preservation and defence.'"*Id.*, at 2798 (citations omitted). "[T]he right secured in 1689 as a

20   result of the Stuarts' abuses was by the time of the founding understood to be an individual right

21   protecting against both public and private violence." *Heller*, 128 S. Ct. at 2798-99.

22          It bears recalling here that the various cases discussed by *Heller* with respect to carrying

23   guns approved of the practice *for the purpose of self-defense. See Heller*, 128 S. Ct. at 2809

24   ("citizens had a right to carry arms openly [for] 'manly and noble defence of themselves'")

25   (quoting *Chandler*, 5 La. App. at 490); *Heller*, 128 S. Ct. at 2818 ("A statute which, under the

26   pretence of regulating, amounts to a destruction of the right, or which requires arms to be so

27   borne as to render them wholly useless for the purpose of defense, would be clearly

28   unconstitutional.") (quoting *Reid*, 1 Ala. at 616-17); *Nunn*, 1 Ga. at 251 (carrying restriction

1    "valid, inasmuch as it does not deprive the citizen of his *natural* right of self-defence, or of his

2    constitutional right to keep and bear arms") (emphasis original). In rejecting self-defense as good

3    cause for a carry license, Defendants' policy all but confirms its unconstitutionality.

4          The good moral character and good cause provisions of Penal Code § 12050, and

5    Defendants' manner of implementing these requirements, vest unbridled discretion in the

6    Sheriff's ability to license exercise of fundamental rights.  They must be enjoined.

7    IV.    "GOOD CAUSE" AND "GOOD MORAL CHARACTER" REQUIREMENTS
            VIOLATE THE RIGHT TO EQUAL PROTECTION.
8
9          The Equal Protection Clause "is essentially a direction that all person similarly situated

10   should be treated alike." *City of Cleburne* v. *Cleburne Living Center*, 473 U.S. 432, 439 (1985)

11   (citation omitted). Strict scrutiny applies to government classifications that "impinge on personal

     rights protected by the Constitution." *Id.*, 473 U.S. at 440 (citations omitted).
12
13         The Second Amendment secures a fundamental right. *McDonald*, 130 S. Ct. at 3042

14   (plurality opinion) & 3059 (Thomas, J., concurring).

15         The phrase [fundamental personal rights and liberties] is not an empty one and was not
           lightly used. It reflects the belief of the framers of the Constitution that exercise of the
16         rights lies at the foundation of free government by free men. It stresses, as do many
           opinions of this court, the importance of preventing the restriction of enjoyment of these
           liberties.
17
18   *Schneider*, 308 U.S. at 161. "[C]lassifications affecting fundamental rights are given the most

19   exacting scrutiny." *Clark* v. *Jeter*, 486 U.S. 456, 461 (1988) (citation omitted). "Where

20   fundamental rights and liberties are asserted under the Equal Protection Clause, classifications

21   which might invade or restrain them must be closely scrutinized." *Hussey* v. *City of Portland*, 64

22   F.3d 1260, 1265 (9th Cir. 1995) (quoting *Harper* v. *Virginia Board of Elections*, 383 U.S. 663,

     670 (1966)).
23
24         Under this analysis, the government carries the burden of proving the law "furthers a

25   compelling interest and is narrowly tailored to achieve that interest," *Citizens United* v. *FEC*, 130

26   S. Ct. 876, 898 (2010) (citation omitted), a burden that cannot be met where less restrictive

27   alternatives are available to achieve the same purpose. *Ashcroft* v. *ACLU*, 542 U.S. 656, 666

28   (2004); *see also United States* v. *Engstrum*, 609 F. Supp. 2d 1227, 1331-32 (D. Utah 2009)

1   (applying strict scrutiny in Second Amendment analysis). "The right to equal protection of the

2   laws, in the exercise of those freedoms of speech and religion protected by the First and

3   Fourteenth Amendments, has a firmer foundation than the whims or personal opinions of a local

4   governing body." *Niemotko* v. *Maryland*, 340 U.S. 268, 272 (1951). Likewise, with the exercise

5   of fundamental Second Amendment freedoms. Defendants' whims and personal opinions as to

6   who should enjoy Second Amendment rights impermissibly classifies individuals in the exercise

7   of these rights in a completely arbitrary, standardless fashion.

8          Of course, the nature of the restriction or violation may impact the standard of review.

9   For example, Plaintiffs would contend that some carrying restrictions (e.g., restrictions on the

10  carrying of guns in "sensitive places") inherently call for time, place, and manner review. Cases

11  addressing categorical prohibitions on a type of arm are adjudicated under *Heller*'s "common

12  use" test for protected arms. And at least two appellate courts apply intermediate scrutiny in

13  Second Amendment cases questioning laws of the type *Heller* identified as presumptively lawful.

14  *Chester*, 2010 U.S. App. LEXIS 26508 at *26-27; *United States* v. *Skoien*, 614 F.3d 638, 641

15  (7th Cir. 2010) (en banc).

16         But these courts have not reserved for peaceful, law-abiding people a *lower* level of

17  review than is employed for violent felons, drug abusers, and other dangerous individuals

18  arguably covered by a presumptive exception. To the contrary, the Fourth Circuit applied

19  intermediate, rather than strict scrutiny, to a domestic violence misdemeanant only because it

20  viewed the Second Amendment's core as reaching "*law-abiding, responsible* citizen[s],"

21  *Chester*, 2010 U.S. App. LEXIS 26508 at *26 (emphasis original). The Seventh Circuit has

22  suggested overbreadth is a possible alternative mode of analysis. *United States* v. *Williams*, 616

23  F.3d 685, 693 (7th Cir. 2010); *cf. United States* v. *Yancey*, 621 F.3d 681, 685 (7th Cir. 2010)

24  ("felon-in-possession laws could be criticized as 'wildly overinclusive'").

25         The Supreme Court has made clear that the rational basis test "could not be used to

26  evaluate the extent to which a legislature may regulate a specific, enumerated right, be it the

27  freedom of speech, the guarantee against double jeopardy, the right to counsel, *or the right to*

28  *keep and bear arms*." *Heller*, 128 S. Ct. at 2818 n.27 (citing *United States* v. *Carolene Products*

1    *Co.*, 304 U.S. 144, 152, n. 4 (1938)) (emphasis added). "If a rational basis were enough, the

2    Second Amendment would not do anything." *Skoien*, 614 F.3d at 641. "[I]t remains certain that

3    the federal government may not restrain the freedom to bear arms based on mere whimsy or

4    convenience." *United States* v. *Everist*, 368 F.3d 517, 519 n.1 (5th Cir. 2004).[7] Intermediate

5    scrutiny is also inapplicable in the Second Amendment as a general matter, as that test applies to

6    an enumerated right under circumstances where the right's exercise is "of less constitutional

7    moment." *Cent. Hudson Gas & Elec. Corp.* v. *Public Serv. Comm'n*, 447 U.S. 557, 563 n.5

8    (1980).

9           But this Court need not resolve the standard-of-review question. Where a classification

10   plainly fails rational basis review, the Court's analysis need go no further. *Zobel* v. *Williams*, 457

11   U.S. 55, 60-61 (1982). And even absent a Second Amendment right, the Ninth Circuit held that a

12   California Sheriff's policies regarding the issuance of handgun carry permits may be restrained

13   by the Equal Protection Clause. *Guillory* v. *County of Orange*, 731 F.2d 1379 (9th Cir. 1984).

14          There is no state interest in depriving people of the means of self-defense. The state may

15   have an interest in reducing gun violence and accidents, but it cannot presume that the exercise of

16   a constitutional right will cause the sort of harm it is allowed to curtail. Defendants cannot point

17   to the impact of their practice – the deprivation of constitutional rights – as their interest. *Simon

18   & Schuster, Inc.* v. *N.Y. State Crime Victims Bd.*, 502 U.S. 105, 120 (1991).

19          Nor is the arbitrary licensing practice even rationally tailored to any interest in public

20   safety. Defendants are plainly incapable of predicting crime. Defendants cannot predict who will

21   face, much less when or where, a situation in which the right to self-defense would be

22   desperately needed. Crime is largely random and unpredictable. Individuals victimized once may

23   never be victimized again, while an individual's first encounter with a violent criminal often

24

25   _____

26          [7]The Fifth Circuit utilizes a version of strict scrutiny to evaluate gun laws under the
     Second Amendment, permitting regulations that are "limited, narrowly tailored specific
27   exceptions or restrictions for particular cases that are reasonable and not inconsistent with the
     right of Americans generally to individually keep and bear their private arms as historically
28   understood in this country." *United States* v. *Emerson*, 270 F.3d 203, 261 (5th Cir. 2001).

1    leads to death or seriously bodily harm. The right to self-defense at the Second Amendment's

2    core does not depend for its existence on a history of previous victimization.

3    There is something deeply illogical about Defendants' refusal to issue a permit to carry a

4    handgun until *after* a realistic threat to one's life and/or loved ones has materialized. Bearing

5    arms, within the meaning of the Second Amendment, includes carrying handguns "for the

6    purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with

7    another person." *Heller*, 128 S. Ct. at 2793 (citations omitted). The Second Amendment does not

8    exist merely to increase the security of previously victimized individuals. If the conflict has

9    already occurred, the unarmed would-be permit applicant might be dead. And because criminal

10   attacks are often random, there is no particular reason to expect that a person who has previously

11   been victimized might be more likely to need a gun than someone who has yet to be victimized.

12   The point of having guns available for self-defense is to avoid victimization in the first place.

13   <u>CONCLUSION</u>

14   However else Defendants may license the right to carry a handgun for self-defense,

15   conditioning a license on "good cause" or "good moral character" is simply unacceptable under

16   well-established concepts relating to prior restraint. And because these practice are inherently

17   arbitrary, they violate any standard of equal protection.

18   The motion for summary judgment should be granted.

19   Dated: January 13, 2011                    Respectfully submitted,

20   Donald E.J. Kilmer, Jr. (Calif. Bar No. 179986)     Alan Gura (Calif. Bar No. 178221)
     Law Offices of Donald Kilmer, A.P.C.               Gura & Possessky, PLLC
21   1645 Willow Street, Suite 150                       101 N. Columbus St., Suite 405
     San Jose, CA 95125                                  Alexandria, VA 22314
22   408.264.8489/Fax 408.264.8487                       703.835.9085/Fax 703.997.7665
     E-Mail: Don@DKLawOffice.com
23
     By:   /s/ Donald E.J. Kilmer, Jr.         By:   /s/ Alan Gura
24           Donald E.J. Kilmer, Jr.                  Alan Gura

25                                                     Attorneys for Plaintiffs

26

27

28

CERTIFICATE OF SERVICE

On this, the 13th day of January, 2011, I caused to be served a copy of the foregoing Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment by <u>PERSONAL DELIVERY</u> on the following:

Bruce A. Kilday
Serena M. Sanders
Angelo, Kilday & Kilduff
601 University Avenue, Suite 150
Sacramento, CA 95825

I further certify that on this, the 13th day of January, 2011, the foregoing was filed using the Court's CM/ECF system, which would automatically generate electronic service on all counsel in this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 13th day of January, 2011

/s/ Alan Gura
Alan Gura