THE AMERICAN STUDENTS' BLACKSTONE.

# COMMENTARIES

ON

# THE LAWS OF ENGLAND:

IN FOUR BOOKS,

BY

SIR WILLIAM BLACKSTONE, KNIGHT,

ONE OF THE JUSTICES OF THE COURT OF COMMON PLEAS.

SO ABRIDGED AS TO RETAIN ALL PORTIONS OF THE ORIGINAL WORK WHICH ARE OF HISTORICAL OR PRACTICAL VALUE.

WITH NOTES, AND REFERENCES TO AMERICAN DECISIONS:

FOR THE USE OF AMERICAN STUDENTS.

BY

GEORGE CHASE, LL. B.,

PROFESSOR OF LAW IN THE LAW SCHOOL OF COLUMBIA COLLEGE.

SECOND EDITION.

NEW YORK:
BANKS & BROTHERS, LAW PUBLISHERS,
144 NASSAU STREET.
ALBANY: 475 BROADWAY.
1884.

extorted without a real and voluntary consent, it was made an article in the petition of right 3 Car. I., that no man shall be compelled to yield any gift, loan, or benevolence, tax, or such like charge, without common consent by act of parliament. And, lastly, by the statute 1 W. and M. st. 2, c. 2, it is declared, that levying money for or to the use of the crown, by pretence of prerogative, without grant of parliament, or for longer time, or in other manner, than the same is or shall be granted, is illegal.

In the three preceding articles we have taken a short view of the principal absolute rights which appertain to every Englishman. But in vain would these rights be declared, ascertained, and protected by the dead letter of the laws, if the [*]141 constitution had provided no other method to secure their actual enjoyment. It has therefore established certain other auxiliary subordinate rights of the subject, which serve principally as outworks or barriers to protect and maintain inviolate the three great and primary rights, of personal security, personal liberty, and private property. These are:

1. The constitution, powers, and privileges of parliament; of which I shall treat at large in the ensuing chapter.

2. The limitation of the king's prerogative, by bounds so certain and notorious, that it is impossible he should either mistake or legally exceed them without the consent of the people. Of this, also, I shall treat in its proper place. The former of these keeps the legislative power in due health and vigor, so as to make it improbable that laws should be enacted destructive of general liberty: the latter is a guard upon the executive power by restraining it from acting either beyond or in contradiction to the laws, that are framed and established by the other.

3. A third subordinate right of every Englishman is that of applying to the courts of justice for redress of injuries. Since the law is in England the supreme arbiter of every man's life, liberty, and property, courts of justice must at all times be open to the subject, and the law be duly administered therein. The emphatical words of *magna charta*, spoken in the person of the king, who in judgment of law (says Sir Edward Coke), is ever present and repeating them in all his courts, are these; *nulli vendemus, nulli negabimus, aut differemus rectum vel justitiam:* "and therefore every subject," continues the same learned


author, "for injury done to him *in bonis, in terris, vel persona*, by any other subject, be he ecclesiastical or temporal, without any exception, may take his remedy by the course of the law, and have justice and right for the injury done to him, freely without sale, fully without any denial, and speedily without delay." It were endless to enumerate all the *affirmative* acts of [142*] parliament, wherein justice is directed to be done according to the law of the land; and what that law is every subject knows, or may know, if he pleases; for it depends not upon the arbitrary will of any judge, but is permanent, fixed, and unchangeable, unless by authority of parliament. I shall, however, just mention a few *negative* statutes, whereby abuses, perversions, or delays of justice, especially by the prerogative, are restrained. It is ordained by *magna charta* that no freeman shall be outlawed, that is, put out of the protection and benefit of the laws, but according to the law of the land. By 2 Edw. III. c. 8, and 11 Ric. II. c. 10, it is enacted, that no commands or letters shall be sent under the great seal, or the little seal, the signet, or privy seal, in disturbance of the law; or to disturb or delay common right; and, though such commandments should come, the judges shall not cease to do right; which is also made a part of their oath by statute 18 Edw. III. st. 4. And by 1 W. and M. st. 2, c. 2, it is declared that the pretended power of suspending, or dispensing with laws, or the execution of laws, by regal authority, without consent of parliament, is illegal.

Not only the substantial part, or judicial decisions, of the law, but also the formal part, or method of proceeding, cannot be altered but by parliament; for, if once those outworks were demolished, there would be an inlet to all manner of innovation in the body of the law itself. The king, it is true, may erect new courts of justice; but then they must proceed according to the old established forms of the common law. For which reason it is declared, in the statute 16 Car. I. c. 10, upon the dissolution of the court of starchamber, that neither his majesty, nor his privy counsel, have any jurisdiction, power or authority, by English bill, petition, articles, libel, (which were the course of proceeding in the starchamber, borrowed from the civil law,) or by any other arbitrary way whatsoever, to examine, or draw into question, determine, or dispose of the lands or goods of any subjects of this kingdom; but that the same ought to be tried and

*RIGHTS OF INDIVIDUALS.* 83

determined in the ordinary courts of justice, and by *course of law.*

4. "If there should happen any uncommon injury, or [*143 infringement of the rights before mentioned, which the ordinary course of law is too defective to reach, there still remains a fourth subordinate right, appertaining to every individual, namely, the right of petitioning the king, or either house of parliament, for the redress of grievances."[o] In Russia we are told that the czar Peter established a law, that no subject might petition the throne till he had first petitioned to different ministers of state. In case he obtained justice from neither, he might then present a third petition to the prince; but upon pain of death, if found to be in the wrong: the consequence of which was, that no one dared to offer such third petition; and grievances seldom falling under the notice of the sovereign, he had little opportunity to redress them. The restrictions, for some there are, which are laid upon petitioning in England, are of a nature extremely different; and, while they promote the spirit of peace, they are no check upon that of liberty. Care only must be taken, lest, under the pretence of petitioning, the subject be guilty of any riot or tumult, as happened in the opening of the memorable parliament of 1640; and, to prevent this, it is provided by the statute 13 Car. II. st. 1, c. 5, that no petition to the king, or either house of parliament, for any alteration in church or state, shall be signed by above twenty persons, unless the matter thereof be approved by three justices of the peace, or the major part of the grand jury in the country; and in London by the lord mayor, aldermen and common council: nor shall any petition be presented by more than ten persons at a time. But, under these regulations, it is declared by the statute 1 W. and M. st. 2, c. 2, that the subject hath a right to petition; and that all commitments and prosecutions for such petitioning are illegal.

5. The fifth and last auxiliary right of the subject, that I shall at present mention, is that of having arms for their defence, suitable to their condition and degree, and such as are

---

[o] "Congress shall make no law abridging the right of the people, peaceably to assemble, and to petition the government for a redress of grievances." (U. S. Constitution, Am'ts, Art. 1.) Similar provisions are contained in the State Constitutions. (See N. Y. Rev. Statutes, i. p. 85; *U. S.* v. *Cruikshank,* 92 U. S. 542.)

144*] allowed by law.[a] Which is also declared by the same statute, 1 W. and M. st. 2, c. 2, and is indeed a public allowance, under due restrictions, of the natural right of resistance and self-preservation, when the sanctions of society and laws are found insufficient to restrain the violence of oppression.

In these several articles consist the rights, or, as they are frequently termed, the liberties of Englishmen: liberties more generally talked of, than thoroughly understood; and yet highly necessary to be perfectly known and considered by every man of rank and property, lest his ignorance of the points whereon they are founded should hurry him into faction and licentiousness on the one hand, or a pusillanimous indifference and criminal submission on the other. And we have seen that these rights consist, primarily, in the free enjoyment of personal security, of personal liberty, and of private property. So long as these remain inviolate, the subject is perfectly free; for every species of compulsive tyranny and oppression must act in opposition to one or other of these rights, having no other object upon which it can possibly be employed. To preserve these from violation, it is necessary that the constitution of parliament be supported in its full vigor; and limits, certainly known, be set to the royal prerogative. And, lastly, to vindicate these rights, when actually violated or attacked, the subjects of England are entitled, in the first place, to the regular administration and free course of justice in the courts of law; next, to the right of petitioning the king and parliament for redress of grievances; and, lastly, to the right of having and using arms for self-preservation and defence. And all these rights and liberties it is our birthright to enjoy entire; unless where the laws of our country have laid them under necessary restraints; restraints in themselves so gentle and moderate, as will appear, upon farther inquiry, that no man of

---

[a] It is declared in the U. S. Constitution that, "A well-regulated militia being necessary to the security of a free State, the right of the people to keep and bear arms shall not be infringed." (Am'ts, Art. 2.) Similar provisions are contained in the constitutions of a number of the States. But it is generally held that statutes prohibiting the carrying of *concealed* weapons are not in conflict with these constitutional provisions, since they merely forbid the carrying of arms in a particular manner, which is likely to lead to breaches of the peace and provoke to the commission of crime, rather than contribute to public or personal defence. In some States, however, a contrary doctrine is maintained.

OF SUBORDINATE MAGISTRATES.   85

sense or probity would wish to see them slackened. For all of us have it in our choice to do every thing that a good man would desire to do; and are restrained from nothing but what would be pernicious either to ourselves or our fellow-citizens. So that this review * of our situation may fully justify the observation [*145 of a learned French author, who indeed generally both thought and wrote in the spirit of genuine freedom (a), and who hath not scrupled to profess, even in the very bosom of his native country, that the English is the only nation in the world where political and civil liberty is the direct end of its constitution. Recomending, therefore, to the student of our laws a farther and more accurate search into this extensive and important title, I shall close my remarks upon it with the expiring wish of the famous Father Paul to his country, "ESTO PERPETUA."

## CHAPTER II.

[BL. COMM.—BOOK I. CHAP. IX.]

*Of Subordinate Magistrates.*

IN a former chapter of these Commentaries we distinguished magistrates into two kinds: supreme, or those in whom the sovereign power of the state resides; and subordinate, or those who act in an inferior secondary sphere. We have hitherto considered the former kind only; namely, the supreme legislative power or parliament, and the supreme executive power, which is the king :* and are now to proceed to inquire into the rights and duties of the principal subordinate magistrates.

And herein we are not to investigate the powers and duties of his majesty's great officers of state, the lord treasurer, lord chamberlain, the principal secretaries, or the like; because I do not know that they are in that capacity in any considerable degree the objects of our laws, or have any very important share of

---

(a) Montesquieu. Spirit of Laws, xi. 7.

---

* The chapters upon these topics have been omitted, as relating exclusively to the English system of government, and therefore not practically important to the American student.