BRUCE A. KILDAY, ESQ., SBN 066415
  Email:  bkilday@akk-law.com
PETER D. HALLORAN, ESQ., SBN 184025
  Email:  phalloran@akk-law.com
SERENA M. SANDERS, ESQ., SBN 264799
  Email:  ssanders@akk-law.com
**ANGELO, KILDAY & KILDUFF, LLP**
Attorneys at Law
601 University Avenue, Suite 150
Sacramento, CA  95825
Telephone:  (916) 564-6100
Telecopier:  (916) 564-6263

Attorneys for Defendants
YOLO COUNTY and SHERIFF ED PRIETO

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ADAM RICHARDS, BRETT STEWART, SECOND AMENDMENT FOUNDATION, INC., and THE CALGUNS FOUNDATION, INC.,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>ED PRIETO and COUNTY OF YOLO<br><br>                    Defendants. | Case No.:2:09-CV-01235-MCE-DAD (Temp)<br><br>**DEFENDANTS YOLO COUNTY AND ED PRIETO'S POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT**<br><br>**Date:           March 10, 2011**<br>**Time:           2:00 p.m.**<br>**Courtroom:  7, 14th Floor**<br>**Judge: Morrison C. England, Jr.**<br><br>Trial Date:  None |

DEFENDANTS YOLO COUNTY AND ED PRIETO'S POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT
{00048286}

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. STATEMENT OF FACTS ................................................................................ 2

    A.   STATUTORY BACKGROUND ................................................................ 3

    B.   PLAINTIFFS' ALLEGATIONS ................................................................ 5

III. LAW & ARGUMENT ..................................................................................... 6

    A.   THE RIGHT TO CARRY CONCEALED WEAPONS IS NOT WITHIN THE AMBIT OF SECOND AMENDMENT PROTECTIONS ................................................................ 6

    B.   CALIFORNIA'S STATUTORY FRAMEWORK DOES NOT CREATE AN ABSOLUTE BAN ON CARRYING FIREARMS THAT COULD ARGUABLY BRING SHERIFF PRIETO'S POLICY INTO THE PURVIEW OF THE SECOND AMENDMENT ................................................ 11

    C.   THE PLAINTIFFS' CHALLENGE FAILS BECAUSE EVEN IF THE SECOND AMENDMENT APPLIES, SHERIFF PRIETO'S GOOD CAUSE POLICY MEETS THE INTERMEDIATE STANDARD OF SCRUTINY ................................................................................ 14

    D.   PLAINTIFFS' FACIAL CHALLENGE TO PENAL CODE SECTION 12050 NECESSARILY FAILS . 17

    E.   SHERIFF PRIETO'S CONCEALED WEAPON PERMITTING POLICY DOES NOT VIOLATE PLAINTIFFS' RIGHT TO EQUAL PROTECTION ................................................ 19

IV. CONCLUSION ................................................................................................ 21

DEFENDANTS YOLO COUNTY AND ED PRIETO'S POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT

{00048286}

# <u>TABLE OF AUTHORITIES</u>

<u>FEDERAL</u>

*Christy v. Hodel*
  857 F.2d 1324, 1331 (9th Cir. 1988) ...................................................................... 19

*City of Cleburne v. Cleburn Living Center, Inc.*
  473 U.S. 432, 439 (1985) ....................................................................................... 19

*District of Columbia v. Heller*
  554 U.S. 570 (2008) ................................................................................... 1, 7, 15, 18

*Freeman v. City of Santa Ana*
  68 F.3d 1180, 1187 (9th Cir. 1995) ....................................................................... 19

*Green v. City of Tucson*
  340 F.3d 891, 896 (9th Cir. 2003) ......................................................................... 20

*Grutter v. Bollinger*
  539 U.S. 306 (2003) ................................................................................................ 20

*Heller v. District of Columbia (Heller II)*
  698 F. Supp.2d 179, 188 (D.D.C. 2010) .......................................................... 14, 18

*Joyce v. Mavromatis*
  783 F.2d 56, 57 (6th Cir. 1986) ............................................................................. 19

*Kovacs v. Cooper*
  336 U.S. 77 ............................................................................................................. 18

*Kramer v. Union Free Sch. Dist. No. 15*
  395 U.S. 621 ........................................................................................................... 20

*McDonald v. City of Chicago*
  __ U.S. __, 130 S.Ct. 3020 (2010) ........................................................................... 7

*Medtronic, Inc. v. Lohr*
  518 U.S. 470, 475 (1996) ....................................................................................... 14

*N.Y. State Club Ass'n v. City of New York*
  487 U.S. 1, 11 (1988) ............................................................................................. 17

DEFENDANTS YOLO COUNTY AND ED PRIETO'S POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT
{00048286}

*Peruta v. County of San Diego*
__ F.Supp.2d__, 2010 U.S. Dist. LEXIS 130878 (S.D. Cal. Dec. 10, 2010) .................. passim

*Robertson v. Baldwin*
165 U.S. 275, 281-82 (1897) ........................................................................... 9, 11

*Sims v. U.S.*
963 A.2d 147, 150 (D.C. 2003) ............................................................................. 10

*Thornton v. City of St. Helens*
425 F.3d 1158, 1166-67 (9th Cir. Or. 2005) ......................................................... 19

*U.S. v. Chester, Jr.*
__F.3d__, 2010 U.S. App. LEXIS 26508, *18 (4th Cir. Dec. 30, 2010)............................ 8, 18

*U.S. v. Salerno*
481 U.S. 739, 749 (1987)...................................................................................... 20

*United States v. Hart*
726 F.Supp.2d 56, 60 (D. Mass. 2010) ................................................................. 10

*United States v. Marzzarella*
614 F.3d 85, 92 (3d Cir. 2010)................................................................. 7, 8, 14, 18

*United States v. Morrison*
529 U.S. 598, 618 (2000)...................................................................................... 14

*United States v. Pettengill*
682 F.Supp.2d 49, 55 (D. Me. 2010) .................................................................... 18

*United States* v. *Restrepo*
946 F.2d 654, 674 (9th Cir. 1991) ....................................................................... 20

*United States v. Scott*
450 F.3d 863, 870 ................................................................................................. 20

*United States v. Skoien*
614 F.3d 638, 640 (7th Cir. 2010) ............................................................... 7, 14, 18

*Wash. State Grange v. Wash. State Republican Party*
552 U.S. 442, 450 (2008)...................................................................................... 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iii

DEFENDANTS YOLO COUNTY AND ED PRIETO'S POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT

{00048286}

1

<u>S</u><span>TATE</span>

*Andrews v. State*
    50 Tenn. 165 178 (1871).................................................................................... 12

*Aymette v. State*
    21 Tenn. 154, 159-61 (1840) .............................................................................. 9

*Nunn v. Georgia*
    1 Ga. 243, 252 (1846) .................................................................................... 9, 12

*People v. Clark*
    45 Cal.App.4th 1147, 1153-54 (App.Ct. 1996) .................................................. 5

*People v. Dykes*
    46 Cal.4th 731, 778 (2009) ............................................................................... 11

*People v. Flores*
    169 Cal.App.4th 568, 575-76 (App.Ct. 2008) .................................................. 11

*People v. Hale*
    43 Cal.App.3d 353, 356 (App.Ct. 1974)........................................................... 20

*People v. Jurado*
    25 Cal.App.3d 1027, 1032 (1972) .................................................................... 20

*People v. Marin*
    795 N.E.2d 953, 958-59 (Ill.App. 2003)........................................................ 2, 20

*People v. Yarbrough*
    169 Cal.App.4th at 303, 314 (App.Ct. 2008)................................................. 2, 11

*State v. Buzzard*
    4 Ark. 18, 28 (1842) ........................................................................................... 9

*State v. Chandler*
    5 La. Ann. 489 (1850) ......................................................................................... 9

*State v. Knight*
    42 Kan.App.2d 893 ........................................................................................... 10

*State v. Reid*
    1 Ala. 612, 616 (1840) .............................................................................. 8, 12, 20

iv

1

*State v. Workman*
   35 W.Va. 367, 373 (1891) .......................................................................... 9

2

*Williams v. State of Maryland*
   __ Md.App.__, 2011 Md. LEXIS 1, *2 ...................................................... 10

3

4

5

6

S<small>TATUTES</small>

7

1876 Wyo. Comp. Laws ch. 52 § 1 (1876) ...................................................... 10

8

Cal. Penal Code § 12025 (a)(1)(2)-(3) .............................................................. 3

9

Cal  Penal Code § 12025(b) ............................................................................... 3

10

Cal. Penal Code § 12025(f) ............................................................................... 3

11

Cal. Penal Code § 12026 .................................................................................. 3

12

Cal. Penal Code § 12027(j) ............................................................................... 3

13

14

Cal. Penal Code § 12031 .................................................................................. 4

15

Cal. Penal Code § 12031(a)(1) .......................................................................... 4

16

Cal. Penal Code § 12031(f)............................................................................ 4, 5

17

18

Cal. Penal Code § 12031(j)(1) ...................................................................... 5, 12

19

Cal. Penal Code § 12050(a)(1)(A)-(B) .............................................................. 4

20

21

22

C<small>ONSTITUTIONAL</small> P<small>ROVISIONS</small>

23

Ky Const. of 1850, Art. XIII § 25.................................................................... 10

24

U.S. Const. Amend. XIV § 5 ........................................................................... 19

25

26

O<small>THER</small>

27

28

Clayton E. Cramer, C<small>ONCEALED</small> W<small>EAPONS</small> L<small>AWS OF THE</small> E<small>ARLY</small> R<small>EPUBLIC</small>: D<small>UELING</small>, S<small>OUTHERN</small>
   V<small>IOLENCE AND</small> M<small>ORAL</small> R<small>EFORM</small> 143, Appendix A (Praeger, 1999)......................... 10

DEFENDANTS YOLO COUNTY AND ED PRIETO'S POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT
{00048286}

David Hemenway, PRIVATE GUNS, PUBLIC HEALTH, 45 (University of Michigan Pres 2004) .... 18

Dennis A. Henigan, *The Heller Paradox*
    56 U.C.L.A. L. Rev. 1171, 1198 (2009) .............................................................. 17, 18

Mayors Against Illegal Guns, *Trace the Guns:  The Link Between Gun Laws and Interstate Gun Trafficking* (2010) ....................................................................................................... 16

Mark Tushnet, *Heller and the Perils of Compromise*
    13 Lewis & Clark L. Rev. 419, 429-31 (2009) ................................................... 16, 17

Michael B. de Leeuw et al., *Beyond the Final Frontier: A "Post-Racial" America?: The Obligations of Lawyers, the Legislature, and The Court: Ready Aim, Fire? District of Columbia v. Heller and Communities of Color*
    25 Harv.BlackLetter J. 133, 149 (Spring 2009) ....................................................... 15

DEFENDANTS YOLO COUNTY AND ED PRIETO'S POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT
{00048286}

# I. INTRODUCTION

The Second Amendment does not grant citizens the right to carry loaded, functional, concealed firearms in public based on what amounts to little more than the mere desire to do so. In this case, Plaintiffs challenge the constitutionality of Yolo County Sheriff Ed Prieto's concealed weapon permitting policy and California Penal Code section 12050 which authorizes the implementation of such a policy.[1]  Penal Code section 12050 permits county sheriffs to issue concealed weapon permits upon, among other things, the finding that "good cause exists for the issuance" of the permit.  Section 12050 does not define "good cause" and thus leaves that determination to each county sheriff.  Sheriff Prieto defines "good cause" for the issuance of a permit to exclude "[s]elf protection and protection of family (without credible threats of violence)."  *See* Exhibit 1, attached to Declaration of Undersheriff Thomas A. Lopez (hereinafter "Lopez Decl.").  Plaintiffs seek concealed weapon permits for self-defense but they admittedly cannot articulate any basis why they should fear for their personal safety.  Plaintiffs are not entitled to carry a concealed weapon just because they want to carry one.

Plaintiffs' Second Amendment challenge fails because the Second Amendment simply does not create a right to carry concealed weapons.  Instead, courts have regularly upheld concealed weapon bans and regulations, such as Sheriff Prieto's policy, since the early 1800s, and have continued to legally do so after the United States Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008).  Post-*Heller* jurisprudence has interpreted *Heller's* holding to be limited to the right to possess operable handguns in the ***home***.  Additionally, California's gun control statutes already allow residents to lawfully defend themselves without a permit.  Nothing in California's law prohibits Plaintiffs from openly carrying an unloaded weapon with ammunition close at hand and loading that weapon in an emergency situation where the need for self-defense arises.  Thus, contrary to Plaintiffs' argument, Sheriff Prieto is not preventing Plaintiffs from defending themselves.  The policy merely prohibits the carrying of a ***concealed*** weapon absent evidence of a threat to the applicant's personal safety.

---

[1] Hereinafter, any mention of an enumerated section refers to that section of the California Penal Code.

DEFENDANTS YOLO COUNTY AND ED PRIETO'S POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT

{00048286}

1     This exact issue has already been decided by one California District Court.  *See generally*

2  *Peruta v. County of San Diego,* __ F.Supp.2d __, 2010 U.S. Dist. LEXIS 130878 (S.D. Cal. Dec.

3  10, 2010) [notice of appeal filed December 14, 2010].[2]  In *Peruta*, the District Court for the

4  Southern District of California upheld a virtually identical policy instituted by the San Diego

5  Sheriff against Second Amendment and Equal Protection challenges.  *Id.* at *4.  The issues

6  presented in the instant case have already been decided and a policy indistinguishable from

7  Sheriff Prieto's policy has been upheld as constitutional.

8     Plaintiffs ask this Court to expand the basic right to possess handguns in the home for

9  self-defense recognized in *Heller* by holding that states may not regulate the carrying of

10  concealed handguns in public.  Not only is Plaintffs' request completely unprecedented, it would

11  result in extremely serious public safety implications for the County of Yolo and State of

12  California in light of the staggering number of deaths caused by firearms in the United States[3]

13  and the acute risk that concealed handguns pose to police officers[4] and the public alike.[5]

14  Accordingly, Defendants respectfully request that this Court grant Defendant's motion for

15  summary judgment and deny Plaintiff's motion.

16                              **II.  STATEMENT OF FACTS**

17     Plaintiffs claim that Sheriff Prieto's policy and the California state law authorizing

18  Sheriff Prieto to establish a concealed weapon permitting policy violate their right to keep and

19  bear arms under the Second Amendment and their equal protection rights under the Fourteenth

---

[2] *Peruta* was designated as a published decision but does not, as yet, have an official cite.

[3] Since 1960, more Americans have been murdered with guns than were killed by all methods in all the wars in the 20th Century combined.  *See* David Hemenway, PRIVATE GUNS, PUBLIC HEALTH, 45 (University of Michigan Press 2004).

[4] 90% of police officer killings are caused by guns.  *See* Declaration of Franklin E. Zimring (hereinafter "Zimring Decl.) attached to RJN.

[5] *See People v. Marin*, 795 N.E.2d 953, 958-59 (Ill.App. 2003) [stating that "i[]nnocent" motivations may transform into culpable conduct because of the accessibility of weapons as an outlet for subsequently kindled aggression. Additionally, accidents with loaded guns on public streets or the escalation of minor public altercations into gun battles are subject to increase where loaded weapons are readily available]; *People v. Yarbrough,* 169 Cal.App.4th 303, 314 (App.Ct. 2008) ["Unlike possession of a gun for protection within a residence, carrying a concealed firearm presents a recognized 'threat to public order,' and is 'prohibited as a means of preventing physical harm to persons other than the offender'"].

DEFENDANTS YOLO COUNTY AND ED PRIETO'S POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT
{00048286}

1  Amendment of the United States Constitution.  *See generally* Second Amended Complaint

2  (hereinafter "SAC"); Plaintiff's Motion for Summary Judgment (hereinafter "Plaintiff's MSJ").[6]

3  **A.   STATUTORY BACKGROUND**

4        Sheriff Prieto's concealed weapon permit policy constitutes one piece of California's

5  statutory scheme for regulating the carrying firearms in public places.  Pursuant to California

6  Penal Code section 12025, a person is guilty of the crime of "carrying a concealed firearm" when

7  he or she "carries concealed" on his or her person or in a vehicle under his or her control "any

8  pistol, revolver, or other firearm capable of being concealed."   Cal. Penal Code § 12025

9  (a)(1)(2)-(3).  Carrying a concealed firearm is punishable as misdemeanor unless the person falls

10  within certain designated categories, such as a convicted felon, in which case the crime is

11  punishable as a felony.  Cal  Penal Code § 12025(b).  However, firearms "carried openly in belt

12  holsters are not concealed" within the meaning of section 12025.  Cal. Penal Code § 12025(f).

13  Further, the law does not prohibit carrying a concealed weapon while in one's residence, place of

14  business, or while on his or her private property.  Cal. Penal Code § 12026.  Similarly, section

15  12025's prohibitions do not apply to a number of lawful uses such as: hunting or transporting

16  weapons to and from hunting trips by licensed hunters or fishermen (California Penal Code

17  section 12027(g)); practice shooting at established target ranges by members of gun clubs

18  (section 12027(f)); carrying by retired peace officers (section 12027(a)); and transporting

19  unloaded firearms while in the course of manufacturing, importing or selling firearms by persons

20  licensed to engage in that business (section 12027(b)).  Also excepted from section 12025's

21  general prohibition is any person licensed to carry a concealed firearm pursuant to section 12050.

22  Cal. Penal Code § 12027(j).

23        California Penal Code section 12050 provides that a county sheriff or head of a municipal

24  law enforcement agency may issue a license to carry a concealed firearm under the following

25  circumstances:

26

27

28  [6] Plaintiffs do not name the State of California as a defendant.  Rather, Plaintiffs put Sheriff Prieto and the County of
Yolo in the position of defending a state law which they did not enact yet are required to enforce.

DEFENDANTS YOLO COUNTY AND ED PRIETO'S POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT

{00048286}

1
2
3

> Upon proof that the person is of good moral character, that good cause exists for the issuance, and that the person applying satisfies any one of the conditions specified in subparagraph (D) and has completed a course of training as described in subparagraph (E).

4

5   Cal. Penal Code § 12050(a)(1)(A)-(B).  Subparagraph (a)(1)(D) of section 12050 requires, in

6   turn, that the applicant be a resident of the city or county, or is employed and spends a substantial

7   amount of time there.

8        Pursuant to California Penal Code section 12050.2, the Yolo County Sheriff's

9   Department publishes the criteria for the issuance of concealed weapons permits.  *See* Exhibit 1

10  attached to Lopez Decl.  The published criteria specify that an applicant must show good cause.

11  Examples of good cause include: victims of violent crime and/or documented threats of violence;

12  business owners who carry large sums of cash or valuable items; and business owners who work

13  all hours in remote areas and are likely to encounter dangerous people and situations.  *Id.* at 1.

14  The criteria also contain a list of what does not constitute good cause to carry a concealed

15  firearm which includes: "self protection and protection of family (without credible threats of

16  violence.)"  *Id.* at 2.

17       Nothing in section 12025, section 12050, or Sheriff Prieto's policy, directly prohibits the

18  carrying of firearms which are not concealed.  Rather, open carrying of a loaded weapon is

19  addressed by California Penal Code § 12031 which provides:

20
21
22
23

> A person is guilty of carrying a loaded firearm when he or she carries a loaded firearm on his or her person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory.

24

25  Cal. Penal Code § 12031(a)(1).

26       A "prohibited area" is defined to mean anyplace where it would be unlawful to discharge

27  the weapon.  Cal. Penal Code § 12031(f).  A firearm is considered "loaded" for purposes of this

28  statute when:

---

4

{00048286}

1
2
3
4
5

> [T]here is an unexpended cartridge or shell, consisting of a case that holds a charge of powder and a bullet or shot, in, or attached in any manner to, the firearm, including, but not limited to, in the firing chamber, magazine, or clip thereof attached to the firearm; except that a muzzle-loader firearm shall be deemed to be loaded when it is capped or primed and has a powder charge and ball or shot in the barrel or cylinder.

6  Cal. Penal Code § 12031(f).

7          One California case interpreted this definition to mean that a shell must be attached in

8  such a manner that it is capable of being fired in order to be considered "loaded."  *People v.*

9  *Clark,* 45 Cal.App.4th 1147, 1153-54 (App.Ct. 1996) (A shotgun is not "loaded" if shells are

10  attached to the stock, but must be removed from the stock and chambered before firing.)

11  Accordingly, section 12031 does not prohibit a person from openly carrying an unloaded firearm

12  even if the ammunition is close enough at hand so that the weapon can be loaded quickly.  Thus,

13  California citizens have the right under the laws to openly carry unloaded weapons with

14  ammunition nearby.

15          Furthermore, section 12031 not only allows a person to keep a loaded weapon in his or

16  her home, this section also allows for carrying of a loaded weapon at a temporary residence such

17  as a campsite.  The prohibitions in section 12031 are likewise inapplicable to the carrying of a

18  loaded firearm by a person who, "reasonably believes that the person or property of himself or

19  herself or of another is in immediate, grave danger and that the carrying of the weapon is

20  necessary for the preservation of that person or property."  Cal. Penal Code § 12031(j)(1).  Thus,

21  a person openly carrying an unloaded weapon may lawfully load it when faced with an

22  emergency situation to act in self-defense or the defense of others.

23  **B.     PLAINTIFFS' ALLEGATIONS**

24          Plaintiffs Adam Richards and Brett Stewart are residents of the Yolo County. SAC ¶¶ 1,

25  2; Declaration of Plaintiff Adam Richards (hereinafter "Richards Decl.") ¶1; Declaration of

26  Plaintiff Brett Stewart (hereinafter "Stewart Decl.") ¶ 1.  They both claim to be "law-abiding"

27  citizens, members of Second Amendment Foundation, Inc. (hereinafter "SAF"), and participants

28  in functions sponsored by Calguns Foundation, both of which are organizational Plaintiffs in this

1   lawsuit.  SAC ¶¶ 1, 2, 19, 22; Richards Decl. ¶ 1; Stewart Decl. ¶ 1.  Neither Mr. Richards nor

2   Mr. Stewart alleges any particularized need to carry a firearm other than a generalized wish to

3   protect themselves and their families.  SAC ¶¶ 19, 22; Richards Decl. ¶ 3; Stewart Decl. ¶ 3.  Mr.

4   Richards and Mr. Stewart both deny receipt of any threats of violence to themselves or their

5   families.  Richards Decl. ¶ 3; Stewart Decl. ¶ 3.

6          Mr. Richards claims he was informed that he needed to apply to the Davis Police

7   Department for a concealed weapons permit first, and the Sheriff would only consider a permit

8   application for a concealed carry permit if Mr. Richards' application was first denied by the

9   city's police chief. SAC ¶ 19; Richards Decl. ¶ 4.  Both Plaintiff Richards and Plaintiff Stewart

10  applied to the City of Davis Police Chief for a permit, and the applications were both denied.

11  SAC ¶¶ 20, 22; Richards Decl. ¶ 5; Stewart Decl. ¶ 5.  The Davis Police Chief wrote that because

12  of resource limitations, the city had discontinued the process of issuing concealed weapons

13  permits.  *Id.*

14         Plaintiff Richards claims that he contacted Sheriff Prieto's office to inquire about the

15  process for obtaining a permit to carry a handgun and was advised that the desire to carry a gun

16  for self-protection would not constitute good cause for the issuance of a permit.  SAC ¶ 19;

17  Richards Decl. ¶ 4.  He does not allege that he ever applied to the Sheriff for a permit to carry

18  weapons.

19         Plaintiff Stewart alleges that he applied to Sheriff Prieto for a permit to carry a handgun

20  citing a claimed need for self-defense and was denied because he could not establish good cause

21  why a permit should be issued.  SAC ¶ 23; Stewart Decl. ¶ 6.  Both Plaintiffs allege that if it

22  were not for the lack of a permit, they would carry a handgun in public for self-defense.  SAC ¶

23  21; Richards Decl. ¶10; Stewart Decl. ¶ 7.

24                        **III.  LAW & ARGUMENT**

25  **A.    THE RIGHT TO CARRY CONCEALED WEAPONS IS NOT WITHIN THE AMBIT OF SECOND
        AMENDMENT PROTECTIONS**

26

27         Contrary to Plaintiffs' argument that the Second Amendment secures their right to carry a

28  loaded concealed handgun without any reasonable concern for their personal safety, **no** court has

DEFENDANTS YOLO COUNTY AND ED PRIETO'S POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT
{00048286}

1   held that citizens have a right to carry concealed weapons.  Since the early 1800s, courts have

2   upheld concealed carry regulations.  The longstanding recognition of the validity of concealed

3   weapons laws was recently designated by the United States Supreme Court as "presumptively

4   lawful" and has been upheld by state and federal courts throughout the country since the Court's

5   decision in *Heller*.  554 U.S. at 626-27.  Plaintiffs seek protection for conduct that is not, and

6   never has been, within the scope of the Second Amendment.  To now hold that Plaintiffs have a

7   constitutional right to carry loaded concealed weapons in public would be an unprecedented

8   extension of Second Amendment law.

9       The Second Amendment of the United States Constitution provides, "A well regulated

10  Militia, being necessary to the security of a free State, the right of the people to keep and bear

11  Arms, shall not be infringed."  U.S. Const. Amend. II.  In *Heller*, the Supreme Court held for the

12  first time that the right to "keep and bear Arms" was an individual right, as opposed to a

13  collective protection of state militia.  *Heller, supra,* 554 U.S. at 595.[7]  In doing so, the Court

14  emphasized that the right is "not a right to keep and carry any weapon whatsoever in any manner

15  whatsoever and for any purpose."  *Id.* at 626.  Specifically, the Court identified "longstanding

16  prohibitions," such as prohibitions on carrying concealed weapons, as "presumptively lawful"

17  under the Second Amendment.  *Id.* at 626-27.

18      The Court in *Heller* limited its holding to "the right of law-abiding, responsible citizens

19  to use arms ***in defense of hearth and home***," and thus, did not provide any dispositive precedent

20  pertaining to the public carry of concealed weapons.  *Id.* at 635 (emphasis added).  *See also*

21  *McDonald, supra,* __ U.S. __, 130 S.Ct. 3036 (characterizing *Heller* as safeguarding an

22  individual right of self-defense when **home** possession was an issue (emphasis added)); *United*

23  *States v. Marzzarella,* 614 F.3d 85, 92 (3d Cir. 2010) (reasoning that *Heller* recognized that "the

24  Second Amendment protects the right of law-abiding citizens to possess [handguns] for self-

25  defense ***in the home***" (emphasis added)); *United States v. Skoien,* 614 F.3d 638, 640 (7th Cir.

26  2010) (en banc) (warning readers not to treat the *Heller* decision "as containing broader holdings

27

28  ───────────
[7] The Court held that the Second Amendment was incorporated to the states through the Fourteenth Amendment in
*McDonald v. City of Chicago,* __ U.S. __, 130 S.Ct. 3020 (2010).

DEFENDANTS YOLO COUNTY AND ED PRIETO'S POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT
{00048286}

1   than the Court set out to establish: that the Second Amendment creates individual rights, one of

2   which is keeping operable handguns *at home* for self-defense" (emphasis added)).

3          Although the holding in *Heller* did not encompass the type of concealed weapon

4   regulations at issue here, the ***process*** by which the Court reached its decision in *Heller* provides

5   guidance on how to evaluate a constitutional challenge under the Second Amendment.   The

6   Court made abundantly clear that the extent of rights under the Second Amendment, as it exists

7   today, is to be understood as it was in the eighteenth century when the Second Amendment was

8   adopted.   For example, the Court interpreted the word "arms" in specific reference to its "18th-

9   century meaning" as defined in the 1773 edition of Samuel Johnson's dictionary.   *Id.* at 581.

10  Likewise, the Court relied on the 1769 edition of Blackstone's *Commentaries on the Laws of*

11  *England* and 17th century English statutes to define the phrase "keep and bear arms."   *Id.* at 582-

12  83 (citing 4 *Commentaries of the Laws of England* 55 (1769); 3 Eng. Stat at Large 422 (1689); 1

13  W. Hawkins, *Treatise on the Pleas of the Crown* 26 (1771)).   Moreover, the United States Court

14  of Appeals for the Third and Fourth Circuits have recently held that the first consideration in

15  evaluating a challenged gun regulation is whether the burdened conduct was understood to be

16  within the scope of the Second Amendment guarantee at the time of ratification.   *U.S. v. Chester,*

17  *Jr.*, __F.3d__, 2010 U.S. App. LEXIS 26508, *18 (4th Cir. Dec. 30, 2010); *U.S. v. Marzzarella,*

18  614 F.3d 85, 89 (3d Cir. 2010).   If the burdened conduct was not understood to fall within the

19  ambit of the Second Amendment guarantee, the inquiry is complete.   *Marzzarella, supra,* 614

20  F.3d at 89.   Accordingly, determination of whether the Second Amendment includes the right for

21  citizens to carry loaded concealed weapons in public requires a review of the traditional

22  treatment of concealed weapons laws.

23          As the Court in *Heller* recognized, "the majority of the 19th-century courts to consider

24  the question held that prohibitions on carrying concealed weapons were lawful under the Second

25  Amendment or state analogues."   *Id.* at 626.   Cases from the founding era establish that the right

26  to keep and bear arms was universally understood not to include a separate right bear arms

27  concealed from others.   In *State v. Reid,* 1 Ala. 612, 616 (1840), the court held the Alabama

28  constitutional protection of the right to keep and bear arms is not a right to bear arms upon all

DEFENDANTS YOLO COUNTY AND ED PRIETO'S POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT

{00048286}

1   occasions and in all places, but merely in defense of himself and the State.   Therefore, a

2   prohibition against carrying concealed weapons did not violate the right because:

> [A] law which is intended merely to promote personal security,
> and to put down lawless aggression and violence, and to that end
> inhibits the wearing of certain weapons, in such a manner as is
> calculated to exert an unhappy influence upon the moral feelings of
> the wearer, by making him less regardful of the personal security
> of others, does not come in collision with the constitution.

8   *Id.* at. p. 617.

9        In *State v. Chandler,* 5 La. Ann. 489 (1850), it was again held that the right to keep and

10  bear arms did not extend to the carrying of concealed weapons.   The court viewed such

11  prohibitions as "absolutely necessary to counteract a vicious state of society, growing out of the

12  habit of carrying concealed weapons, and to prevent bloodshed and assassinations committed

13  upon unsuspecting persons."   *Id.* at. 489-90.   Hence, the court concluded that regulation of

14  concealed weapons did not interfere with the right to carry arms.  *Id.* at. 490.

15       After a ringing defense of the central importance of the right to keep and bear arms, the

16  court in *Nunn v. Georgia,* 1 Ga. 243, 252 (1846), nonetheless observed, "so far as the act of 1837

17  seeks to suppress the practice of carrying certain weapons *secretly,* that it is valid, inasmuch as it

18  does not deprive the citizen of his *natural* right of self-defence, or of his constitutional right to

19  keep and bear arms."  (emphasis in original.)  *See also Robertson v. Baldwin,* 165 U.S. 275, 281-

20  82 (1897) ("the right of the people to keep and bear arms (article 2) is not infringed by laws

21  prohibiting the carrying of concealed weapons"); *State v. Buzzard,* 4 Ark. 18, 28 (1842) (holding

22  that the right to bear arms did not extend to carrying concealed weapons); *State v. Workman,* 35

23  W.Va. 367, 373 (1891) (noting that "As early as the second year of Edward III, a statute was

24  passed prohibiting all persons, whatever their conditions, 'to go or ride armed by night or by

25  day'"); *Aymette v. State,* 21 Tenn. 154, 159-61 (1840) ("The Legislature . . . have a right to

26  prohibit the wearing or keeping weapons dangerous to the peace and safety of the citizens, and

27  which are not unusual in civilized warfare, or would not contribute to the common defense.")

28  Furthermore, many state governments of the era had legislation which in some fashion or another

DEFENDANTS YOLO COUNTY AND ED PRIETO'S POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT

{00048286}

1    regulated or prohibited the carrying of concealed weapons.  *See* Clayton E. Cramer, CONCEALED

2    WEAPONS LAWS OF THE EARLY REPUBLIC: DUELING, SOUTHERN VIOLENCE AND MORAL REFORM

3    143, Appendix A (Praeger, 1999); Ky Const. of 1850, Art. XIII § 25 (amended to allow a

4    concealed weapon ban); 1876 Wyo. Comp. Laws ch. 52 § 1 (1876).

5          Furthermore, since *Heller*, courts have held that concealed weapon carrying is not a right

6    protected by the Second Amendment.  In evaluating the constitutionality of California Penal

7    Code section 12025(a), the California Court of Appeals for the Fourth Appellate District noted

8    that there was an important distinction between the right espoused in *Heller* and concealed

9    weapon carry.  The court stated:

10
11            [C]arrying a firearm concealed on the person or in a vehicle in
               violation of section 12025, subdivision (a), is not in the nature of a
12             common use of a gun for lawful purposes which the court declared
               to be protected by the Second Amendment in *Heller*.  Unlike
13             possession of a gun for protection within a residence, carrying a
               concealed firearm presents a recognized "threat to public order,"
14             and is "prohibited as a means of preventing physical harm to
               persons other than the offender.'"  A person who carries a
15             concealed firearm on his person or in a vehicle, "which permits
               him immediate access to the firearm but impedes others from
16             detecting its presence, poses an 'imminent threat to public safety.
17

18

19   169 Cal.App.4th 303, 312-14 (App.Ct. 2008) (internal citations omitted).  *See also Williams v.*

20   *State of Maryland*, __ Md.App.__, 2011 Md. LEXIS 1, *2 (holding that a statute "prohibiting

21   wearing, carrying, or transporting a handgun, without a permit and outside of one's home, is

22   outside of the scope of the Second Amendment."); *State v. Knight,* 42 Kan.App.2d 893

23   (reasoning that a statute which criminalizes the possession of a concealed firearm was outside of

24   the Second Amendment); *United States v. Hart,* 726 F.Supp.2d 56, 60 (D. Mass. 2010) ("*Heller*

25   does not hold, nor even suggest, that concealed weapons laws are unconstitutional");  *Sims v.*

26   *U.S.,* 963 A.2d 147, 150 (D.C. 2003) (The Second Amendment does not "compel the District to

27   license a resident to carry and possess a handgun outside the confines of his home, however

28   broadly defined").

DEFENDANTS YOLO COUNTY AND ED PRIETO'S POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT
{00048286}

1    Neither a historical analysis nor a review of post-*Heller* decisions supports Plaintiffs'

2    claim that they have a right to carry loaded concealed weapons in public.  Rather the act of

3    carrying weapons secretly has been understood for more than a century to pose a considerable

4    danger to the public and concealed weapon prohibitions have been widely held not to offend the

5    right to keep and bear arms.  Plaintiffs' desired conduct simply falls outside of the protections of

6    the Second Amendment.

7    **B.   CALIFORNIA'S STATUTORY FRAMEWORK DOES NOT CREATE AN ABSOLUTE BAN ON
8         CARRYING FIREARMS THAT COULD ARGUABLY BRING SHERIFF PRIETO'S POLICY
         INTO THE PURVIEW OF THE SECOND AMENDMENT**

9

10   Plaintiffs admit that concealed carrying may be banned.  Plaintiff's MSJ, p. 7 (citing

11   *Robertson v. Baldwin,* 165 U.S. 275, 281-82 (1897).   However, in an attempt to bring

12   presumptively lawful concealed weapons laws into the purview of the Second Amendment,

13   Plaintiffs claim that California's regulatory scheme creates a total ban on the carrying of

14   handguns for self-defense.  *Id.* at 7-11.  Contrary to Plaintiff's argument, neither *Heller* nor any

15   court post-*Heller* has conditioned the presumptive lawfulness of bans on concealed carrying of

16   firearms on the recognition of an unrestricted right to carry a gun openly.  Furthermore, what

17   Plaintiffs fail to mention that California's regulations, consisting of Penal Code sections 12025,

18   12031, and 12050, have already withstood constitutional scrutiny both individually and when

19   considered as an overall scheme.  *See Peruta, supra*, 2010 U.S. Dist. LEXIS at *18-*19; *People

20   v. Flores,* 169 Cal.App.4th 568, 575-76 (App.Ct. 2008) (affirmed convictions under sections

21   12025 and 12031 in the face of a *Heller* challenge); *Yarbrough*, *supra,* 169 Cal.App.4th at 312-

22   14 (holding that nothing in Penal Code section 12025(a) violates the "limited right of the

23   individual established in *Heller* to possess and carry weapons in case of confrontation"); *See also

24   People v. Dykes*, 46 Cal.4th 731, 778 (2009) ("The high court's decision in *Heller* does not

25   require us to conclude that possession in a public place of a loaded, cocked, semiautomatic

26   weapon with a chambered round, concealed in a large glove and ready to fire, cannot be defined

27   as a crime under state law).

28   Indeed, as Plaintiffs mention, a few 19th Century **state** court cases struck down gun

DEFENDANTS YOLO COUNTY AND ED PRIETO'S POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT

{00048286}

1    control laws regulating both open carry and concealed weapons where there was *no* alternative

2    form for carrying firearms for self-defense.  Although, concealed weapons regulations do not

3    burden a right protected by the Second Amendment, an absolute ban on all firearms without

4    exception has been held to violate the right to keep and bear arms.  *See e.g. Nunn, supra,* 1 Ga. at

5    251.  For example, in *Andrews v. State*, 50 Tenn. 165 178 (1871), the Tennessee Supreme Court

6    held that a statute forbidding the open carry of a pistol "publicly or privately, without regard to

7    time or place, or circumstances" violated the right to keep and bear arms.  *See also Reid, supra,* 1

8    Ala. at 616-17 (observing that a regulation that amounts to a total ban would be

9    unconstitutional).  However, neither Penal Code section 12050 nor Sheriff Prieto's policy bans

10   the concealed carrying of firearms, but rather merely require a showing of "good cause" before a

11   concealed weapon permit is issued.  Moreover, as the United States District Court for the

12   Southern District of California recently held, California's gun control regulatory scheme, which

13   provides specific exceptions for open carry of loaded firearms for the purposes of self-defense in

14   the event of an emergency, does not constitute an absolute ban on firearms that violates the

15   Second Amendment.  *Peruta, supra*, 2010 U.S. Dist. LEXIS at *18-*19.

16         As discussed above, the carrying of firearms in California is regulated by three main

17   statutes: Penal Code sections 12025, 12031, and 12050.  Section 12025 prohibits concealed carry

18   of a firearm on one's person or in a vehicle without a permit or absent one of the other

19   enumerated exceptions.  Section 12050 provides a county sheriff with the ability to issue carry

20   concealed weapon permits, upon satisfaction of the listed requirements including a showing that

21   good cause exists for the issuance of the permit.  And section 12031 prohibits the open carry of

22   firearms in public places where discharge of such weapon would be unlawful.  Section 12031

23   also contains a myriad of exceptions, allowing open carry of a loaded firearm by a person who,

24   "reasonably believes that the person or property of himself or herself or of another is in

25   immediate, grave danger and that the carrying of the weapon is necessary for the preservation of

26   that person or property."  Cal. Penal Code § 12031(j)(1).  Nothing in any of the aforementioned

27   statutes precludes a person openly carrying an unloaded weapon with ammunition close at hand

28   from lawfully loading it when faced with an emergency situation to act in self-defense or the

1    defense of others.

2           In *Peruta v. San Diego County*, the Southern District of California upheld San Diego

3    Sheriff William Gore's concealed weapons permitting policy based, in part, on the finding that

4    California Penal Code sections 12025, 12031, and 12050 and the Sheriff's policy did not, when

5    considered together, unconstitutionally burden a persons right to carry an operable weapon for

6    the purposes of immediate self-defense.  *Peruta, supra,* 2010 U.S. Dist. LEXIS at *17-*19.

7    *Peruta* involved a Second Amendment challenge of San Diego County's concealed weapon

8    permitting policy which, as here, required an applicant to establish "good cause" for seeking a

9    permit.   *Id.* at *4.   San Diego Sheriff William Gore defined "good cause" as a set of

10   circumstances that distinguishes an applicant from other members of the general public and

11   causes him or her to be placed in harm's way.  Akin to Sheriff Prieto's policy, Sheriff Gore's

12   policy provided that generalized fear for one's personal safety was not, standing alone,

13   considered "good cause."  *Id.*

14          Chief Judge Gonzalez stated in her opinion in *Peruta,* that *Heller* provided guidance on

15   the scope of the Second Amendment right in terms of both "place" and "manner."  *Id.* at *10.

16   Specifically, the court noted that the *Heller* decision addressed the District of Columbia's total

17   ban on handgun possession in the home and that the regulation at issue required citizens to keep

18   handguns inoperable at all times, without exception, hence, making it impossible for citizens to

19   use firearms for the purpose of self-defense.  *Id.* at *10-*11.  Significantly, the *Peruta* court

20   found that "an important distinction exists between section 12031 and the District of Columbia

21   law at issue in *Heller,* which required that firearms in the home be rendered and kept inoperable

22   *at all times*.   Unlike section 12031, the District of Columbia law did not contain, and the

23   Supreme Court declined to infer, an exception for self-defense."  *Id.* at *16-*17 (emphasis in

24   original).  The court held that that "to the extent that Penal Code section 12025 and 12050 and

25   Defendant's policy burden conduct falling within the scope of the Second Amendment, if at all,

26   the burden is mitigated by the provisions of section 12031 that expressly permit loaded open

27   carry for immediate self-defense."  *Id.* at *19.

28          In summary, the court in *Peruta* has rejected the argument that that Plaintiffs assert here.

---

DEFENDANTS YOLO COUNTY AND ED PRIETO'S POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT

{00048286}

1   Sheriff Prieto's policy does **not** constitute the final brick in a statutory wall blocking Plaintiffs

2   from their right to keep and bear arms.  Rather, California law is carefully crafted to ensure that

3   Plaintiffs can carry a loaded weapon, without the need for a permit, in the event that immediate

4   self-defense or the need to defend their families becomes necessary.  Accordingly, Plaintiffs'

5   attempt to disguise Sheriff Prieto's modest limitation on the issuance of concealed weapon

6   permits as a "total ban" on firearms in order to sneak it into the ambit of Second Amendment

7   protections necessarily fails.  Thus, the Second Amendment does not apply.

8   **C.   THE PLAINTIFFS' CHALLENGE FAILS BECAUSE EVEN IF THE SECOND AMENDMENT**
    **APPLIES, SHERIFF PRIETO'S GOOD CAUSE POLICY MEETS THE INTERMEDIATE**
9   **STANDARD OF SCRUTINY**

10

11   Even if this Court finds that the Second Amendment protects a right to carry a loaded

12   concealed firearm in public, Sheriff Prieto's permitting policy would survive any standard of

13   judicial scrutiny.  As the *Peruta* court found, the majority of the courts both before and after

14   *McDonald* have employed an intermediate scrutiny standard when evaluating gun regulations

15   that do not touch on the "core" Second Amendment right: possession in the home.  *Peruta,*

16   *supra,* 2010 U.S Dist. LEXIS 130878 at *23-25 (citing *Skoien, supra,* 614 F.3d 638;

17   *Marzzarella, supra,* 614 F.3d at 97; *Heller v. District of Columbia (Heller II)*, 698 F. Supp.2d

18   179, 188 (D.D.C. 2010) (surveying the landscape of post-Heller decisions and joining "the

19   majority of courts" in holding that "intermediate scrutiny is the most appropriate standard").  The

20   *Peruta* court utilized the intermediate scrutiny standard articulated by the Third Circuit in

21   *Marzzarella, supra,* which requires the asserted governmental end to the challenged regulation to

22   be either "significant," "substantial," or "important" and requires the "fit between the challenged

23   regulation and the asserted objective to be reasonable, not perfect."   *Id.* at *26 (citing

24   *Marzzarella, supra,* 614 F.3d at 98).

25   Sheriff Prieto's concealed weapon permitting policy easily satisfies the intermediate

26   standard of scrutiny.  Maintaining public safety and preventing crime are clearly important

27   government interests. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996) (noting that States have

28   "great latitude" to use their police powers); *United States v. Morrison*, 529 U.S. 598, 618 (2000)

---

DEFENDANTS YOLO COUNTY AND ED PRIETO'S POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT

{00048286}

1   (There is "no better example of the police power" than "the suppression of violent crime").  The

2   regulation of concealed firearms is a critical factor in accomplishing those interests.  *McDonald,*

3   *supra,* 130 S. Ct. at 3126 ("Private gun regulation is the quintessential exercise of a State's

4   'police power' -- i.e., the power to 'protec[t] . . . the lives, limbs, health, comfort, and quiet of all

5   persons, and the protection of all property within the State,' by enacting 'all kinds of restraints

6   and burdens' on both 'persons and property'").

7        Handguns are unquestionably dangerous and contribute to the majority of criminal cases

8   that result in a person's death.  *See Heller, supra,* 554 U.S. at 636 (acknowledging the problem

9   of handgun violence in the U.S.); RJN ¶ 1, Zimring Decl. ¶ 3.  A 2001 study revealed that a ten

10  percent increase in handgun ownership correlates with a two percent increase in homicides.  *See*

11  Michael B. de Leeuw et al., *Beyond the Final Frontier: A "Post-Racial" America?: The*

12  *Obligations of Lawyers, the Legislature, and The Court: Ready Aim, Fire? District of Columbia*

13  *v. Heller and Communities of Color,* 25 Harv.BlackLetter J. 133, 149 (Spring 2009).  Handgun

14  possession is a particular problem in Yolo County due to the influx of gang members in recent

15  years.  *See* Lopez Decl. ¶ 8.

16       Concealed handguns, in particular, pose an obvious threat to the public as a concealed

17  handgun generates no special notice until the weapon is brandished.  RJN ¶ 1; Zimring Decl. ¶ 5.

18  As more than 90% of police officer killings are caused by guns, high rates of concealed gun

19  carry especially endanger police officers.  *Id.*  Of the 536 law enforcement officers killed in the

20  line of duty between 2000 and 2009 (including 47 in California), 490 were killed with firearms

21  and of those, handguns were used by the perpetrator 73% of the time.  *See* Fed. Bureau of

22  Investigations, U.S. Dep't of Justice, *Law Enforcement Officers Killed and Assaulted* (2009),

23  tables 1 and 27, *available at* http://www.fbi.gov/about-us/cjis/ucr/leoka/2009/leoka-2009.

24       Even when in the hands of law-abiding citizens, concealed handguns can create a

25  practical problem for police officers.  First, "it is not uncommon for a weapon to be stolen from a

26  person or out of a person's home.  Likewise, once a weapon (concealed or otherwise) is lawfully

27  in the possession of a citizen, the Sheriff has little power to prevent that citizen from selling or

28

---

DEFENDANTS YOLO COUNTY AND ED PRIETO'S POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT
{00048286}

1    giving the weapon away to persons with less moral character."  Lopez Decl. ¶ 9.[8]  Second, "if

2    multiple persons within a crowd are carrying concealed guns, this creates an increased likelihood

3    that the guns will be brandished or used.  Thus, the increased presence of guns may require

4    officers to wait until more officers arrive to provide back-up before addressing a confrontation

5    and/or to apply additional force."  Lopez Decl. ¶ 10.  Accordingly, even the lawful possession of

6    concealed handguns may result in increased safety problems for officers and for members of the

7    community at large.  *Id.*[9]

8            In *Peruta,* the Southern District of California found that the San Diego Sheriff had "an

9    important and substantial interest in public safety and in reducing the rate of gun use in crime";

10   "in reducing the number of concealed weapons in public in order to reduce the risks to other

11   members of the public who use the streets and go to public accommodations"; and "in reducing

12   the number of concealed handguns in public because of their disproportionate involvement in

13   life-threatening crimes of violence, particularly in streets and other public places."  *Peruta,*

14   *supra,* 2010 U.S.Dist. LEXIS at *26-27.  The court also held that the Sheriff's policy which

15   differentiated between "individuals who have a bona fide need to carry a concealed handgun for

16   self-defense and individuals who do not" was reasonably related to the government's important

17   and substantial interest in public safety.  *Id.* at *27.  Accordingly, the court in *Peruta* upheld the

18   San Diego Sheriff's concealed weapon permitting policy.

19          For the exact reasons expressed by the court in *Peruta*, this Court should likewise uphold

20   Sheriff Prieto's policy.  Sheriff's Prieto's policy creates a balance between the competing Second

21   Amendment interests in self-defense and public safety.  The County of Yolo enables those with a

22

---

23   [8] *See also* Mayors Against Illegal Guns, *Trace the Guns: The Link Between Gun Laws and Interstate Gun
     Trafficking* (2010), *available at*  http://www.tracetheguns.org/report.pdf  [finding that states who have more

24   permissive concealed carry laws (i.e. states that grant no discretion to law enforcement to deny a private individual a
     concealed weapon carry permit) are associated with an increase in gun trafficking].

25   [9] Commentators have noted additional potential problems with high rates of concealed weapon carry such as: (1)

26   that a widely-armed public could increase the number of criminals who decided to carry weapons illegally due to the
     increased riskiness of criminal activity and also increase the speed at which a criminal decides to shoot or disable

27   potential victims who the criminal believes to be armed; and, (2) the injection of a gun into an angry dispute might
     escalate more minor disputes into criminal homicides even when no criminal act is initially contemplated.  *See e.g.*

28   Mark Tushnet, *Heller and the Perils of Compromise,* 13 Lewis & Clark L. Rev. 419, 429-31 (2009).

DEFENDANTS YOLO COUNTY AND ED PRIETO'S POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT
{00048286}

1   legitimate need for self-defense to obtain a concealed weapon permit, so long as they also meet

2   the requirements enumerated in California Penal Code section 12050.  Sheriff Prieto's policy is

3   reasonably related to the government's important and substantial interest in public safety and

4   concealed weapon control.  Therefore, Sheriff Prieto's policy satisfies the intermediate scrutiny

5   standard.

6   **D.    PLAINTIFFS' FACIAL CHALLENGE TO PENAL CODE SECTION 12050 NECESSARILY**

7          **FAILS**

8          Plaintiffs also assert a facial challenge of Penal Code section 12050's "good cause" and

9   "good moral character" requirements.  Plaintiff's MSJ, 11-17.  As the U.S. Supreme Court has

10  acknowledged, facial challenges are sometimes permissible but require plaintiffs to demonstrate

11  that the challenged law either: (1) "could never be applied in a valid manner"; or, (2) as has been

12  applied only in First Amendment contexts, when the law is impermissibly overbroad because a

13  "substantial number" of its applications are unconstitutional, as judged in relation to the statute's

14  "plainly legitimate sweep."  *N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 11 (1988);

15  *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008).

16         Here, Plaintiffs admit that Defendant could exercise his discretion in a manner that would

17  satisfy their interpretation of the Second Amendment (i.e. to find that good cause for a concealed

18  weapon permit exists without an identifiable need for self-defense).  Therefore, Plaintiffs cannot

19  establish that Penal Code section 12050 could never be applied in a valid manner.  They also

20  have failed to establish that section 12050 is so overbroad that it inhibits the constitutional rights

21  of third parties.

22         Additionally, Plaintiffs' analogy to the First Amendment prior restraint jurisprudence is

23  improper.  Possession and carrying of lethal firearms obviously affects the public's interest in

24  safety and security more directly than the right to express oneself.  *See* Dennis A. Henigan, *The*

25  *Heller Paradox,* 56 U.C.L.A. L. Rev. 1171, 1198 (2009).  As one commentator explained,

26  transplanting First Amendment analysis into the Second Amendment context ignores the

27  fundamental difference between regulation of speech and guns.  Tushnet, *supra,* 13 Lewis &

28  Clark L. Rev. at 429-31.  For example, the First Amendment "time, place, and manner" analysis

17

DEFENDANTS YOLO COUNTY AND ED PRIETO'S POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT

{00048286}

1    differentiates between regulations that are justified without reference to the content of speech

2    and those that target the content of the speech itself.  *Id.* (citing *Kovacs v. Cooper,* 336 U.S. 77

3    [upheld ban on sound trucks on public streets regardless of message]).   However, the content-

4    based and content-neutral distinction is wholly inappropriate in the Second Amendment context.

5    Content-neutral speech regulations are not really "about" speech, but rather concern urban

6    amenities such as keeping the streets quiet whereas, gun regulations specifically target guns.  *Id.*

7    Almost every gun regulation would fail under a content-neutral approach, a result that the Court

8    in *Heller* clearly rejected.  *Heller, supra,* 554 U.S. at 626-27.  The nature of gun regulations,

9    which seek to address the risks inherent in possessing and carrying firearms, versus the speech

10   regulations are simply too different to draw a direct analogy.

11          Furthermore, as discussed above, post-*Heller* courts have overwhelmingly applied an

12   intermediate scrutiny standard of review.  *Peruta, supra,* 2010 U.S Dist. LEXIS 130878 at *23-

13   25 (citing *Skoien, supra,* 614 F.3d 638; *Marzzarella, supra,* 614 F.3d at 97; *Heller II*, *supra,* 698

14   F. Supp.2d at 188; *United States v. Pettengill*, 682 F.Supp.2d 49, 55 (D. Me. 2010).  The cases

15   cited by Plaintiffs lend no support to the proposition that the gun regulation at issue in this case

16   must be assessed under heightened scrutiny applied in prior restraint matters.  Plaintiff's MSJ, 11

17   [citing *Chester, supra,* 2010 U.S. App. LEXIS 26508 at *22; *Marzarella, supra,* 614 F.3d at

18   89].  Rather, the courts in both *Chester* and *Marzzarella* apply an intermediate scrutiny standard.

19   *See Chester, supra,* 2010 U.S. App. LEXIS 26508 at *26; *Marzzarella, supra,* 614 F.3d at 97.

20   Plaintiffs' attempt to characterize Penal Code section 12050 and Sheriff Prieto's concealed

21   weapon permitting policy as a "prior restraint" in order to subject it to heightened scrutiny which

22   has been widely rejected, should likewise be rejected by this Court.  *See* Henigan, *supra,* 56

23   U.C.L.A. L. Rev. at 1198 (noting that the *Heller* majority's commentary on presumptively lawful

24   gun control laws and failure to invoke the strict scrutiny standard negates pro-gun advocates'

25   analogies to the First Amendment).

26          Accordingly, Plaintiffs' facial challenge of the constitutionality of Penal Code section

27   12050 lacks merit.

28

DEFENDANTS YOLO COUNTY AND ED PRIETO'S POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT

{00048286}

1    **E.      SHERIFF PRIETO'S CONCEALED WEAPON PERMITTING POLICY DOES NOT VIOLATE**
2    **PLAINTIFFS' RIGHT TO EQUAL PROTECTION**

3         Plaintiff's second claim alleges that Penal Code section 12050's "good cause" and "good

4    moral character" requirements violate the Equal Protection Clause of the Fourteenth

5    Amendment.  This same argument was raised and rejected in *Peruta.*  2010 U.S. Dist. LEXIS at

6    *29.

7         The Equal Protection Clause provides that, no state shall "deny to any person within its

8    jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV § 5.  Essentially, the

9    Equal Protection Clause "is a directive that all persons similarly situated should be treated alike."

10   *City of Cleburne v. Cleburn Living Center, Inc.,* 473 U.S. 432, 439 (1985).  The first step in an

11   equal protection analysis is to identify the alleged classification groups who are allegedly treated

12   differently.  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. Or. 2005) (citing

13   *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995)).  To accomplish this, a

14   plaintiff can show that the law is applied in a discriminatory manner or imposes different

15   burdens on different classes of people. *Id.* (citing *Christy v. Hodel,* 857 F.2d 1324, 1331 (9th Cir.

16   1988)).  "The groups must be comprised of similarly situated persons so that the factor

17   motivating the alleged discrimination can be identified."  *Id.*  An equal protection claim fails

18   where a plaintiff "conflat[es] all persons not injured into a preferred class receiving better

19   treatment" than him or herself.  *Id.* (citing *Joyce v. Mavromatis*, 783 F.2d 56, 57 (6th Cir. 1986).

20        Here, Plaintiffs fail to establish that they are similarly situated as those who meet Sheriff

21   Prieto's good cause policy.  Contrary to Plaintiffs' arguments, the policy "does not treat similarly

22   situated individuals differently because not all law-abiding citizens are similarly situated . . .

23   Those who can document circumstances demonstrating 'good cause' are situated differently than

24   those who cannot." *Peruta, supra,* 2010 U.S. Dist. LEXIS at *29.

25        Even if Plaintiffs could be seen as similarly situated and treated differently, requiring an

26   identifiable need for self-defense would not violate the Equal Protection Clause under any form

27   of scrutiny.  Where the statute in question substantially burdens fundamental rights or employs

28   distinctions based on suspect classifications, such as race or national origin, strict scrutiny

1   applies.  *Green v. City of Tucson*, 340 F.3d 891, 896 (9th Cir. 2003) (citing *Grutter v. Bollinger*,

2   539 U.S. 306 (2003) (racial classifications); *Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S.

3   621 (right to vote)).  Under strict scrutiny, a statute will be upheld only if the state can show that

4   the statute is narrowly drawn to serve a compelling state interest.  However, where individuals

5   have distinguishing characteristics relevant to the interests of the State, the Equal Protection

6   Clause requires "only a rational means to serve a legitimate end."  *City of Cleburne*, 473 U.S. at

7   442.  Regardless of the level of constitutional scrutiny, Plaintiffs' equal protection claim fails.

8        As discussed above, the interests of public safety and crime prevention are

9   unquestionably important.  In fact, courts have held government interests in public safety and

10  crime prevention to be "compelling."  *U.S. v. Salerno*, 481 U.S. 739, 749 (1987); *United States v.*

11  *Scott*, 450 F.3d 863, 870 ("Crime prevention is a quintessential general law enforcement purpose

12  and therefore if the exact opposition of a special need."); *United States* v. *Restrepo*, 946 F.2d

13  654, 674 (9th Cir. 1991) (en banc) (Norris, J., dissenting) ("It goes without saying that the

14  government has a compelling interest in protecting the community from crime").   The

15  longstanding recognition that concealed weapons pose an acute danger to the public indicates

16  that the compelling interest in public safety is served by protecting the public from "the evil

17  practice of carrying weapons secretly" and "preventing harm to persons other that the offender."

18  *Reid, supra,* 1 Ala. At 616; *People v. Hale*, 43 Cal.App.3d 353, 356 (App.Ct. 1974) (quoting

19  *People v. Jurado,* 25 Cal.App.3d 1027, 1032 (1972); *People v. Marin,* 795 N.E.2d 953, 958-59

20  (Ill.App. 2003) ("the legislature has a compelling interest in preventing the possession of guns in

21  public under any such circumstances").  Moreover, as previously mentioned, limiting the number

22  of loaded and concealed weapons in public ensures that police are able to respond to emergency

23  situations immediately and safely without the need to wait for back up officers to verify that

24  those with concealed firearms in a crowd are lawfully carrying.  Lopez Decl. ¶ 10.

25       Sheriff Prieto's policy, which requires those seeking a concealed weapon permit for self-

26  defense to indicate his or her need for self-protection, is narrowly tailored to reduce the incidence

27  of unlawful public shooting and prevent substantial delay in police officers' ability to safely

28  respond to a dangerous situation while still ensuring that those with a particular need for self-

DEFENDANTS YOLO COUNTY AND ED PRIETO'S POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT

{00048286}

defense have access to firearms for lawful purposes.

In sum, Plaintiffs' equal protection claim fails on all accounts.  Plaintiffs have not shown that they were treated differently than similarly situated individuals.  Those who have a specific need for self-defense and those who merely wish to carry a handgun based on a generalized fear that the need for self-defense could arise are ***not*** similarly situated individuals.  And even if Plaintiffs' were similarly situated, the compelling interest of public safety and Sheriff Prieto's modest limitation requiring only some reasonable basis for the need to carry a concealed weapon for self-defense meet even the strictest level of scrutiny.

## IV.  CONCLUSION

For the aforementioned reasons, Defendants' request that this Court grant Defendants' motion for summary judgment and deny Plaintiffs' motion.


Dated:  February 10, 2011                    ANGELO, KILDAY & KILDUFF, LLP


                                             */s/ Serena M. Sanders*
                                        By:_____
                                             SERENA M. SANDERS
                                             Attorneys for Defendants YOLO
                                             COUNTY and SHERIFF ED PRIETO

DEFENDANTS YOLO COUNTY AND ED PRIETO'S POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT
{00048286}