BRUCE A. KILDAY, ESQ., SBN 066415
  Email: bkilday@akk-law.com
PETER D. HALLORAN, ESQ., SBN 184025
  Email: phalloran@akk-law.com
SERENA M. SANDERS, ESQ., SBN 264799
  Email: ssanders@akk-law.com
**ANGELO, KILDAY & KILDUFF, LLP**
Attorneys at Law
601 University Avenue, Suite 150
Sacramento, CA  95825
Telephone:  (916) 564-6100
Telecopier:  (916) 564-6263

Attorneys for Defendants
YOLO COUNTY and SHERIFF ED PRIETO

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| ADAM RICHARDS, BRETT STEWART, SECOND AMENDMENT FOUNDATION, INC., and THE CALGUNS FOUNDATION, INC., <br><br>Plaintiffs,<br><br>vs.<br><br>ED PRIETO and COUNTY OF YOLO<br><br>Defendants. | ) Case No.:2:09-CV-01235-MCE-DAD (Temp)<br>)<br>)<br>) **DECLARATION OF UNDERSHERIFF**<br>) **THOMAS LOPEZ IN SUPPORT OF**<br>) **MOTION FOR SUMMARY JUDGMENT**<br>)<br>) Date:         March 10, 2011<br>) Time:        2:00 p.m.<br>) Courtroom:  7, 14th Floor<br>) Judge: Morrison C. England, Jr.<br>)<br>) Trial Date:  None<br>) |
|---|---|

I, Thomas A. Lopez, declare as follows:

1. I make this declaration based on personal knowledge and if called as a witness I would competently testify to the matters stated herein.

2. I am the Undersheriff for the Yolo County Sheriff's Office. I work closely with, and directly under, Sheriff Ed Prieto. I have been the Yolo County Undersheriff for the last four

---

1

**DECLARATION OF UNDERSHERIFF THOMAS LOPEZ IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

{MSJ - Decl. Lopez; 00047544}

1  years. I have twenty-five years of law enforcement experience. I have worked at the Yolo
2  County Sheriff's Office for twenty-two of my twenty-five years in law enforcement.

3.  I work closely with Sheriff Prieto and have direct involvement in setting policy for the Sheriff's Office. I also have involvement in many different Sheriff's Office programs and functions. I have personal knowledge of the Sheriff's Office policies and intentions with respect to the administration of its Concealed Weapons License Policy. In fact, I am involved in the determination of denials of applications to carry concealed weapons as well as the appeals of the denials of applications to carry concealed weapons.

4.  Attached hereto as Exhibit 1 is a true and correct copy of the Yolo County Sheriff's Concealed Weapon License Policy. This policy is publicly available on the Sheriff's website: www.yolocountysheriff.com. For purposes of this declaration, I will refer to this policy as the CCW policy which stands for "Carrying Concealed Weapons."

5.  As section 11-2 of this policy makes clear, in order for a Yolo County resident to be qualified to carry a concealed weapon, that resident must be of good moral character and free of convictions which would disqualify the applicant from carrying a concealed weapon, among other criteria. This section also provides that the applicant must show "good cause" for the issuance of the license. For the reasons discussed further below, the good cause requirement is designed to prevent widespread, unnecessary possession of concealed weapons by Yolo County residents. Thus, as section 11-3 of the policy makes clear, a person seeking a CCW permit for the stated reason of "self protection" must demonstrate that a credible threat of violence exists which would justify the need to possess a concealed gun for self-defense purposes. It is my understanding that this is not an unusual standard as this standard is employed by other counties within this State and in other states.

6.  One of the obvious purposes for the Sheriff's CCW permit policy is to protect against gun violence as well as to protect officers conducting law enforcement operations.

7.  Gun violence is a problem throughout the State of California, and Yolo County is no exception. The vast majority of the homicides committed in Yolo County are committed with

1  the use of guns.  In addition, most of the violent acts committed in this County involving the use
2  of guns are by gang members.

3    8.  Gang intrusion into Yolo County has increased in recent years, along with the
4  associated gang violence.  In recent years, more law enforcement officers in urban areas are
5  focusing enforcement efforts on gangs.  Therefore, gang members are being pushed out of the
6  urbran areas into outlying counties such as Yolo where there are less law enforcement officers.
7  As a result, the gang problem in Yolo County is increasing and gun use is rising.

8    9.  Were more people in Yolo County granted the right to possess concealed guns,
9  neither the residents of Yolo County, nor Yolo County law enforcement officers, would be safer.
10 Persons who possess concealed weapons are also subject to crime.  It is not uncommon for a
11 weapon to be stolen from a person or out of a person's home.  Likewise, once a weapon
12 (concealed or otherwise) is lawfully in the possession of a citizen, the Sheriff has little power to
13 prevent that citizen from selling or giving the weapon away to persons with less moral character.

14   10.  Further, the presence of more guns in society at large, and in Yolo County creates
15 many problems for law enforcement officers.  Officers are often charged with monitoring public
16 gatherings as well as with breaking up public nuisances.  Officers must often act quickly
17 whenever a disturbance occurs.  Oftentimes, this involves isolating one or two problem
18 individuals.  However, if multiple persons within a crowd are carrying concealed guns, this
19 creates an increased likelihood that the guns will be brandished or used.  Thus, the increased
20 presence of guns may require officers to wait until more officers arrive to provide back-up before
21 addressing a confrontation and/or to apply additional force.  This delay may result in the use of a
22 gun.  Thus, the increased presence of guns creates not only increased safety problems for officers
23 but also for members of the community at large.

24   11.  The job of law enforcement officer is more difficult when there are greater
25 numbers of concealed weapons in the community.  Special protocols are employed whenever a
26 gun is found on a person detained or searched by an officer.  Officers are trained to assume the
27 worst whenever a gun is discovered.  The concealed gun does not come with a label that
28 identifies that person as "morally fit to carry a concealed gun."  The officers cannot confirm the

3
**DECLARATION OF UNDERSHERIFF THOMAS LOPEZ IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
{MSJ - Decl. Lopez; 00047544}

1 propriety of the person's possession of the gun until after the person is detained and the gun is
2 seized. Valuable officer resources are often used trying to ascertain whether the weapons seized
3 are lawfully possessed.

4   12.   It is the Sheriff's Office's position that increasing the numbers of concealed
5 weapons in the community increases the threat of gun violence to the community at large and to
6 law enforcement officer in particular. Further, the increased presence of concealed handguns
7 make law enforcement operations more difficult thus taking away valuable resources which
8 would be better used conducting law enforcement operations.

9   I declare under penalty of perjury under the laws of the State of California that the
10 foregoing is true and correct. Executed this 25th day of January 2011 at WOODLAND,
11 California.

_____
Thomas A. Lopez