1 JOHN J. SANSONE, County Counsel
By JAMES M. CHAPIN, Senior Deputy (SBN 118530)
2 1600 Pacific Highway, Room 355
San Diego, CA 92101
3 Telephone: (619) 531-5244
james.chapin@sdcounty.ca.gov
4
Attorneys for Defendant William D. Gore
5

6

7

8 **UNITED STATES DISTRICT COURT**

9 **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11 EDWARD PERUTA,MICHELLE LAXSON, JAMES DODD, DR. LESLIE BUNCHER, MARK CLEARY and CALIFORNIA RIFLE AND PISTOL ASSOCIATION FOUNDATION, ) ) ) ) ) ) | USSD No. **09-CV-2371 IEG (BLM)** **DECLARATION OF FRANKLIN E. ZIMRING IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| 14 Plaintiffs, ) | |
| 15 v. ) | |
| 16 COUNTY OF SAN DIEGO, WILLIAM D. GORE, INDIVIDUALLY AND IN HIS CAPACITY AS SHERIFF, ) ) ) | Hearing Date: November 1, 2010 Time: 10:30 a.m. Courtroom: 1 Honorable Irma E. Gonzalez |
| 18 Defendants. ) | |

19

20 I, Franklin E. Zimring, declare as follows:

21 1. My current academic appointment is William G. Simon Professor of Law,

22 Wolfen Distinguished Scholar and Chair of the Criminal Justice Research Program at

23 the University of California, Berkeley. I have been studying the relationship between

24 firearms and violence, strategies of firearms control, and patterns of gun commerce and

25 civilian gun usage since 1967. I have served as director of research of the task force on

26 firearms of the National Commission on the Causes and Prevention of Violence in

27 1968-1969 and as a firearms and federal criminal law expert for the National

28 Commission on Reform of Federal Criminal Laws. I have published several empirical

1                                       09-CV-2371 IEG (BGS)

1   studies of firearms and violence and on gun control, and I have co-authored three books
2   with firearms issues at their center, in 1969, 1986 and 1997. I have served as an expert
3   on the relationship between firearms and violence and on the design and evaluation of
4   firearms control. I was elected a Fellow of the American Academy of Criminology in
5   1993 and to the American Academy of Arts and Sciences in 1990. A full curriculum
6   vitae is Appendix A of this declaration.

7        2.    This declaration will summarize the empirical evidence and my expert
8   opinions concerning four issues arising out of this litigation.

9              (1) The relationship between firearms and violence and the governmental
10         interest in reducing the rate of gun use in crime.

11             (2) The particular governmental concerns with handguns and other
12         concealable weapons because of their disproportionate involvement in life-
13         threatening crimes of violence, particularly in streets and other public places.

14             (3) The special threat posed by concealed handguns as weapons used by
15         criminals in streets and other public spaces. Persons using the streets cannot
16         avoid and police patrolling the streets cannot detect persons who carry concealed
17         handguns and later will find victims who are at risk when concealed guns are
18         displayed in robberies or assaults and not infrequently discharged. The
19         governmental interest in limiting the number of persons licensed to carry
20         weapons hidden on their persons in public places is substantially related to
21         reducing the volume and deadliness of street robberies and assaults.

22             (4) A robust right to own a handgun in the privacy of one's own home
23         imposes whatever risks the gun poses on the owner and his family and those who
24         choose to visit those premises as long as the gun stays home. But unlimited
25         freedom given to a person to carry a hidden handgun on the streets subjects
26         everybody else on the street to whatever risks that gun may pose, and the others
27         on the public fare have neither notice of the risk nor power to control it. This
28         "externality" of unrestricted street carrying of concealed weapons is probably the

2

09-CV-2371 IEG (BGS)

1   root cause of the longstanding and broadly based history of restricting use of

2   concealed weapons in public places.

3       3.      Firearms and the Death Rate from Violence.

4       The overlap between firearms and crime in the United States is a partial but

5   important one. Of all so-called "index" crimes reported to the police nationwide, guns

6   are known to be involved in only about 4%. But gun use is concentrated in violent

7   crime, where about 20% of all offenses involve guns. And when only criminal acts that

8   kill are counted, guns account for almost 70% of all cases. Why are gun cases seven

9   out of every ten lethal crimes, if firearms are used in only one out of five violent

10  criminal acts? Commonsense suggests that the greater dangerousness of guns when

11  compared to other frequently used instruments of attack such as knives and blunt

12  instruments, plays a major role in increasing the death rate from crimes, but there is an

13  alternative hypothesis, that robbers and assaulters who truly want to kill will choose

14  guns more often, and therefore that the greater death rate simply reflects the more lethal

15  intentions of those who use guns. Which theory is better supported by studying patterns

16  of violent assault?

17      A series of studies that were conducted under my supervision addressed this issue

18  from 1967 to 1988. The first study compared knife and gun attacks in Chicago over

19  four police periods in 1967. I found that when one only compared gun and knife

20  assaults to the same part of the body and controlled for the number of wounds inflicted,

21  the gun attacks were five times as likely to kill.[1] Yet knives were the second most

22  deadly instruments used in violent assault. A second study found that guns that fired

23  smaller bullets were much less likely to kill than guns firing larger bullets, again

24  controlling for both the number of and the location of the most life-threatening wound.

25  The central finding was that instrumentality effects – the influences of weapon

26  ///

27

28      [1] Zimring, Franklin E. "Is Gun Control Likely to Reduce Violent Killings?"
    University of Chicago Law Review 35:721 (1968).

1  dangerousness independent of measurable variations in the attacker's intent was an

2  important influence in the death rate from assault.[2]

3      A second set of studies generated the same general results for the weapons used

4  in robberies. Since the robber usually doesn't mean to inflict harm if his demands are

5  met, the death rate from all forms of robbery is much lower than from aggravated

6  assault, but robberies with firearms are much more likely to produce a victim's death

7  than robberies using knives or personal force.[3] The availability of guns may or may not

8  influence the rate of robberies, but the proportion of robberies that involve guns will

9  have a major impact on the number of victims who die in robberies, and lethal robberies

10  are a major element in the life-threatening violence that sets U.S. cities apart from the

11  major metropolitan areas of other developed nations.

12      The governmental interest in restricting the use of guns in violent crime is in

13  reducing the number of deaths and life-threatening injuries that are produced when guns

14  rather than less deadly weapons became instruments of robbery and assault. This

15  interest is clear, appropriate and important for both the State of California and the

16  County of San Diego.

17      4.      The Special Risks of Handguns.

18      All forms of firearms are very dangerous to life if they are used in assaults and

19  robberies, but the handgun is the major hazard, particularly in big cities, because

20  handguns are much more likely to be used in criminal violence than shotguns and rifles.

21  Handguns are slightly more than one-third of all firearms owned by civilians in the

22  United States, but they are used in more than 75% of all gun killings and in even larger

23  ///

24  ///

25

26      [2] Zimring, Franklin E. "The Medium is the Message: Firearms Caliber as a
Determinant of the Death Rate from Assault," *Journal of Legal Studies* 1:97 (1972). See
27  Philip J. Cook, "The Technology of Personal Violence," *Crime and Justice* 14:1 (1991).

28      [3] Zimring, Franklin E. and James Zuehl. "Victim Injury and Death in Urban
Robbery: A Chicago Study," *Journal of Legal Studies* 15:1 (1986).

4                          09-CV-2371 IEG (BGS)

1   portions of robberies. The handgun is small, easy to carry and conceal, and deadly at

2   short range. Handguns are the priority concern of law enforcement everywhere.[4]

3           The special dangers of handgun use in violence have produced a wide variety of

4   different legal strategies to minimize the rate of handgun misuse. Many nations attempt

5   to restrict both the number of such firearms owned by citizens and reasons why citizens

6   might be permitted to own them. But California, like most U.S. states, allows

7   competent adults to own handguns if they have no major record of criminal conviction.

8           Because California does not restrict eligibility of most citizens to own handguns

9   or the volume of guns owned, the state's first line of defense against the use of such

10  weapons in street crime is a series of restrictions on the time, place and manner of

11  handgun use. California law prohibits the carrying of concealed deadly weapons

12  without a special permit. The state law delegates the authority to establish standards

13  and make individual decisions to county law enforcement. The goal here is to

14  distinguish uses of handguns that do not pose a special threat to the public (such as

15  storage and use in the owner's home) from uses that pose greater threats to public safety

16  (such as the carrying of concealed weapons in streets and public places). The special

17  danger of a hidden handgun is that it can be used against persons in public robbery and

18  assault. The concealment of a handgun means that other citizens and police don't know

19  it is in their shared space until it is brandished.

20          Of course not all of those carrying concealed handguns intend to use them as

21  instruments of public harm. But the existence of a loaded weapon is a hidden danger.

22  California's emphasis on controlling this risky use of guns rather than restricting

23  ownership itself is exactly opposite to the policy formerly pursued by Washington, D.C.

24  and disapproved in the *Heller* decision in 2008. The distinction between restricting

25  ownership and restricting dangerous uses is fundamental in the design of firearms

26  ///

27

28  [4] Zimring, Franklin E. and Gordon Hawkins. Crime Is Not the Problem: Lethal
    Violence in America, New York: Oxford University Press (1997), Chapters 1, 3 and 7.
    See also Zimring, Franklin E. and Gordon Hawkins, The Citizen's Guide to Gun Control,
    New York: McMillan (1986), at Chapter 5, p. 38.

09-CV-2371 IEG (BGS)

control.  And no public law regulation of firearms is as old or as pervasive as restrictions on public space use of firearms.

> "The earliest and most numerous state and local laws relate to the carrying or use of firearms.  In the 1600s, Massachusetts prohibited the carrying of defensive firearms in public places.  Kentucky in 1813, Indiana in 1819, Arkansas and Georgia in 1837 passed laws prohibiting the carrying of concealed weapons.  Many states and most cities today have laws attempting to regulate what has been called the place and manner in which firearms may be carried or used."[5]

Almost all places make special rules for concealed handguns in public places.

> "Most often, state law prohibits the carrying of concealable firearms without a special permit and the discharge of guns within city limits...Forty-nine states now impose some sort of restrictions on carrying a concealed gun."[6]

    5.    The Public Danger of Concealed Firearms.

The previous section of this declaration documented the statistical dominance of handguns in life-threatening violence but did not explain it.  Why are handguns, a minority of all firearms, responsible for three-quarters of all firearms deaths?  Why are handguns the overwhelmingly predominant firearm used in armed robbery?

This is a matter of simple criminal logistics.  Most firearms assaults and almost all firearms robberies take place outside the offender's home, so that using a firearm in crime requires transporting it to a non-home location.  But carrying a loaded shotgun to a commercial location for a robbery or to somebody else's home or on the street while looking for a target is a warning to potential victims and a red flag to passersby and to any law enforcement personnel that the armed pedestrian is not on an ordinary errand.  Other pedestrians and motorists can avoid the visibly armed person and police can ask questions and subject the visibly armed person to identity checks and surveillance.

---

[5] Newton, George and Franklin E. Zimring, *Firearms and Violence in American Life*, staff report submitted to the National Commission on Causes and Prevention of Violence, Washington D.C.: Government Printing Office (1969) at p. 87 (citations in original omitted).

[6] Zimring, Franklin E. and Gordon Hawkins, *The Citizen's Guide to Gun Control* (1986) at p. 123.  A more recent compendium lists 47 states with special permits, see www.lcav.org.

1      But the person with a concealed handgun in his pocket generates no special notice

2 until the weapon appears at his criminal destination. The robber or assaulter looks no

3 different from any other user of common public spaces. And this ability to escape special

4 scrutiny is the advantage that makes the concealed handgun into the dominant weapon of

5 choice for gun criminals and a special danger to government efforts to keep public spaces

6 safe and secure.

7      The necessity of carrying guns to crime sites without detection is one reason why

8 the National Violence Commission research reported that 86% of all the firearms used in

9 all assaults were handguns and an astonishing 96% of all firearms robberies were

10 committed with handguns in the ten large cities the task force surveyed.[7] What that

11 robbery percentage means is that the problem of gun robbery in American cities is almost

12 exclusively a problem of concealable handguns.

13      The stringent requirements that California and San Diego County impose on

14 persons wishing to have permits to carry loaded and concealed guns have two strategic

15 objectives. The first and most important is to restrict drastically the number of persons

16 secretly armed on the streets of San Diego County—to just over a thousand in a county of

17 over three million population in 2009, as shown in Figure 1 (attached as Appendix B).

18      Figure 1 shows the current control of the volume of California concealed weapons

19 (CCW) permits and the huge stakes of shifting to the standards asserted as rights by the

20 plaintiffs in this litigation. There are over two million adults and 1,223 permits in

21 San Diego County at present, a ratio of one permit for every 1,892 adults—carrying a

22 concealed weapon is far less than a one in one thousand proposition. Under the system

23 urged in this litigation, over 90% of these adults could have licenses if they wanted them,

24 and most citizens would face a difficult choice because they would have to decide

25 between being armed when so many other people might be secretly carrying guns and

26 staying unarmed. This is the dilemma that the high standards for and rarity of CCW

27 permits in San Diego avoids.

28

---

[7] Newton, George and Franklin E. Zimring (1969), *Firearms and Violence in American Life*, at Figure 8-1, p. 49.

7

09-CV-2371 IEG (BGS)

1  Making the carrying of hidden deadly weapons into a very rare privilege enables
2  citizens not to worry that they must choose between carrying a gun themselves or being
3  unarmed in public spaces where many strangers are secretly armed.  Restricting the
4  publicly entitled carriers of concealed handguns to a tiny number also reinforces the
5  practical monopoly of armed force by the police.  And the police are one of the primary
6  groups protected by small rates of carrying concealed guns since more than 90% of
7  killings of police are with guns.[s]

8  The second strategic aim of a permit-to-carry requirement is to screen those
9  persons who do have special needs for concealed guns to make sure they will not misuse
10  the guns they carry.  This kind of risk screening explains the good character, minimum
11  age and lack of criminal record requirements.  But the central reason to require a good
12  reason for needing a gun is to reduce the number of secretly armed citizens on the streets
13  and sidewalks of one of the biggest urban areas in the United States.

14  The State of California and the County of San Diego believe that it would threaten
15  the public health and safety to have hundreds of thousands of people in San Diego
16  carrying loaded handguns that the people who share the streets and stores and parks of
17  San Diego cannot see.

18  Is this public choice consistent with *D.C. v. Heller's* conferral of a right to handgun
19  ownership under the Second Amendment?  San Diego has never tried to restrict home
20  possession, so it obviously believes that public places call for different presumptive
21  policies, and history is on San Diego's side.  Special restrictions on carrying concealed
22  weapons are venerable and almost universal.  Even the plaintiffs in this suit do not
23  question the legitimacy of a special license for carrying weapons.  The central question is
24  whether public concealed weapons can be restricted even if possession in the home is
25  protected by *Heller*.

26  ///

27  ///

28

---

[s] U.S. Department of Justice, Federal Bureau of Investigation, *Law Enforcement Officers Killed and Assaulted* (2008), Table 27.

8

09-CV-2371 IEG (BGS)

6.    The External Dangers of Concealed Weapons in Public Spaces.

The right of home possession announced in the *Heller* case does not require citizens to purchase and own handguns in their houses but rather confers on individuals the right to decide for themselves if the benefits of gun possession in the home outweigh the risks. So the Second Amendment liberty announced in *Heller* puts the homeowner in a position of power to determine what risks to take. As long as the guns owned in the home stay there, Mr. Smith's gun is no risk to his neighbors. But the presence of loaded and concealed guns in public spaces is an act where Mr. Smith's decision will generate risks to others who use the streets, and go to public accommodations. And if the guns are concealed, the people who are exposed to the public place risks won't have notice or any ability to avoid the armed presence they confront.

This externality means that the implications of concealed carrying are spread over the community of users of public space and the only method of deciding policy is a collective determination of whether concealed weapon carrying should be allowed and under what circumstances.

So government must be involved in public space regulation in a way that is not necessary in the privacy of individual homes. This is why concealed weapons laws are the oldest form of legal regulation of gun use and the most common. There is a public choice that must be made to reduce the number of persons carrying concealed weapons by limiting licenses. But without a general rule on the standard for licenses, there is no way that individual preferences for or against high rates of permits can be translated into a regulatory framework.

I declare under penalty of perjury that the forgoing is true and correct. Executed at NEw Vonk, N.Y., this 30th of September 2010.


FRANKLIN E. ZIMRING

9                                    09-CV-2371 IEG (BGS)

TABLE OF ATTACHMENTS

| Attachment A | Curriculum Vita of Zimring | 000001-000019 |
| Attachment B | Figure 1 – Population and California Concealed Weapon (CCW) Permits. San Diego County 2009 | 000020 |

09-CV-2371 IEG (BGS)

# Edward Peruta, et al.
# v.
# County of San Diego, et al.

# USDC 09cv2371-IEG(BLM)

# Declaration of
# Franklin E. Zimring

# ATTACHMENT A

# FRANKLIN E. ZIMRING

14 September 2010

**PERSONAL**  Born 1942, Los Angeles, California; married; two adult children.

**EDUCATION**  Los Angeles Public Schools; B.A. with Distinction, Wayne State University (1963); J.D. *cum laude*, University of Chicago (1967).

**PRESENT POSITION**  **WILLIAM G. SIMON PROFESSOR OF LAW; WOLFEN DISTINGUISHED SCHOLAR** and **CHAIR**, Criminal Justice Research Program, Institute for Legal Research (formerly the Earl Warren Legal Institute), Boalt Hall School of Law, University of California, Berkeley.

**OTHER WORK**  **Principal Investigator,** Center on Culture, Immigration and Youth Violence Prevention (2005-).

**DIRECTOR**, Earl Warren Legal Institute (1983-2002).

**FACULTY OF LAW**, University of Chicago (1967-85): **KARL N. LLEWELLYN PROFESSOR OF JURISPRUDENCE** (1982-85) and **DIRECTOR**, Center for Studies in Criminal Justice (1975-85).

**MEMBER,** MacArthur Foundation Research Program on Adolescent Development and Juvenile Justice (1997-2007).

**FELLOW**, Center for Advanced Studies in the Behavioral Sciences, Stanford, California (1979-80).

**RAPPORTEUR**, Task Force on Sentencing Policy for Young Offenders, Twentieth Century Fund (1978).

**VISITING PROFESSOR OF LAW**, University of California, Irvine (2004), University of South Africa (1993), University of California, Berkeley (1983-85), Yale University (1973), and University of Pennsylvania (1972).

**DIRECTOR OF RESEARCH**, Task Force on Firearms, National Commission on the Causes and Prevention of Violence (1968-69).

**CONSULTANT:**  American Bar Foundation, Police Foundation, National Commission on Reform of Federal Criminal Laws, Institute for Defense Analysis, Department of Justice, Rand Corporation, Abt Associates, Federal Parole Commission, Federal Bureau of Prisons, Federal Bureau of Investigation, General Accounting Office, Canadian Institute for Advanced Studies, States of Alaska, California, Nebraska, Illinois, Virginia, and Washington, Cities of Chicago, New York and San Francisco.

**ADVISORY POSTS**  CURRENT: Campaign for Youth Justice (2007-); California Attorney General's Office (2001-); National Policy Committee, American Society of Criminology (1989-91 and 1993-); Board of Directors, Illinois Youth Services Association (Honorary) (1977-); Advisory Committee, National Pre-Trial Services Association (1975-).

PAST:  Asian Pacific Violence Prevention Center, National Council on Crime and Delinquency (2001-2005); Advisory Committee, Sentencing Project, American Law Institute (2001-2003); Criminal Justice Policy Group, Advisory Board, National Campaign Against Youth Violence (2000-2002); Expert Panel Member, U.S. Department of Transportation, National Highway Traffic Safety Administration Panel on Crash Risk of Alcohol-Involved Driving (1994-2002); Expert Panel Member, U.S. Department of Education Panel on Safe, Disciplined, and Drug-Free Schools (1998-2001); National Research Council Panel on Juvenile Crime: Prevention, Intervention, and Control (1998-2001); Advisory Board, Center on Crime, Communities, and Culture, Open Society Institute (1998-2000); Affiliated Expert, Center for Gun Policy and Research, Johns Hopkins University (1995-98); Gun Violence Advisory Group, American College of Physicians (1995-98); Advisory Committee, Violent and Serious

**000001**

Juvenile Offender Project, National Council on Crime and Delinquency (1994-1997); Panel on NIH Research on Anti-Social, Aggressive, and Violence-Related Behaviors and their Consequences (1997-); Task Force on Future Directions for the National Archive of Criminal Justice Data, Bureau of Justice Statistics, Department of Justice (1995); Panel on Antisocial, Aggressive, and Violence-Related Behaviors and Their Consequences, National Institute of Health (1993-94); Panel on Understanding and Control of Violent Behavior, National Research Council, National Academy of Sciences (1989-91); Research Advisory Committee, California Attorney General (1983-1990); Law Enforcement Committee, California Governor's Policy Council on Drug and Alcohol Abuse (1989-91); National Research Council, Working Group Crime and Violence (1985-88); Internal Revenue Service, Advisory Group Taxpayer Compliance Research (1983-87); Board of Directors, Eisenhower Foundation for the Prevention of Violence (1981-84); U.S. Secret Service Advisory Committee on Protection of the President (1981-82); Assembly of Behavioral and Social Sciences, National Academy of Sciences (1977-80); Executive Committee, Illinois Academy of Criminology (1968-71, 1977-78); Advisory Committee, Assessment Center for Alternatives to Juvenile Courts (1977-78) (chairman); Advisory Committee, Law and Social Science Program, National Science Foundation (1976-77); Advisory Committee, Vera Institute of Justice, Court Employment Project Evaluation (1976-77) (chairman); Panel on Deterrence and Incapacitation, National Academy of Sciences (1975-77); Legal Committee, American Civil Liberties Union, Illinois Branch (1967-70).

**EDITORIAL BOARDS**

CURRENT: Punishment and Society (1998-); Crime and Justice: An Annual Review of Research (1979-90, 1998-); Western Criminology Review (1997-); Buffalo Criminal Law Review (1996-); Homicide Studies (1996-); The Prison Journal (1992-); Journal of Research in Crime and Delinquency (1976-84, 1990-); Federal Sentencing Reporter (1988-); Studies in Crime and Justice (1980-); Journal of Criminal Justice (1978-).

PAST: Law and Society Review (1988-1998); British Journal of Criminology (1988-1996); Journal of Quantitative Criminology (1984-1989); Ethics, (1985-87); Encyclopedia of Crime and Justice (1979-83); Evaluation Quarterly (1976-84); Law and Behavior (1976-85).

**HONORS**

Edwin H. Sutherland Award, American Society of Criminology (2007); August Vollmer Award, American Society of Criminology (2006); Notable Book of the Year, *The Economist* (2003); Society of Research on Adolescence, Biannual Book Award (2002); Pass Award, National Council on Crime and Delinquency (1999); Donald Cressey Award, National Council on Crime and Delinquency (1995); Choice, Outstanding Academic Book Citation (1995 and 1982); Paul Tappan Award, Western Society of Criminology (1994); Fellow, American Society of Criminology (1993); Distinguished Alumni Award, Wayne State University (1989); Bustin Prize for Legal Research, University of Chicago (1981); Cooley Lecturer, University of Michigan Law School (1980); National Distinguished Alumnus Award, Delta-Sigma-Rho (1977); Ten Law Professors Who Shape the Future, *Time Magazine* (1977); Civilian Award of Merit for 1975, Chicago Crime Commission; Gavel Award Certificate of Merit, American Bar Association (1973).

**MEMBER**

American Academy of Arts and Sciences (1990-); California Bar Association (1968-); Order of the Coif (1967-); Phi Beta Kappa (1964-).

**BOOKS AND MONOGRAPHS**

(with David T. Johnson) *The Next Frontier: National Development, Political Change, and the Death Penalty in Asia,* New York: Oxford University Press (January 2009).

(with Bernard E. Harcourt) *Criminal Law and the Regulation of Vice,* American Casebook Series, St. Paul: Thompson/West Publishers (2007).

*The Great American Crime Decline,* New York: Oxford University Press (2006).

*American Juvenile Justice,* New York: Oxford University Press (2005); (Korean translation) Prime Books (November 2009).

*An American Travesty: Legal Responses to Adolescent Sexual Offending,* Chicago: University of Chicago Press (2004); paperback edition (2009).

*The Contradictions of American Capital Punishment*, New York: Oxford University Press (2003); paperback edition (2004); (Chinese translation) Shanghai Joint Publishing (2008).

(with Margaret Rosenheim, David Tanenhaus, and Bernardine Dohrn, eds.) *A Century of Juvenile Justice,* Chicago: University of Chicago Press (2002); (Chinese translation) Beijing: The Commercial Press (2008).

(with Gordon Hawkins and Sam Kamin) *Punishment and Democracy: Three Strikes and You're Out in California*, New York: Oxford University Press (2001).

(with Jeffrey Fagan, ed.) *The Changing Borders of Juvenile Justice: Transfer from Juvenile to Criminal Court*, Chicago: University of Chicago Press (2000).

(with Sam Kamin and Gordon Hawkins) *Crime and Punishment in California: The Impact of Three Strikes and You're Out,* Berkeley: Institute of Governmental Studies (1999).

*American Youth Violence,* New York: Oxford University Press (1998); paperback edition (2000).

(with Gordon Hawkins) *Crime Is Not the Problem: Lethal Violence in America*, New York: Oxford University Press (1997); paperback edition (1999).

(with Gordon Hawkins) *Incapacitation: Penal Confinement and the Restraint of Crime*, New York: Oxford University Press (1995); paperback edition (1997).

(with Gordon Hawkins) *Prison Population and Criminal Justice Policy in California*, Berkeley: Institute of Governmental Studies (1992).

(with Gordon Hawkins) *The Search for Rational Drug Control*, New York: Cambridge University Press (1992); paperback edition (1995).

(with Gordon Hawkins) *The Scale of Imprisonment*, Chicago: University of Chicago Press (1991); paperback edition (1993).

(with Gordon Hawkins) *Pornography in a Free Society*, New York: Cambridge University Press (1988); paperback edition (1991).

(with Michael Laurence and John Snortum, eds.) *Social Control of the Drinking Driver*, Chicago: University of Chicago Press (1988).

(with Gordon Hawkins) *The Citizen's Guide to Gun Control*, New York: Macmillan Publishing Company (1987); paperback edition (1992).

(with Gordon Hawkins) *Capital Punishment and the American Agenda*, New York: Cambridge University Press (1987); paperback edition (1989).

(with Mark Siegler, Steven Toulman, Kenneth Schaffner, eds.) *Medical Innovation and Bad Outcomes: Legal, Social, and Ethical Responses*, Ann Arbor, MI: Health Administration Press (1987).

(with Gordon Hawkins, ed.) *The Pursuit of Criminal Justice: Essays From the Chicago Center*, Chicago: University of Chicago Press (1984); Midway reprint edition (1986).

(with Michael Tonry, ed.) *Reform and Punishment: Essays on Criminal Sentencing*, Chicago: University of Chicago Press (1983).

*The Changing Legal World of Adolescence*, New York: The Free Press (1982); paperback edition (1985).

-(with Richard Frase) *The Criminal Justice System: Materials on the Administration and Reform of the Criminal Law*, Boston: Little, Brown and Company (1980).

*Confronting Youth Crime: Report of the Twentieth Century Fund Task Force on Sentencing Policy Toward Young Offenders*, New York: Holmes and Meier (1978).

(with Gordon Hawkins) *Deterrence: The Legal Threat in Crime Control*, Chicago: University of Chicago Press (1973); Phoenix edition (1976).

*Perspectives on Deterrence*, Washington, D.C.: National Institute of Mental Health (1971).

(with George P. Newton) *Firearms and Violence in American Life*, Task Force Report to the National Commission on the Causes and Prevention of Violence, Washington, D.C.: U.S. Government Printing Office (1969).

## SCHOLARLY ARTICLES

(with Jeffrey Fagan and David T. Johnson) Executions, Deterrence, and Homicide: A Tale of Two Cities *Journal of Empirical Legal Studies* 7:1-29 (March 2010).

Delinquency, Opportunity and the Second Generation Immigrant Puzzle, in Frost, et al, eds., *Contemporary Issues in Criminal Justice Policy: Policy Proposals from the American Society of Criminology Conference,* Wasdworth/Cenage Learning (2010) 247-249.

Juvenile Crime, in Shweder, et al, eds., *The Child: An Encyclopedic Companion*, University of Chicago Press (2009) 217-219.

Debating a Federal Sentencing Commission circa 1978, *Federal Sentencing Reporter* 21:271 (April 2009).

(with Alex Piquero, Wesley Jennings and Stephanie Hays) Investigating the Continuity of Sex Offending: Evidence from the Second Philadelphia Birth Cohort *Justice Quarterly* 26:59 (March 2009).

(with Chrysanthi S. Leon) A Cite Checker's Guide to Sexual Dangerousness, *Berkeley Journal of Criminal Law* 13:65 (Spring 2008).

Public Sentiment, Political Action, and Governmental Crime Policy—On the Origins and Significance of Mixed Feelings, *Criminology and Public Policy* 7:467 (August 2008).

Criminology and Its Discontents: The American Society of Criminology 2007 Sutherland Address, *Criminology* 46:255 (May 2008)

Violence and Drugs: Divide, Then Conquer? *Berkeley Review of Latin American Studies* pp. 40-41 (Spring 2008).

Handgun Control, The Second Amendment and Judicial Legislation in the D.C. Circuit: A Note on *Parker v. District of Columbia, New Criminal Law Review* 2:312 (2008).

(with David Johnson) Law, Society and Capital Punishment in Asia, *Punishment & Society* 10:103 (2008); also published in *Criminal Law Review* 19:109, (translated into Chinese by Richard Chiang for Peking University Press) (2006).

(with Gordon Hawkins) Crime Is Not the Problem: Lethal Violence in America, in Mary E. Vogel, ed., *Crime, Inequality and the State,* Routledge (2007).

Protect Individual Punishment Decisions from Mandatory Penalties, *Criminology and Public Policy* 6:881 (November 2007).

(with Alex Piquero and Wesley Jennings) Sexual Delinquency in Racine: Does Early Sex Offending Predict Later Sex Offending in Youth and Young Adulthood? *Criminology and Public Policy* 6:507 (August 2007).

Vollmer Award Address: The Necessity and Value of Transnational Comparative Study--Some Preaching from a Recent Convert, *Criminology and Public Policy* 5:615 (November 2006).

(with David Johnson) Taking Capital Punishment Seriously, *Asian Criminology* 1:89 (2006).

(with Cheryl Marie Webster and Anthony N. Doob) Proposition 8 and Crime Rates in California: The Case of the Disappearing Deterrent, *Criminology and Public Policy* 5:1501 (August 2006).

(with Jeffrey Fagan and Amanda Geller) Capital Punishment and Capital Murder:  Market Share and the Deterrent Effects of the Death Penalty, *Texas Law Review* 84:1803 (June 2006).

(with David Johnson) Public Opinion and the Governance of Punishment in Democratic Political Systems, *The Annals of The American Academy of Political and Social Science* 605:266 (May 2006).

(with David Johnson) On the Comparative Study of Corruption, *British Journal of Criminology* 45:793 (2005); also in the *Pacific McGeorge Global Business and Development Law Journal* 20:243 (2007) and in K. Padmaja, ed., *Corruption: Socio Legal Dimensions,* The ICFAI University Press (2008).

Penal Policy and Penal Legislation in Recent American Experience, *Stanford Law Review* 58:323 (2005).

Path Dependence, Culture and State-Level Execution Policy: A Reply to David Garland, *Punishment and Society* 7:377 (2005).

Minimizing Harm from Minority Disproportion, in Darnell F. Hawkins and Kimberly Kempf-Leonard, eds., *Our Children, Their Children: Confronting Racial and Ethnic Differences in American Juvenile Justice,* University of Chicago Press (2005).

Política Criminal y Legislación Penal en la Experiencia Estadounidense Reciente [Criminal Policy and Penal Legislation in the Recent American Experience], in José Luis Díez Ripollés, Ana María Prieto del Pino and Susana Soto Navarro, eds., *La Política Legislative Penal en Occidente: Una Perspectiva Comparada* [Legislative Penal Policy in the West: A Comparative Perspective], Tirant lo Blanch (2005).

In Memoriam: Norval Morris (1923-2004), *The University of Chicago Law Review* 72:459 (2005).

The Unexamined Death Penalty: Capital Punishment and Reform of the Model Penal Code, *Columbia Law Review* 105:1396 (2005).

Symbol and Substance in the Massachusetts Commission Report, *Indiana Law Journal* 80:115 (2005).

(with Michael Vitiello, Clark Kelso, Erwin Chemerinsky, Kevin Reitz, and Jonathan Turley) A Proposal for a Wholesale Reform of California's Sentencing Practice and Policy, *Loyola of Los Angeles Law Review* 38:903 (2004).

The Discrete Character of High-Lethality Youth Violence, *Youth Violence: Scientific Approaches to Prevention, Annals of the New York Academy of Sciences* 1036:290 (2004).

The Weakest Link: Human Rights and the Criminal Offender in Modern Democratic Government, in Gerben Bruinsma, Henk Elffers, and Jan de Keijser, eds., *Punishment, Places, and Perpetrators: Developments in Criminology and Criminal Justice Research,* Wilan Publishing (2004).

Firearms, Violence, and the Potential Impact of Firearms Control, *The Journal of Law, Medicine, and Ethics* 32:34 (2004).

(with Gordon Hawkins) Democracy and the Limits of Punishment: A Preface to Prisoners' Rights, in Michael Tonry, ed., *The Future of Imprisonment,* Oxford University Press (2004).

Continuity and Change in the American Gun Debate in Jens Ludwig and Philip J. Cook, eds., *Evaluating Gun Policy: Effects on Crime and Violence*, Washington, DC: Brookings Institution Press (2003); also as Chapter 1 in Bernard E. Harcourt, ed., *Guns, Crime, and Punishment in America*, New York: New York University Press (2003).

The Peculiar Present of American Capital Punishment in Stephen P. Garvey, ed., *Beyond Repair? America's Death Penalty*, Durham, NC: Duke University Press (2003).

(with Sam Kamin) Facts, Fallacies, and California's Three Strikes, *Duquesne Law Review* 40:605 (2002).

(with Gordon Hawkins) Capital Punishment, in *Oxford Companion to American Law*, New York: Oxford University Press (2002).

The New Politics of Criminal Justice:  Of "Three Strikes," Truth-in-Sentencing, and Megan's Laws, *National Institute of Justice Research Report, Perspectives on Crime and Justice: 1999-2000 Lecture Series, Washington, DC*, Volume 4 (March 2001).

Crime, Criminal Justice, and Criminology for a Smaller Planet: Some Notes on the 21st Century (Noriyoshi Takemura, translator), *Toin Law Review* 8:75 (2001)

Crime, Criminal Justice, and Criminology for a Smaller Planet: Some Notes on the 21st Century, *The Australian and New Zealand Journal of Criminology* 34:213 (2001)

Imprisonment Rates and the New Politics of Criminal Punishment, *Punishment and Society* 3:161 (2001); also as Chapter 10 in David Garland, ed., *Mass Imprisonment: Social Causes and Consequences*, London: Sage Publications (2001).

The Common Thread: Diversion in Juvenile Justice, *California Law Review* 88:2477 (2000); also as Chapter 5 in (with Margaret Rosenheim, David Tanenhaus, and Bernardine Dohrn, eds.) *A Century of Juvenile Justice*, Chicago: University of Chicago Press (2002).

(with Jeffrey Fagan) The Search for Causes in an Era of Declining Crime Rates: Some Lessons from the Study of New York City Homicide, *Crime and Delinquency* 46:446 (2000).

Incarceration Patterns, in *Mass Incarceration: Perspectives on U.S. Imprisonment, University of Chicago Law School Roundtable, A Journal of Interdisciplinary Legal Studies*, Volume 7 (2000).

Penal Proportionality and the Young Offender: Notes on Immaturity, Capacity, and Diminished Responsibility, in Thomas Grisso and Robert G. Schwartz, eds., *Youth on Trial*, Chicago: University of Chicago Press (2000).

The Punitive Necessity of Waiver, Chapter 6 in Fagan and Zimring, eds., *The Changing Borders of Juvenile Justice*, Chicago: University of Chicago Press (2000).

(with Jeffrey Fagan) Transfer Policy and Law Reform, Chapter 12 in Fagan and Zimring, eds., *The Changing Borders of Juvenile Justice*, Chicago: University of Chicago Press (2000).

American Youth Violence: Implications for National Juvenile Justice Policy, *Update on Law-Related Education* (American Bar Association publication) 23:6 (1999).

The Hardest of the Hard Cases: Adolescent Homicide in Juvenile and Criminal Courts, *Virginia Journal of Social Policy and the Law*, 6:437 (1999).

The 1990s Assault on Juvenile Justice: Notes from an Ideological Battleground, *Federal Sentencing Reporter* 11:260 (1999).

(with Jeffrey Fagan and June Kim) Declining Homicide in New York City: A Tale of Two Trends, *Journal of Criminal Law and Criminology* 88:1277 (1998); also (with Jeffrey Fagan) as Le Cause Della Diminuzione Dei Reati: Alcune Riflessioni Sull'Analisi Degli Omicidi a New York, in Marzio Barbagli, ed., *Perché È Diminuita La Criminalità Negli Stati Uniti?* Società Editrice Il Mulino (2000).

The Executioner's Dissonant Song: On Capital Punishment and American Legal Values, Chapter 6 in Austin Sarat, ed., *Killing State: Capital Punishment in Law, Politics, and Culture*, Oxford University Press (1999); also in *Institute for Philosophy and Public Policy Report* 19:1 (1999).

(with Gordon Hawkins) Public Attitudes Toward Crime: Is American Violence A Crime Problem? in Edward Rubin, ed., *Minimizing Harm: A New Crime Policy for Modern America*, Westview Press (1999).

Toward a Jurisprudence of Youth Violence, in Michael Tonry and Mark Moore, eds., *Youth Violence. Crime and Justice: A Review of Research*, University of Chicago Press (1998).

The Youth Violence Epidemic: Myth or Reality?, *Wake Forest Law Review* 33:727 (1998).

(with Gordon Hawkins) Crime Is Not the Problem: A Reply, *University of Colorado Law Review* 69:1177 (1998).

(with Gordon Hawkins) Lethal Violence and the Overreach of American Imprisonment, *National Institute of Justice Research Report, Presentations from the 1996 Annual Research and Evaluation Conference, Washington, DC*, July 1997.

Juvenile Violence in Policy Context, *Valparaiso University Law Review* 31:419 (1997).

The Doom of a Good Intention, *Politics and the Life Sciences* 16:44 (1997).

(with Gordon Hawkins) Concealed Handguns: The Counterfeit Deterrent, *The Responsive Community*, Spring 1997, p. 46.

Kids, Guns, and Homicide: Policy Notes on an Age-Specific Epidemic, *Law and Contemporary Problems* 59:25 (1996).

Populism, Democratic Government, and the Decline of Expert Authority: Some Reflections on "Three Strikes" in California, *Pacific Law Journal* 28:243 (1996).

(with Gordon Hawkins) Is American Violence a Crime Problem?, *Duke Law Journal* 46:43 (1996); also in Edward Rubin, ed., *Minimizing Harm as a Goal for Crime Policy in California*, California Policy Seminar Policy Research Program Report (1997).

The Wages of Ambivalence: On the Context and Prospects of New York's Death Penalty, *Buffalo Law Review* 44:303 (1996).

(with Adolfo Ceretti and Luisa Broli) Crime Takes a Holiday in Milan, *Crime and Delinquency* 42:269 (1996).

The Genetics of Crime, *Politics and the Life Sciences* 15:105 (1996).

(with Gordon Hawkins) Toward a Principled Basis for Federal Criminal Legislation, *The Annals of the American Academy of Political and Social Science* 543:15 (1996).

Firearms Control in Federal Law in the United States: Current Conditions and Further Choices, *UNAFEI Resource Materials Series*, No. 46 (Materials Produced during the 96th International Seminar Course on the "Promotion of International Cooperation in Criminal Justice Administration), p. 117 (1995).

Reflections on Firearms and the Criminal Law, *Journal of Criminal Law and Criminology* 86:1 (1995).

(with William Nelson) Cigarette Taxes as Cigarette Policy, *Tobacco Control* 4:S25 (1995).

(with Gordon Hawkins and Hank Ibser) Estimating the Effects of Increased Incarceration on Crime in California, *California Policy Seminar Brief*, Volume 7, July 1995.

(with Johannes van Vuren and Jan van Rooyen) Selectivity and Racial Bias in a Mandatory Death Sentence Dispensation: A South African Case Study, *Comparative and International Law Journal of Southern Africa* 28:107 (1995); Misleading Statistics and the Death Penalty -- Two Authors Reply to Henry Lever, *Comparative and International Law Journal of Southern Africa* 30:364 (1997).

(with Gordon Hawkins) The Growth of Imprisonment in California, *British Journal of Criminology* 34:83 (1994).

Policy Research on Firearms and Violence, *Health Affairs* 12:109 (1993).

(with Gordon Hawkins) Crime, Justice, and the Savings and Loan Crisis, *Crime and Justice* 18:247 (1993).

(with Gordon Hawkins) Continuity and Focus in Criminal Justice Research, *Journal of Research in Crime and Delinquency* 20:525 (1993).

Comparing Cigarette Policy and Illicit Drug and Alcohol Control, in Robert Rabin and Stephen Sugarman, eds., *Smoking Policy: Law, Politics, and Culture*, Oxford University Press (1993).

On the Liberating Virtues of Irrelevance, *Law and Society Review* 27:9 (1993).

Drug Treatment as a Criminal Sanction, *University of Colorado Law Review* 64:809 (1993).

Prison Population and Criminal Justice Policy in California, *California Policy Seminar Brief*, Volume 4, August 1992.

Inheriting the Wind: The Supreme Court and Capital Punishment in the 1990s, *Florida State University Law Review* 20:1 (1992).

The Jurisprudence of Teenage Pregnancy, in Margaret Rosenheim and Mark Testa, eds., *Early Parenthood and Coming of Age in the 1990s*, Rutgers University Press (1992).

The Multiple Middlegrounds Between Civil and Criminal Law, *Yale Law Journal* 101:1901 (1992).

(with Gordon Hawkins) What Kind of Drug War?, *Social Justice* 18:104 (1991).

Firearms, Violence, and Public Policy, *Scientific American*, November 1991, p. 48; also in Robert K. Miller, ed., *The Informed Argument*, Harcourt Brace (1995); K. Ackley, ed., *Perspective on Contemporary Issues*, Harcourt Brace (1996).

Ambivalence in State Capital Punishment Policy: An Empirical Sounding, *New York University Review of Law and Social Change* 18:729 (1991).

(with Gordon Hawkins) The Wrong Question: Critical Notes on the Decriminalization Debate, in Melvyn Krauss and Edward Lazear, eds., *Search for Alternatives: Drug-Control Policy in the United States*, Hoover Institution Press (1991).

The Limits of Criminal Punishment: Some Ethical Issues for the 1990s, in David Gordis, ed., *Crime, Punishment, and Deterrence: An American-Jewish Exploration*, University of Judaism (1991).

The Treatment of Hard Cases in American Juvenile Justice: In Defense of Discretionary Waiver, *Notre Dame Journal of Law, Ethics and Public Policy* 5:267 (1991).

Punishing the Drinking Driver: Toward an Experimental Design, *Alcohol, Drugs, and Driving* 6:199 (1990).

(with Gordon Hawkins) On the Scale of Imprisonment: Downes's *Contrasts in Tolerance*, *Journal of the American Bar Foundation* 14:527 (1989).

The Problem of Assault Firearms, *Crime and Delinquency* 35:538 (1989).

Methods for Measuring General Deterrence: A Plea for the Field Experiment, in Martin Friedland, ed., *Sanctions and Rewards in the Legal System*, University of Toronto Press (1989).

(with Gordon Hawkins) The Path Toward the Abolition of Capital Punishment in the Industrial West, *Revue Internationale de Droit Penal* 58:669 (1988).

(with Gordon Hawkins) The New Mathematics of Imprisonment, *Crime and Delinquency* 34:425 (1988); Response to Zedlewski, *Crime and Delinquency* 35:316 (1989).

(with Gordon Hawkins) Murder, the Model Code, and the Multiple Agendas of Reform, *Rutgers Law Journal* 19:733 (1988).

Law, Society, and the Drinking Driver: Some Concluding Reflections, in Michael Laurence, John Snortum, and Franklin Zimring, eds., *Social Control of the Drinking Driver*, University of Chicago Press (1988).

Principles of Criminal Sentencing, Plain and Fancy, *Northwestern University Law Review* 82:73 (1987).

Legal Perspectives on Family Violence, *California Law Review* 75:521 (1987); also as Toward a Jurisprudence of Family Violence, in Lloyd Ohlin and Michael Tonry, eds., *Family Violence*, University of Chicago Press (1989).

(with Gordon Hawkins) Dangerousness and Criminal Justice, *Michigan Law Review* 85:481 (1987).

Some Social Bases for Compensation Schemes, in Mark Siegler, Steven Toulman, Franklin Zimring, and Kenneth Schaffner, eds., *Medical Innovation and Bad Outcomes: Legal, Social, and Ethical Responses*, Health Administration Press (1987).

(with Gordon Hawkins) A Punishment in Search of a Crime: Standards for Capital Punishment in the Law of Criminal Homicide, *Maryland Law Review* 46:1001 (1986).

Gun Control, *Bulletin of New York Academy of Medicine* 62:5 (1986).

(with James Zuehl) Victim Injury and Death in Urban Robbery: A Chicago Study, *Journal of Legal Studies* 15:1 (1986).

(with Gordon Hawkins) Cycles of Reform in Youth Corrections: The Story of Borstal, in Peter Greenwood, ed., *The Juvenile Rehabilitation Reader*, Rand Corporation (1985).

(with Gordon Hawkins) Western European Perspectives on the Treatment of Young Offenders, in Peter Greenwood, ed., *The Juvenile Rehabilitation Reader*, Rand Corporation (1985).

(with Gordon Hawkins) Capital Punishment and the Eighth Amendment: Furman and Gregg in Retrospect, *UC Davis Law Review* 18:927 (1985).

Violence and Firearms Policy, in Lynn Curtis, ed., *American Violence and Public Policy*, Yale University Press (1985).

(with Rayman Solomon) The Principle of the Thing: Goss v. Lopez, Student Rights, and Litigation in the Public Interest of Children, in Robert Mnookin, ed., *In the Interest of Children: Advocacy, Law Reform, and Public Policy*, Part VI, W.H. Freeman (1985).

Youth Homicide in New York: A Preliminary Analysis, *Journal of Legal Studies* 13:81 (1984).

Sentencing Reform in the States, in Franklin Zimring and Michael Tonry, eds., *Reform and Punishment: Essays on Criminal Sentencing*, University of Chicago Press (1983).

(with Satyanshu K. Mukherjee and Barrik Van Winkle) Intimate Violence: A Study of Intersexual Homicide in Chicago, *University of Chicago Law Review* 50:910 (1983).

Kids, Groups, and Crime: Some Implications of a Well-Known Secret, *Journal of Criminal Law and Criminology* 72:867 (1981).

Handguns in the Twenty-First Century: Alternative Policy Futures, *The Annals of the American Academy of Political and Social Sciences* 455:1 (1981).

Secret Service "Dangerousness" Research, in Jane Takeuchi, Frederic Solomon, and W. Walter Menniger, eds., *Behavioral Science and the Secret Service: Toward the Prevention of Assassination*, National Academic Press (1981).

Notes Toward a Jurisprudence of Waiver, in John Hall, Donna Hamparian, John Pettibone, and Joseph White, eds., *Issues in Juvenile Justice Information and Training*, Academy of Contemporary Problems (1981).

Privilege, Maturity, and Responsibility: Notes on the Emerging Jurisprudence of Adolescence, in Lamar Empey, ed., *The Future of Childhood and Juvenile Justice*, University Press of Virginia (1980).

American Youth Violence: Issues and Trends, in Norval Morris and Michael Tonry, eds., *Crime and Justice: A Review of Research*, University of Chicago Press (1979).

(with Gordon Hawkins) Ideology and Euphoria in Crime Control, *Toledo Law Review* 10:370 (1979).

Pursuing Juvenile Justice: Comments on Some Recent Reform Proposals, *University of Detroit Journal of Urban Law* 55:631 (1978).

Policy Experiments in General Deterrence, 1970-1975, in Alfred Blumstein, Jacqueline Cohen, and Daniel Nagin, eds., *Deterrence and Incapacitation: Estimating the Effects of Criminal Sanctions on Crime Rates*, National Academy of Science (1978).

Bad Checks in Nebraska: A Study of Complex Threats, in Greenburg, ed., *Punishment and Corrections*, Sage Publications (1977).

The Serious Juvenile Offender: Notes on an Unknown Quantity, in *The Serious Juvenile Offender: Proceedings of a National Symposium Held in Minneapolis, Minnesota on September 19 and 20, 1977*, U.S. Government Printing Office (1978).

Determinants of the Death Rate from Robbery: A Detroit Time Study, *Journal of Legal Studies* 6:317 (1977).

Making the Punishment Fit the Crime: A Consumer's Guide to Sentencing Reform, *Hastings Center Reports*, December 1976; also in University of Chicago Law School, *Occasional Papers*, No. 12 (1977); Hyman Gross and Andrew von Hirsch, eds., *Sentencing*, Oxford University Press (1981); Culbertson and Tezak, eds., *Order Under Law*, Waveland Press (1981).

(with Joel Eigen and Sheila O'Malley) Punishing Homicide in Philadelphia: Perspectives on the Death Penalty, *University of Chicago Law Review* 43:227 (1976); also in Hugo Bedau and Chester Pierce, eds., *Capital Punishment in the United States*, AMS Press (1976); *Civil Rights*, Staff Report of the Sub-Committee on Constitutional Rights of the Committee on the Judiciary, U.S. Senate (1976).

Street Crime and New Guns: Some Implications for Firearms Control, *Journal of Criminal Justice* 4:95 (1976).

Field Experiments in General Deterrence: Preferring the Tortoise to the Hare, *Evaluation Magazine*, Volume 3, Russell Sage Publications (1976).

Firearms and Federal Law: The Gun Control Act of 1968, *Journal of Legal Studies* 4:133 (1975); also in *Evaluation Annual*, Volume 1, Russell Sage Publications (1977); *Improving the Criminal Justice System in the United States*, 94th Congress, 2d Session, Library of Congress Document No. 94-171, at 273.

Measuring the Impact of Pretrial Diversion from the Criminal Justice System, *University of Chicago Law Review* 41:224 (1974); also in *Crime and Justice Annual -- 1974*, Aldine (1975); Povl Boesen and Stanley Grupp, eds., *Community Based Corrections: Theory, Practice and Research*, Davis Publishing Company (1976).

Threat of Punishment as an Instrument of Crime Control, *Proceedings of the American Philosophical Society* 118:231 (1974).

(with Richard Block) Homicide in Chicago, 1965-70, *Journal of Research in Crime and Delinquency* 10:1 (1973); also in Lee Rainwater, ed., *Deviance and Liberty*, Aldine (1974).

Of Doctors, Deterrence, and the Dark Figure of Crime: A Note on Abortion in Hawaii, *University of Chicago Law Review* 39:699 (1972).

The Medium is the Message: Firearms Caliber as a Determinant of the Death Rate from Assault, *Journal of Legal Studies* 1:97 (1972).

(with Gordon Hawkins) The Legal Threat as an Instrument of Social Change, *Journal of Social Issues* 27:33 (1971); also in Ronald Akers and Richard Hawkins, eds., *Law and Control in Society*, Prentice-Hall (1974); June Louin Tapp and Felice Levine, eds., *Law, Justice, and the Individual in Society*, Holt, Rinehart (1977).

Firearms and Federal Criminal Law, *Working Papers of the National Commission on the Reform of Federal Criminal Laws*, Volume II, U.S. Government Printing Office (1970).

(with Norval Morris) Deterrence and Corrections, *Annals of the American Academy of Political Social Sciences* (1969).

(with Gordon Hawkins) Deterrence and Marginal Groups, *Journal of Research in Crime and Delinquency* 5:100 (1968).

Games with Guns and Statistics, *Wisconsin Law Review* 1968:1113 (1968).

Is Gun Control Likely to Reduce Violent Killings?, *University of Chicago Law Review* 35:721 (1968).

(with Edward H. Hunvald) Missouri Implied Consent Statutes, *Missouri Law Review* 33:323 (1968).

"Free Press-Fair Trial" Revisited: Defendant-Centered Remedies as a Publicity Policy, *University of Chicago Law Review* 33:512 (1966).

**GENERAL**

Juvenile Justice: Legal, Policy & Political Issues (expert participant), *Focus on Law Studies,* American Bar Association, Division for Public Education, Vol. XXV, No. 2, Spring 2010, p. 4.

Miraklet I New York, *Magasinet Neo*, No. 2, March/April 2010, p. 38.

Pulling the Plug on Capital Punishment, *The National Law Journal,* Vol. 32, No. 14, December 7, 2009, p. 42.

Foreword to Jane Sprott and Anthony Doob, *Justice for Girls? Stability and Change in the Youth Justice Systems of the United States and Canada,* University of Chicago Press (2009).

(with Jeffrey Fagan) Myths of Get-Tough Law, *St. Petersburg Times,* October 30, 2009; also available online at http://www.tampabay.com/opinion/columns/myths-of-get-tough-law/1048326#.

Preface to the Korean edition, *American Juvenile Justice,* Oxford University Press (2009).

Book review of *The Death Penalty: A Worldwide Perspective* (Roger Hood and Carolyn Hoyle, Oxford University Press, 2008), *Punishment and Society,* Vol. 11, No. 2, April 2009, p. 280.

(with David T. Johnson) Last Days of the Hangman, *New Scientist,* March 14, 2009, p. 22; also available online at http://www.newscientist.com/article/mg20126995.100-capital-punishment-its-all-politics.html.

(with David T. Johnson) The Death Penalty's Future, *The Los Angeles Daily Journal,* January 16, 2009, p. 9.

Preface to the Chinese edition, *The Contradictions of American Capital Punishment,* Shanghai Joint Publishing, pp. 4-7 (2008).

Preface to the Chinese edition, *A Century of Juvenile Justice,* Beijing: The Commercial Press (2008).

Prison Policy Reform, *Issues in Science and Technology,* Vol. 25, No. 1, Fall 2008, p. 11.

A Sick System, *Los Angeles Times,* October 25, 2008, p. A23.

Guns: Liberty or Order? *The National Law Journal,* Vol. 30, No. 30, April 7, 2008, p. 23.

What Lies Behind the Case of Lethal Injection? *The Sacramento Bee,* Sunday, December 16, 2007, p. E1; reprinted in *The Police News* (Gulf Coast edition), Vol. V, No. 1, January 2008, p. 14.

A Tale of Two Despots, *The National Law Journal,* Vol. 29, No. 49, August 6, 2007, p. 23.

Little Changes, Big Results, *The New York Times,* April 8, 2007, p. 9.

Foreword to Peter Greenwood, *Changing Lives: Delinquency Prevention as Crime Control Policy,* University of Chicago Press (2005).

Capital Punishment: An American Dilemma, in "Shalt Thou Kill? An In-Depth Look at Capital Punishment," *Christian Networks Journal,* Fall 2005, p. 17.

Terri Schiavo and the Dilemma of "Life or Death" Litigation, *San Francisco Daily Journal,* June 15, 2005, p. 6.; *Los Angeles Daily Journal,* June 15, 2005, p. 6.

A Death Knell for the Death Penalty? *Newsday,* March 4, 2005, p. A47.

Review of Kathleen Auerhahn, *Selective Incapacitation and Public Policy: Evaluating California's Imprisonment Crisis, Contemporary Sociology* 34:62 (2005).

Foreword to Thomas Grisso, *Double Jeopardy: Adolescent Offenders with Mental Disorders,* University of Chicago Press (2004).

Three-Ring Capital-Punishment Circus, *Los Angeles Daily Journal,* February 20, 2004, p. 6.

Confessions of a Former Smoker, in Jane E. Aaron, *The Compact Reader: Short Essays by Method and Time* (Seventh Edition), Boston: Bedford/St. Martin's (2003);also as Hot Boxes for Ex-Smokers, *Newsweek,* My Turn, April 20, 1987, p. 12.

Train an Impartial Eye on Police Behavior, *Los Angeles Times,* July 12, 2002, p. A17.

(with Gordon Hawkins) The Ethics of Criminal Justice: Aspects of Human Dignity, *International Encyclopedia of the Social and Behavioral Sciences,* Volume 5, p. 2949 (2002).

Review of David Garland, *The Culture of Control: Crime and Social Order in Contemporary Society, Criminal Justice* 1:465 (2001).

McVeigh's Execution Will Heal Neither Survivors Nor Public, *Los Angeles Times,* May 11, 2001, p. B17.

The Walking Plea of Wen Ho Lee, *San Francisco Chronicle,* October 2, 2000, p. A21

Contributor to M. Dwayne Smith, *A New Era of Homicide Studies? Visions of a Research Agenda for the Next Decade, Homicide Studies* 4:1 (2000).

It's Violence by All, Not Just Teen Violence, *Los Angeles Times,* August 8, 2000, p. B9.

Bring Courage Back into Fashion, *Los Angeles Times,* January 16, 2000, p. M5.

Capital Punishment, *Microsoft's Encarta Encyclopedia* (CD-ROM) (1999).

Gun Control, *Microsoft's Encarta Encyclopedia* (CD-ROM) (1999).

Criminal Investigation Is Just a Human Art, *Los Angeles Times*, August 1, 1999, p. M5.

Curb Imperial Power of Prosecutors, *Los Angeles Times*, April 20, 1999, p. A15.

Mystery Terms, *Boston Review*, New Democracy Forum, April/May 1999, p. 17.

Marking Time on Death Row, *The 1999 World Book Year Book*, World Book, Inc. (1999).

What is the Aim of Criminal Law? *Los Angeles Times*, January 14, 1999, p. A15.

The Buck Stops with Prison Managers: Perspective on the Corcoran Report, *Los Angeles Times*, November 28, 1998, p. M5.

(with Gordon Hawkins) Review of Jacob Sullum, *For Your Own Good: The Anti-Smoking Crusade and the Tyranny of Public Health*, *The Responsive Community* 8:75 (1998).

A Gulag Mentality in the Prisons, *Los Angeles Times*, July 15, 1998, p. B9.

Thank You for Not Sneezing, *Los Angeles Times*, February 1, 1998, p. M5.

The Truth About Repeat Sex Offenders, *Los Angeles Times*, May 5, 1997, p. B5.

Review of Ugljesa Zvekic and Anna Alvazzi del Frate, eds., *Criminal Victimization in the Developing World*, *Contemporary Sociology* 25:663 (1996).

Paranoia on the Playground, *Los Angeles Times*, November 11, 1996, p. B5.

Crying Wolf over Teen Demons, *Los Angeles Times*, August 19, 1996, p. B5.

Gun Control, *Microsoft's Encarta Encyclopedia* (CD-ROM) (1996).

Crime Is Not the Problem, *Iowa Advocate*, Spring/Summer 1996, p. 34.

Deadly Force: South Africa's Brave and Necessary Gamble with Its Death Penalty, *Chicago Tribune*, July 6, 1995, p. 19.

Will Success Spoil James Q. Wilson?, *Journal of Criminal Law and Criminology* 85:828 (1995).

Introduction to David Indermaur, *Violent Property Crime*, The Federation Press (1995).

For Gun Control, Give Big Cities Local Control, *Los Angeles Times*, May 17, 1995, p. B7.

Death Penalty, *jungeWelt*, April 1, 1995, p. 2.

Don't Bet on Executions Here Any Time Soon, *Newsday*, February 21, 1995, p. A27; also as Executions in New York? Don't Bet on It, *New York Law Journal*, February 27, 1995.

Clouding the Issue: Tobacco Industry Tries to Choke Off a Lawsuit, *Los Angeles Daily Journal*, December 12, 1994, p. 4.

The Voodoo Economics of California Crime, *Overcrowded Times*, October 1994, p. 3.

(with Gordon Hawkins) Policy on Crime, in Leonard Levy and Louis Fisher, eds., *Encyclopedia of the American Presidency*, Simon and Schuster (1994).

Tough Crime Laws Are False Promises, *Insight on the News* 10:21 (1994); also in *Federal Sentencing Reporter* 6:61 (1994).

"Three Strikes" Law Is Political Fool's Gold, *The Christian Science Monitor*, April 11, 1994, p. 23.

New Senate, Same Old Crime Debate, *The American Lawyer*, March 1994, p. 25.

To Punish Genocide with Death Is Overkill, *Los Angeles Times*, December 2, 1993, p. B7.

Introduction to Harry Kalven, Jr. and Hans Zeisel, *The American Jury*, Gryphon Editions (1993).

A Country Where There Is No Status Quo, *Los Angeles Times*, June 30, 1993, p. B7.

Hanged If We Do, Or We Don't, *Johannesburg Star*, April 5, 1993.

The Color of Murder, *Legal Times*, February 22, 1993, p. 34.

Intercept Migrating Guns, *Christian Science Monitor*, September 10, 1992, p. 18.

Are State Prisons Undercrowded?, *Federal Sentencing Reporter* 4:347 (1992).

Politics Dictate Wilson's Verdict, *Los Angeles Times*, April 12, 1992, p. M5.

Tribute to Sheldon Messinger, *California Law Review* 80:307 (1992).

(with Gordon Hawkins) Review of Samuel Gross and Robert Mauro, *Death and Discrimination: Racial Disparities in Capital Sentencing*, *Constitutional Commentary* 9:135 (1992).

(with Gordon Hawkins) Why the S&L Gang Isn't in Jail, *Los Angeles Times*, February 3, 1992, p. B5.

(with Michael Laurence) Capital Punishment, in Leonard Levy, ed., Supplement to the *Encyclopedia of the American Constitution*, Macmillan (1991).

More Jail Cells, Fewer Classrooms, *Los Angeles Times*, May 31, 1991, p. B5.

The Speaking Engagement as One-Night Stand, *California Monthly*, April 1991, p. 17.

The Great American Lockup, *Washington Post*, February 28, 1991, p. A19.

Strategies for Arms Control: Trace Illegal Firearms, *New York Times*, January 4, 1991, p. A13.

Foreword to Stephen Sugarman and Herma Hill Kay, eds., *Divorce Reform at the Crossroads*, Yale University Press (1990).

Greenmail Goes Transnational, *Los Angeles Times*, March 23, 1990, p. B7; also as Can East Germany Leverage Its Way to Wealth?, *Newsday*, April 9, 1990, p. 43.

A Solitary Symbol in a Deadly Tug of War, *Los Angeles Times*, January 29, 1990, p. B5.

Review of Donald Downs, *The New Politics of Pornography*, *New York Times Book Review*, January 28, 1990, p. 18.

(with Gordon Hawkins) Bennett's Sham Epidemic, *New York Times*, January 25, 1990, p. A23.

Hardly the Trial of the Century, *Michigan Law Review* 87:1307 (1989).

Foreword to James Jacobs, *Drunk Driving: An American Dilemma*, University of Chicago Press (1989).

Review of Jack Katz, *Seductions of Crime, New York Times Book Review*, November 20, 1988, p. 50.

Drug Death Penalty: A Federal Tantrum, *New York Times*, September 16, 1988, p. 19; also as A Temper Tantrum Masquerading as an Act of Government, *Los Angeles Daily Journal*, September 20, 1988.

Pint-Sized Debate on Child Executions: More Jurisprudence from the Briar Patch, *Legal Times*, July 18, 1988, p. 14; also as Can the Bad Die Young?, *The Connecticut Law Tribune*, July 18, 1988, p. 10; Justices Waffle on Death Penalty, *Fulton County Daily Report*, July 19, 1988, p. 2; Decision on Executing Youths Highlights Death Penalty Dilemma, *Manhattan Lawyer*, July 19, 1988, p. 12; The Court's Death Sentence Schizophrenia, *The Texas Lawyer*, July 25, 1988, p. 29; A Stumble at the Finish Line, *The Recorder*, July 28, 1988, p. 4.

If We Have Reached a Landmark in Our Execution Policy, It Is Still One of Confusion, *Los Angeles Times*, March 18, 1988, Part II, p. 7.

NRA's Latest Advice Can Get You Killed, *Los Angeles Times*, December 6, 1987, Part V, p. 5.

Review of James Wright and Peter Rossi, *Armed and Considered Dangerous: A Survey of Felons and Their Firearms, American Journal of Sociology* 93:224 (1987).

Why the Goetz Verdict Was Not a Landmark Precedent, *New York Times*, June 21, 1987, p. 25.

Is Court Too Split To Sanction Death?, *Los Angeles Times*, April 27, 1987, Part II, p. 5.

A Frequent Flier Explains the Thrill, *New York Times*, April 20, 1987, p. 19; also as Rewarding the Pinball for Its Tos and Fros, *International Herald Tribune*, April 23, 1987, p. 5; Confessions of a Frequent Flier, *Chemtech*, June 1988, p. 386.

Beyond Solomon: The "Tragic Choice" Cases, *Los Angeles Times*, March 16, 1987, Part II, p. 5.

EF Hutton Goes South, *Michigan Law Review* 85:397 (1987).

Is Retribution Only for a Few?, *Los Angeles Times*, December 4, 1986, Part II, p. 7.

Facing the Threat of a Crippled UC, *Los Angeles Times*, September 3, 1986, Part II, p. 5.

The Death Penalty: Ten Dark Years, *New York Times*, June 19, 1986, p. 27.

Gun Lobby's Victory Can Help Handgun Control, *Los Angeles Times*, April 28, 1986, Part II, p. 5.

Justice Teeters on the Fine Points, *Los Angeles Times*, January 29, 1986, Part II, p. 5.

Review of Henry Pontell, *A Capacity to Punish, American Journal of Sociology* 91:724 (1985).

Two New Books on Guns, *Michigan Law Review* 83:954 (1985).

Lessons for the Urban Jungle, *Los Angeles Times*, March 15, 1985, Part II, p. 5.

Smoking and Public Policy, *Chicago Tribune*, Perspective Section, January 18, 1985, p. 27.

Research Agendas, Information Policies and Program Outcomes, in Alan Westin, ed., *Information Policy and Crime Control Strategies: Proceedings of a Bureau of Justice Statistics/Search Conference*, U.S. Government Printing Office (1984).

Is Crime Going Out of Style?, *Los Angeles Times*, July 12, 1984; also as Is American Crime Up or Down?, *Newsday*, August 30, 1984, p. 89.

The Dan White Case: Justice Is a Victim, *Los Angeles Times*, January 6, 1984, Part II, p. 5.

The Death Penalty's Iron Law, *New York Times*, October 12, 1983, p. 27; also in *Los Angeles Times*, September 21, 1983, Part II, p. 7.

Where Do the New Scholars Learn New Scholarship?, *Journal of Legal Education* 33:453 (1983).

(with Gordon Hawkins) Crime Commissions, in Sanford Kadish, ed., *Encyclopedia of Crime and Justice*, Volume 1, The Free Press, Macmillan (1983).

(with James Lindgren) Regulation of Guns, in Sanford Kadish, ed., *Encyclopedia of Crime and Justice*, Volume 2, The Free Press, Macmillan (1983).

Foreword to John Kaplan, *The Hardest Drug: Heroin and Social Policy*, University of Chicago Press (1983).

Review of Arnold Trebach, *The Heroin Solution*, and John Kaplan, *The Hardest Drug: Heroin and Social Policy*, *The Times Literary Supplement*, June 10, 1983, p. 610.

Choosing the Right Camp for the Children, *Institutions Etc.* 6:21 (1983).

Idealizing the "Angels" on Death Row, *Los Angeles Times*, February 24, 1983, Part II, p. 7.

Uncle Sam's Wars on Crime, *The New Republic* 186:38 (1982).

Poland's "Real" Problem, *Chicago Tribune*, September 28, 1982, Perspective Section, p. 25.

Will the 21st Century Be Safer?, *Chicago Tribune*, April 13, 1982, Section 1, p. 22.

Crime: The 120-Day Solution, *Chicago Tribune*, September 28, 1981, Perspective Section, p. 25.

Review of Peter Prescott, *The Child Savers: Juvenile Justice Observed*, *New York Times Book Review*, June 14, 1981, p. 24.

(with Gordon Hawkins) Review of Walter Berns, *For Capital Punishment: Crime and the Morality of the Death Penalty*, *American Journal of Sociology* 86:1171 (1981).

Portnoy's Real Complaint, *Moment* 6:58 (1980).

Taking a Tour of America's Prisons, *Chicago Tribune*, September 14, 1980, Perspective Section, p. 4.

Foreword to Philip Cook and Daniel Nagin, *Does the Weapon Matter?*, Institute for Law and Social Research (1979).

Comment, Current Developments in Judicial Administration, *Federal Rules Decisions* 80:147 (1979).

Crime in the Streets, *Chicago Sun Times Bookweek*, November 27, 1978, p. 14.

Review of The Institute of Judicial Administration and the American Bar Association, *Juvenile Justice Standards Project*, *Harvard Law Review* 91:1934 (1978).

Review of Charles Silberman, *Criminal Justice, Criminal Violence*, *Chicago Tribune*, November 5, 1978, Section 7, p. 1.

Review of John Allen, *Crime in the Streets: Assault with a Deadly Weapon*, Chicago Sun Times, November 27, 1977.

Foreword to Richard Block, *Violent Crime: Environment, Interaction, and Death*, Heath, Lexington (1977).

Comment, *Hastings Center Report*, p. 44 (1977).

Review of Mark Lane and Dick Gregory, *Code Name Zorro, Chicago Sun Times*, May 1, 1977.

Illegally Seized Evidence: Exclude It?, *Los Angeles Times*, April 20, 1976.

Review of Pretrial Intervention, in Abt Associates, *Pretrial Services: An Evaluation of Policy Related Research*, p. 152 (1975).

A Tale of Two Cities, *Wall Street Journal*, December 20, 1974, p. 12; also in *Hearings of Senate Subcommittee to Investigate Juvenile Delinquency, Oversight of 1968 Gun Control Act*, Volume 1, p. 11 (1975).

Eight Myths About Gun Control in the United States, *Christian Science Monitor*, July 24, 1972.

Getting Serious About Guns, *The Nation* 214:457 (1972).

Some Facts About Homicide, *The Nation* 214:303 (1972).

Firearms Control: Hard Choices, *Trial*, p. 53 (1972).


**WRITING REPRINTED IN:**

Funk, Day, Coleman and McMahan, *The Simon and Schuster Short Prose Reader* (2009).

Lee, *Empowered College Reading* (2008).

Feng-Checkett and Checkett, *The Write Start* (2nd edition, 2005).

Anker, *Real Writing with Readings* (2004).

Aaron, *The Complete Reader* (2003).

Nicholas and Nicholl, *Models for Effective Writing* (2000).

Miller, *The Informed Argument* (4th edition, 1995).

Eschholtz and Rosa, *Themes for Writers* (1994).

Winterrowd and Winterrowd, *The Critical Reader, Thinker and Writer* (1992).

REPORTS TO GOVERNMENTAL AGENCIES

(with Peter W. Greenwood) *One More Chance:· The Pursuit of Promising Intervention Strategies for Chronic Juvenile Offenders*, Rand Corporation (1985).

(with Peter W. Greenwood and Allan Abrahamse) *Factors Affecting Sentence Severity for Young Adult Offenders*, Rand Corporation (1984).

(with Peter W. Greenwood and Marvin Lavin) *The Transition From Juvenile to Adult Court*, Rand Corporation (1984).

(with Peter W. Greenwood, Albert J. Lipson, and Allan Abrahamse) *Youth Crime and Juvenile Justice: A Report to the California Legislature*, Rand Corporation (1983).

(with Peter W. Greenwood and Joan Petersilia) *Age, Crime, and Sanctions: The Transition From Juvenile To Criminal Court*, Rand Corporation (1980).

*Dealing with Youth Crime: National Needs and Federal Priorities*, a policy paper prepared for the Federal Coordinating Council on Juvenile Justice and Delinquency Prevention (1975) (mimeo).

*The Court Employment Project: A Report to the City of New York* (1974) (mimeo).

000019

# Edward Peruta, et al.
# v.
# County of San Diego, et al.

# USDC 09cv2371-IEG(BLM)

# Declaration of
# Franklin E. Zimring

# ATTACHMENT B

Figure 1.    Population and California Concealed Weapon (CCW) Permits, San Diego County 2009.



Sources: Population, U.S. Census QuickFacts about San Diego County 2009
(available at http://quickfacts.census.gov/qfd/states/06/06073.html); CCW permits, Communication from Sheriff of San Diego
County, September 15, 2010.

9