BRUCE A. KILDAY, ESQ., SBN 066415
 Email: bkilday@akk-law.com
PETER D. HALLORAN, ESQ., SBN 184025
 Email: phalloran@akk-law.com
SERENA M. SANDERS, ESQ., SBN 264799
 Email: ssanders@akk-law.com
**ANGELO, KILDAY & KILDUFF, LLP**
Attorneys at Law
601 University Avenue, Suite 150
Sacramento, CA 95825
Telephone: (916) 564-6100
Telecopier: (916) 564-6263

Attorneys for Defendants
YOLO COUNTY and SHERIFF ED PRIETO

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM RICHARDS, BRETT STEWART, SECOND AMENDMENT FOUNDATION, INC., and THE CALGUNS FOUNDATION, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> ED PRIETO and COUNTY OF YOLO <br><br> Defendants. | Case No.:2:09-CV-01235-MCE-DAD (Temp) <br><br> **REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** <br><br> Date: March 10, 2011 <br> Time: 2:00 p.m. <br> Courtroom: 7, 14th Floor <br> Judge: Morrison C. England, Jr. <br><br> Trial Date: None |

Plaintiffs admit that they are "not entitled to carry a concealed weapon just because they want to carry one." Plaintiff's Opp. 1. Yet, they challenge the constitutionality of Defendants' policy which declines to issue a permit to do just that: carry a loaded, concealed weapon in public without any legitimate basis for the belief that self-defense is needed. Although Plaintiffs claim that they seek to carry a functional handgun for self-defense they only challenge the **<u>concealed</u>** weapon permitting regulations. In essence, their argument is this: (1) there is no

1
**REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
{MSJ - Reply; 00049085}

constitutional right to carry concealed weapons; (2) but, there is a right to carry weapons for self-defense; (3) we are not challenging the open carry laws; (4) thus, we must be allowed to carry concealed weapons.  The problem with Plaintiffs' argument is, upon finding that carrying concealed weapons in public is outside the ambit of the Second Amendment, the inquiry ends. *U.S. v. Marzzarella,* 614 F.3d 85, 89 (3d Cir. 2010).  If Plaintiffs truly sought to carry functional handguns in public in any manner, as they claim, the challenge would be to California's entire gun control regulation scheme and not a backdoor attack on Defendants' concealed weapons permitting policy.  That is not the issue they put before the Court in this case.

Because the "right" Plaintiffs' seek is not constitutionally protected, the remaining arguments fail.  Although California Penal Code section 12050 and Defendants' permitting policy would easily pass constitutional muster, they need not be subjected to any level of judicial scrutiny because there is no burden on protected conduct.  Moreover, Plaintiffs' contention that First Amendment framework should apply to gun regulation challenges under the Second Amendment defies logic.  No court has held that the marketplace of ideas and the marketplace for guns are entitled to the same protections.  Speech and guns are so radically dissimilar they cannot be validly compared or subject to the same constitutional analysis.

**I.     EVEN IF THE SECOND AMENDMENT EXTENDS BEYOND THE HOME, IT DOES NOT EXTEND SO FAR AS TO INCLUDE PUBLIC CARRY OF LOADED CONCEALED WEAPONS.**

Plaintiffs' opposition focuses in large part on the argument that the Second Amendment extends beyond the home.  This argument only distracts from what is really at issue in this case: public carrying of concealed weapons.  Although the cases that limit Second Amendment protections to the home support Defendants' argument that public carry of concealed weapons is **not** a constitutional right, discussion of whether the Second Amendment could, under any circumstance, move beyond the home is irrelevant for purposes of this case.

Plaintiffs' observations that hunting and other recreational firearm use occur outside of the home does not somehow bring concealed weapon carry into Second Amendment domain.[1]

---

[1] Additionally, California law already provides exceptions that allow for open carrying of loaded firearms while hunting and using target ranges.  Cal. Penal Code § 12031(b)(5) and (i).

The acute danger associated with concealed carrying of weapons has been recognized by courts for centuries. *See State v. Reid,* 1 Ala. 612, 616 (1840); *State v. Buzzard,* 4 Ark. 18, 28 (1842); *Nunn v. Georgia,* 1 Ga. 243, 252 (1846); *State v. Chandler,* 5 La. Ann. 489 (1850); *State v. Workman,* 35 W.Va. 367, 373 (1891); *Robertson v. Baldwin,* 165 U.S. 275, 281-82 (1897). Today, concealed carry poses an even greater danger to police and the unarmed, unsuspecting public because handguns are smaller and much easier to conceal than the pistols and muskets available in colonial America. *See U.S. v. Miller,* 307 U.S. 174, 181-81 (1939) (describing the weapons commonly used in 1785). That early American "settlers' dependence on game for food" may or may not translate into a Second Amendment protection for hunting in no way affects the long-standing precedent excluding concealed weapons from the right to keep and bear arms. *See* Plaintiff's Opp. 3 (citing *McDonald v. City of Chicago,* 130 S.Ct. 3020, 3042 n.27 (2010)).

Additionally, Plaintiffs' attempt to distinguish the post-*Heller* cases that have addressed the issue of concealed weapons due to their conflict with the Supreme Court's holding in *McDonald* applying the Second Amendment to the states, fails upon closer reading. Plaintiffs correctly note that *People v. Yarbrough,* 169 Cal.App.4th 303 (App.Ct. 2008) and *State v. Knight*, 42 Kan.App.2d 893 (App.Ct. 2009), both of which pre-dated *McDonald,* noted that the Second Amendment did not necessarily apply to the states after *Heller*. However, neither of the courts concluded their analysis of the concealed weapon regulation at issue on that point alone. In *Yarbrough,* the California Court of Appeal upheld a California law prohibiting concealed carry without a permit "without considering . . . the reach of the Second Amendment to laws enacted by the states." *Yarbrough, supra,* 169 Cal.App.4th at 313. The court held that **even if** the Second Amendment applied to the states, California's prohibition of concealed weapon carry without a permit was a lawful exercise due in large part to the "recognized 'threat to public order'" posed by carrying concealed firearms. *Id.* at 314.

Similarly, the court in *Knight* continued its analysis of a concealed firearm ban despite the court's holding that the Second Amendment did not apply to the states. *Knight, supra,* 42 Kan.App.2d at 910. The Kansas Court of Appeal ultimately found that prohibitions on carrying

3
**REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
{MSJ - Reply; 00049085}

1    concealed weapons were presumptively constitutional under the Second Amendment. *Id.* at 912.
2    Furthermore, the reasoning set forth in both *Yarbrough* and *Knight* has been followed by various
3    courts even after the Supreme Court's holding in *McDonald*. *See Peruta v. County of San Diego*,
4    __ F.Supp.2d __, 2010 U.S. Dist. LEXIS 130878, *25 (S.D. Cal. Dec. 10, 2010); *Williams v.*
5    *State*, 10 A.3d 1167, 2011 Md. LEXIS 1, *27 n.10 (Md. 2011).

   Accordingly, it is Plaintiffs who have "completely failed to address, let alone rebut" the century-old acknowledgment that the right to bear arms does not include any protections for concealed weapon carry in public and that there is no dispositive precedent otherwise.

### II. EVEN IF THE SECOND AMENDMENT APPLIES, PLAINTIFFS ARE NOT UNREASONABLY RESTRICTED FROM CARRYING A HANDGUN FOR SELF-DEFENSE.

Because there is no precedent supporting the notion that the Second Amendment protects a right to carry concealed weapons in public, Plaintiffs rely on their absolute ban argument. According to Plaintiffs, concealed weapons bans can slip into the ambit of the Second Amendment when the concealed weapon ban is part of an overall regulatory scheme that creates a total ban on carrying handguns for self-defense.

However, for Plaintiffs' absolute ban argument to succeed, it would require this Court to take a series of unprecedented leaps. First, this Court would have to accept the contention that the Second Amendment protects a right to carry loaded firearms in public for self-defense based on the holdings of four state court cases from the mid-1800s. Second, this Court would have to reject the Southern District of California's holding in *Peruta* that the self-defense exception contained in Penal Code section 12031 mitigates any burden Penal Code section 12050 and Defendants' permitting policy may have on Plaintiffs' rights under the Second Amendment. Third, this Court would have to hold that the existence of an absolute ban here, requires California to allow for **concealed** weapon carry, even though **none** of the Plaintiffs' four cited state court cases so hold.

Plaintiffs cite to four 19th Century state court cases in support of their argument that an overall regulatory scheme that results in an absolute ban of all handgun carry, including a concealed weapon ban, would constitute a violation of the Second Amendment: (1) *Reid, supra*,

---

4
**REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
{MSJ - Reply; 00049085}

1 Ala. at 616, (2) *Nunn, supra,* 1 Ga. at 252; (3) *Chandler, supra,* 5 La.Ann. at 489, and (4) *Andrews v. State,* 50 Tenn. 165, 178 (1871). Even assuming that the holdings of four 140+ year-old state cases, established a constitutional right to carry weapons in some manner for the purposes of self-defense, Plaintiffs' absolute ban argument still fails.

Plaintiffs argue that the self-defense exception contained in Penal Code section 12031(j)(1) does not satisfy their right to self-defense because the need for self-defense could arise in a split-second and that a requirement to keep handguns unloaded was foreclosed by *Heller*. Plaintiffs' Opp. 5-7. However, this same argument was raised and rejected by the court in *Peruta*. *Peruta, supra,* 2010 U.S. Dist. LEXIS 1 at *16-17. The Southern District of California held that there was an important distinction between section 12031 and the law at issue in *Heller,* which required firearms in the home to be kept inoperable **at all times**. As the *Peruta* court noted, "[u]nlike section 12031, the District of Columbia law did not contain, and the Supreme Court declined to infer, an exception for self-defense." *Id.* Due to the presence of a self-defense exception and the fact that the plaintiffs in *Peruta* elected not to challenge section 12031, the court "decline[d] to assume that section 12031 place[d] an unlawful burden on the right to carry a firearm for self-defense." *Id.* Plaintiffs here have likewise elected not to challenge the constitutionality of section 12031 and thus, the court's reasoning in *Peruta* is directly applicable to the instant case.

Furthermore, even if this Court finds that an absolute ban exists, **none** of the four cases cited by Plaintiffs support the contention that the appropriate remedy would be to find section 12050 and Defendants' permitting policy unconstitutional. The courts in each of the cases focused on the unconstitutionality of the **open carry** prohibition where an absolute ban was found. **None** of the four state law cases struck down a **concealed** weapon ban, in fact three of the four cases emphasized the importance of concealed weapon regulations.

In *Nunn,* the statute at issue made it a high misdemeanor to carry a pistol on one's person. As Plaintiffs note, the court struck down part of the ordinance because the law constituted an overall ban for carrying firearms for any purpose. *Nunn, supra,* 1 Ga. at 245. However, the court **upheld** the law to the extent that it sought to suppress "the practice of carrying weapons

5
**REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
{MSJ - Reply; 00049085}

1  *secretly.*"  *Id.* at 252 (emphasis in original).  Likewise in *Chandler,* the court acknowledged a
2  right to carry weapons for the purpose of self defense, "**without any tendency to secret**
3  **advantages** and unmanly assassinations."  *Chandler, supra,* 5 La.Ann. at 489.  Although a right
4  to carry weapons for self-defense was recognized, the right to carry concealed weapons was not.

5      The court in *Reid,* **upheld** a law banning carrying concealed weapons.  *Reid, supra*, 1
6  Ala. at 616.  Indeed, as the Plaintiffs assert, the court cautioned against laws that destroy a right
7  under the pretense of regulation.  *Id.*  However, the concealed weapon ban was nonetheless
8  upheld.  In *Andrews,* the Tennessee Supreme Court struck down an overall prohibition on
9  carrying weapons as too broad because it forbid the carrying of a weapon publically and
10 privately without regard to time, place, or circumstances.  *Andrews, supra,* 50 Tenn. at 178.
11 However, what the court did **not** do was hold that the overbreadth of the law required the state to
12 allow concealed carry.

13     Thus, even if this Court were to find that an absolute ban on carrying firearms in public
14 was unconstitutional and that the self-defense exception contained in section 12031 was
15 insufficient to protect that right, there is absolutely no support for Plaintiffs' argument that
16 section 12050 and Defendants' policy must therefore be held unconstitutional.  By electing not to
17 challenge section 12031, Plaintiffs attempt to back this Court into a corner to so hold.  However,
18 even the few 19th Century state court cases that support Plaintiffs' absolute ban theory **uphold**
19 the part of an overall weapon ban that pertains to concealed weapons because concealed weapon
20 carry poses a heightened danger to society that has been recognized for generations.

21     **III.**     **STRICT SCRUTINY DOES NOT APPLY AND SHERIFF PREITO'S POLICY**
22              **SATISFIES INTERMEDIATE SCRUTINY.**

23     Plaintiffs' remaining arguments likewise fail because carrying concealed weapons is not
24 a constitutional right.  This Court need not decide what level of scrutiny should apply or whether
25 the Second Amendment should be subjected to First Amendment frameworks because the
26 prohibition of concealed weapon carry does not burden protected conduct.  As the Court in
27 *Mazzerella* held, once an activity is found to be outside the purview of the Second Amendment,
28 the analysis ends.  *Marzzarella, supra,* 614 F.3d at 89.  Yet, even if Sheriff Prieto's policy
burdened Plaintiffs' right under the Second Amendment, Plaintiffs' strict scrutiny argument fails.

1  Plaintiffs do not cite a single case that has applied strict scrutiny to a gun regulation pre- or post-
2  *Heller*.

3  Plaintiffs cite *U.S. v. Chester*, 628 F.3d 673, 2010 U.S. App. LEXIS 26508 (4th Cir.
4  2010), in support of their argument that strict scrutiny is the appropriate standard of review
5  claiming that the court "only" applied an intermediate standard of review because the defendant
6  in that case was not a law-abiding, responsible citizen. Plaintiffs' Opp. 10. However, contrary
7  to Plaintiffs' contention, intermediate scrutiny would apply here even under the same reasoning
8  used in *Chester*.

9  The court in *Chester* focused on the "core right identified by *Heller*." *Chester, supra*,
10  2010 U.S. App. LEXIS 26508 at *26. In *District of Columbia v. Heller,* the Supreme Court held
11  that the Second Amendment secured the right for a law-abiding, responsible citizen to carry an
12  operable handgun in his or her home for the purpose of self-defense. 554 U.S. 570, 635 (2008)
13  In this holding, there are three distinct elements that make up the Second Amendment right: (1)
14  that the individual entitled to carry is a law-abiding, responsible citizen; (2) that the weapon is
15  within one's home; and (3) that it is intended to be used for the purpose of self-defense. Indeed,
16  as Plaintiff cites, *Chester* declined to apply strict scrutiny because one of the elements of this
17  three-part right was missing: the individual was not a law-abiding, responsible citizen. *Chester,*
18  *supra*, 2010 U.S. App. LEXIS 26508 at *26. However, the gun in question was kept in the home
19  for the purpose of self-defense. *Id.* Yet, with only one element missing from the equation, the
20  *Chester* court applied a lower standard of review.

21  Likewise, here, one element of the three-pronged right is absent: the weapons Plaintiffs
22  seek to carry would not be kept in the home. As the court in Heller stated, there is a heightened
23  need for protection of one's self, family, and possessions on one's own property. *Heller, supra,*
24  554 U.S. at 635. Akin to *Chester*, even if strict scrutiny would apply if all three elements were
25  present (which no court has held), it does not apply here because Plaintiffs want to carry their
26  weapon in public.

27  Plaintiffs' argument is weakened further by the fact that the public carrying they seek
28  involves a **concealed** weapon. As already addressed in length, there is no right to carry a

7
**REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
{MSJ - Reply; 00049085}

concealed weapon. Concealed weapon regulations were specifically discussed by the *Heller* court as among the long-standing regulations that the Second Amendment would **not** strike down. *Id.* at 626. Thus, not only is one of the elements of the right recognized by *Heller* missing, the regulation at issue here involves concealment which has been long held to be particularly dangerous and not included in the right to keep and bear arms.

Furthermore, as Defendants have already discussed, courts have held the intermediate standard of scrutiny to be the appropriate standard of review. *See* Defendants' MSJ 14 (citing *Peruta, supra,* 2010 U.S Dist. LEXIS 130878 at *23-25; *Marzzarella, supra,* 614 F.3d at 97; *U.S. v. Skoien,* 614 F.3d 638, 640 (7th Cir. 2010); *Heller v. District of Columbia (Heller II)*, 698 F. Supp.2d 179, 188 (D.D.C. 2010) [surveying the landscape of post-Heller decisions and joining "the majority of courts" in holding that "intermediate scrutiny is the most appropriate standard"]).[2]

Of course, Plaintiffs balk at the safety considerations set forth in Undersheriff Lopez' declaration stating that his comments "firmly establishes and exposes the absence of a valid government interest in this case." Plaintiffs' Opp. 12. However, contrary to Plaintiffs' characterization, Undersheriff Lopez' declaration asserts Defendants' genuine fear that proliferation of concealed weapons in Yolo County would require officers to either delay response in emergency situations or be at a greater risk of losing their lives. *See* Decl. Lopez ¶¶ 9-12. It is unfathomable that Plaintiffs can view Undersheriff Lopez' concerns about the lives and safety of the public and his fellow peace officers as an "absence of a valid government interest." Plaintiffs' Opp. 12. Public safety and preventing crime are clearly important government interests. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996) (noting that States have "great latitude" to use their police powers); *United States v. Morrison*, 529 U.S. 598, 618 (2000) (There is "no better example of the police power" than "the suppression of violent crime"). The regulation of concealed firearms is a critical factor in accomplishing those interests. *McDonald, supra,* 130 S. Ct. at 3126 ("Private gun regulation is the quintessential exercise of a State's

---

[2] Moreover, the anticipated Ninth Circuit decision in *Nordyke v. King,* 611 F.3d 1015 (9th Cir. 2010), should serve to resolve the issue of scrutiny. *See Pena v. Cid*, 2009 U.S. Dist. LEXIS 92605, *6 (E.D. Cal. 2009).

'police power' -- i.e., the power to 'protec[t] . . . the lives, limbs, health, comfort, and quiet of all persons, and the protection of all property within the State,' by enacting 'all kinds of restraints and burdens' on both 'persons and property'"). Thus, contrary to Plaintiffs' argument, section 12050 and Defendants' permitting policy easily meets the intermediate scrutiny standard.

### IV.   THE MARKET FOR CONCEALED WEAPONS IS NOT ENTITLED TO THE SAME PROTECTIONS AS THE MARKETPLACE OF IDEAS.

Plaintiffs contend that Defendants do not seriously challenge the assertion that prior restraint standards most logically apply to this case. Plaintiffs' Opp. 7. Yet, Plaintiffs could not be more wrong; logic is the key to Defendant's challenge. Although courts have not directly addressed the applicability of First Amendment frameworks to regulations challenged under the Second Amendment, logic precludes a direct application.

Unlike speech, guns do not have a viewpoint. Shooting a firearm does not have the nuanced value of controversial political speech. An individual carrying a concealed weapon, even lawfully, obviously poses a greater risk of physical danger to those around him than a teenager holding a "Bong Hits 4 Jesus" sign. *See Morse v. Frederick,* 551 U.S. 393 (2007). The two rights are too dissimilar for analogy. Application of First Amendment frameworks to gun control regulations, like the prior restraint doctrine pushed by Plaintiffs, has the potential of causing actual public safety repercussions. That is not to say that First Amendment frameworks could never be consulted in developing Second Amendment jurisprudence, but direct application is both illogical and unwise.

Accordingly, Plaintiffs are entirely correct in stating that gun control regulations seek to minimize the activity that it targets – that is the point. Plaintiffs' Opp. 12. As noted above, no case has held that the marketplace of ideas and as the marketplace for guns are entitled to the same protections. To hold otherwise would be a monumental and unprecedented extension of Second Amendment jurisprudence.

///

///

///

## V. CONCLUSION

Defendants respectfully request that this Court grant Defendants' motion for summary judgment.

Dated: March 3, 2011
ANGELO, KILDAY & KILDUFF, LLP

*/s/ Serena M. Sanders*
By:_____
SERENA M. SANDERS
Attorneys for Defendants YOLO COUNTY and SHERIFF ED PRIETO