IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

---oOo---

BEFORE THE HONORABLE MORRISON C. ENGLAND, JR., JUDGE

---oOo---

ADAM RICHARDS, ET AL.,

        Plaintiffs,

                        No. 2:09-cv-01235

vs.

ED PRIETO, et al.,

        Defendants.

_____/

---oOo---

REPORTER'S TRANSCRIPT

MOTION FOR SUMMARY JUDGMENT

THURSDAY, MARCH 10, 2011

---oOo---

Reported by:  DIANE J. SHEPARD, CSR 6331, RPR

```
 1                              APPEARANCES

 2

 3

 4             For the Plaintiffs:

 5                     GURA & POSSESSKY
                       BY:  ALAN GURA,  Attorney at Law
 6                     101 N. Columbus Street
                       Suite 405
 7                     Alexandria, VA 22301

 8
                       DONALD E. J. KILMER, JR.
 9                     LAW OFFICES OF DONALD KILMER, APC
                       1645 Willow Street, Suite 150
10                     San Jose, CA 95125

11
               For the Defendant:
12
                       ANGELO, KILDAY & KILDUFF
13                     BY:  SERENA MERCEDES SANDERS, Attorney at Law
                            PETER HALLORAN, Attorney at Law
14                     601 University Avenue
                       Suite 150
15                     Sacramento, CA 95825

16

17

18

19

20

21

22

23

24

25
```

DIANE J. SHEPARD, OFFICIAL COURT REPORTER, USDC -- (916) 554-7460

```
 1                    SACRAMENTO, CALIFORNIA

 2                 THURSDAY, MARCH 10, 2011

 3                        ---oOo---

 4          THE CLERK:  Calling civil case 09-01235, Adam

 5   Richards, et al., v. Ed Prieto, et al.  On for plaintiffs' and

 6   defendants' motions for summary judgment, Your Honor.

 7          THE COURT:  Thank you.  Good afternoon.  May I have

 8   your appearances for the record, please.

 9          MR. GURA:  Good afternoon, Your Honor.  Alan Gura and

10   Don Kilmer for the plaintiffs, who are here in the courtroom.

11          THE COURT:  Thank you.

12          MS. SANDERS:  Good afternoon, Your Honor.  May it

13   please the Court, my name is Serena Sanders and this is Peter

14   Halloran on behalf of defendants County of Yolo and Sheriff Ed

15   Prieto.

16          THE COURT:  Thank you very much.  If you are both

17   going to argue, if you would come to the podium, please.

18          Let me get right into a question I have.  I

19   understand the positions that you have taken respectively.  And

20   a great deal of your argument and your belief is based upon an

21   interpretation of Heller.  And that in Heller the United States

22   Supreme Court held that it is constitutional to carry a weapon

23   in your pocket or wherever, in other words concealed.  That

24   that was part of the rights guaranteed under the Second

25   Amendment.
```

DIANE J. SHEPARD, OFFICIAL COURT REPORTER, USDC -- (916) 554-7460

1          In Heller it does say, however, that there are

2    certain restrictions that can be imposed upon the carrying of a

3    weapon, which are included but not limited to certain

4    restrictions based upon mentally ill persons having them,

5    felons having them near schools, et cetera.

6          How is it that you're able to carve out such a

7    specific statement from Heller, which is that you may carry a

8    concealed weapon in your pocket, if you will.  I'm paraphrasing

9    what you're saying.

10         MR. GURA:  Well, first of all, Heller starts by

11   telling us that the word bear arms means to carry.  Quite

12   simply, bearing means to carry, and the right was to carry so a

13   person can be armed in case of a confrontation with another

14   person.  So there are legitimate times when a person can carry.

15         Heller then gives us certain exceptions which say,

16   well, you can't carry for any type of confrontation, or

17   anytime, anyplace, or in any manner, which, of course,

18   presupposes you can carry in some ways sometimes in some

19   places.  And Heller also tells us that you can't carry into a

20   sensitive place.  And we agree with that, whatever a sensitive

21   place might be.  But that informs the idea there are

22   non-sensitive places in which you can carry.

23         What Heller stands for is the proposition, which is

24   not a remarkable one and which is not contested in this case,

25   which is that the Government may regulate the carrying of guns.

1      There is no question that it can.

2           The Government has an interest in regulating the

3      carrying of firearms in the interest of public safety.  And so

4      long as those regulations are constitutionally appropriate,

5      they will survive.

6           This type of regulation, however, is problematic.

7      Because here we have the entire right hinged upon the exercise

8      of completely arbitrary discretion by the sheriff.

9           THE COURT:  When you say the complete right, what do

10     you mean, counsel, by the complete right?

11          MR. GURA:  Because without Sheriff Prieto's

12     permission no one can exercise the right to bear arms.

13          THE COURT:  No.  There is nothing in Heller that I

14     can see that says that you don't have the right to purchase a

15     firearm, you don't have the right to keep one in your home, you

16     don't have the right to use one to go hunting.  You do have the

17     right to have an arm and to keep them after certain background

18     checks.

19          But you're carving out a much more specific issue,

20     which would be to carry a concealed weapon.  That's carrying a

21     concealed weapon.  Not actually owning a weapon.

22          MR. GURA:  Your Honor, the right is not to carry a

23     concealed weapon.  It's simply to carry a weapon.  If the

24     Government wants to say, as they have in this case, that the

25     only manner in which you can carry is concealed, and we're

 1          going to license and permit that, that's fine.  They can do

 2          that.  There is no right to carry a gun in any particular

 3          manner.  And all the cases that Heller reviewed stand for that

 4          proposition.

 5                    If the Government determines that carrying guns in a

 6          concealed fashion is something that's going to be banned, they

 7          can do that so long as they still allow you to carry openly.

 8                    And vice versa the same is true as well.  If the

 9          Government determines that the open carrying of guns is

10          problematic, if it's something that they wish to restrict,

11          that's okay so long as they allow people then to carry in a

12          concealed fashion.  We don't have a choice as to the manner in

13          which we carry.  Heller makes that very clear.

14                    However, once the Government has made that choice,

15          then in California that choice is for concealed carry because

16          the law forbids the open carrying of functional weapons

17          entirely.  There is no way to get a permit for that unless

18          you're in certain counties that have a very low population.

19                    Then the question is, okay, how do we go get the

20          permit to exercise this right?  And here we have a licensing

21          scheme which says that your license to carry a gun is going to

22          hinge upon whether Sheriff Prieto feels that you have good

23          moral character or good cause to exercise what Heller describes

24          and McDonald describes to be a fundamental constitutional

25          right, and that's the nub of the problem.

DIANE J. SHEPARD, OFFICIAL COURT REPORTER, USDC -- (916) 554-7460

1              There is no question that bear arms means to carry

2       them.  How the Government regulates that, they have many

3       options at their disposal.  The only thing that they can't do

4       absolutely, we know, is to forbid entirely that right or to

5       leave it up to the complete arbitrary discretion of a licensing

6       official.

7              The Supreme Court has instructed many times that when

8       it comes to fundamental rights, they cannot be left at the

9       unbridled discretion of an official who determines whether you

10      are a good enough person to exercise something that is your

11      right.

12             THE COURT:  But again we're talking about the

13      specific issue of concealed firearm, which when looking at

14      Heller, it stated that:  Nothing in our opinion should be taken

15      to cast doubt on long-standing prohibitions on the possession

16      of firearms by felons and the mentally ill, laws forbidding the

17      carrying of firearms in sensitive places such as schools and

18      government buildings, or laws imposing conditions and

19      qualifications on the commercial sale of arms.

20             In a footnote it states:  We identify these

21      presumptively regulatory measures only as examples.  Our list

22      does not purport to be exhaustive.

23             So isn't there still a legitimate interest in the

24      state when it comes to the act of carrying a concealed weapon

25      as opposed to having a weapon or owning a weapon?  I'm still

1    trying to draw distinction between the two.

2            MR. GURA:  Heller instructs that people have the

3    right to carry guns, and it also instructs, as Your Honor

4    noted, the states can ban the carrying of guns in a concealed

5    fashion.  Each and every single one of the cases that Heller

6    relied upon and the principles that Heller upheld were that if

7    the state wishes to forbid the concealed carrying of guns, it

8    can do so provided that it does not also ban the open carrying

9    of arms.

10           And if we look at Reid, if we look at Nunn, if we

11   look at all these cases that Heller invoked, Chandler from

12   Louisiana, they all stand for the same proposition.  The

13   Government can tell you how to carry your gun.  In California

14   the Government has said we will ban the open carrying of

15   functional firearms.  There is no way that you can do that

16   unless you get permission in a county that has fewer than

17   200,000 people in it, and Yolo is not that county, so that's

18   not available.

19           So therefore the only thing that California will let

20   you do is apply for a permit to carry a concealed handgun.  And

21   at that point we're saying, okay, what are the standards for

22   obtaining this permit?  It's a fundamental right that's being

23   licensed.

24           THE COURT:  So is there a distinction that you draw

25   between the right of the Government to put a reasonable

DIANE J. SHEPARD, OFFICIAL COURT REPORTER, USDC -- (916) 554-7460

1    regulation and the way that Yolo County has applied that reg?

2    Is that your distinction?

3              Or are you arguing that no local agency such as the

4    county sheriff has the right to have a regulatory scheme

5    regarding concealed weapons, permits, or CCWs?  Or are you just

6    saying that Sheriff Prieto arbitrarily or somehow used some

7    standard that's just not appropriate?

8              MR. GURA:  Well, we have two arguments.  First of

9    all, the argument that we are not making, and I would like this

10   to be very clear, but we are not saying that Yolo cannot

11   regulate the concealed carrying of guns.  Of course Yolo can

12   regulate the carrying of guns, concealed or otherwise, provided

13   that state law lets them do that, and that's an issue that is

14   not before the Court.

15             What we're saying are two different things.  First of

16   all, we have an as-applied challenge and we also have a facial

17   challenge.  Let's take the facial challenge first.

18             We have a statutory scheme that licenses a

19   fundamental right on the basis of arbitrary discretion and

20   moral character determinations.  The Supreme Court has

21   instructed that there is no need to test such schemes.  They

22   are just plain not constitutional.  You can't say your right to

23   speak is based upon whether you think you have a good reason to

24   do so or good moral character to do so.  Your right to assemble

25   is not based upon those things.  And of course the right to

1    arms, as McDonald instructs, is fundamental as well.

2              So we can't condition -- whatever else we do with the

3    right to arms, we can't say you need to prove to us you have a

4    good reason to exercise it.  Because it's a right.  You don't

5    have to prove a reason or sufficient moral character in order

6    to be entitled to exercise your right.  So whatever else they

7    do, you can't have this arbitrary discretion imposed upon the

8    right.

9              The second argument we have is that to the extent

10   that Sheriff Prieto has a policy, the policy is itself

11   unconstitutional because the standards he has adopted are

12   inappropriate.  Sheriff Prieto has said that he will take it

13   upon himself to determine when he feels you have a good enough

14   reason to make an application, and he has also said that

15   self-defense is not a basis to exercise the right to bear arms.

16   And that contradicts directly with the decision in Heller.

17             So of course we're not saying that Sheriff Prieto

18   can't regulate the issuing of gun-carry licenses or impose

19   other restrictions on the carrying of guns.  We're not making

20   that sort of a blanket, overbroad challenge.  We're simply

21   saying there is a right, you can regulate that right, but the

22   way in which this right is being regulated, both as a matter of

23   the state law as well as Sheriff Prieto's policies, are not

24   constitutional because they vest an incredible amount of

25   unbridled discretion.  And they actually set standards which

1    are themselves unconstitutional because they conflict with the

2    very purpose of the right as described in Heller.

3            THE COURT:  Is there a right to carry a concealed

4    weapon after Heller?

5            MS. SANDERS:  No, Your Honor.  Heller didn't deal

6    with -- Heller's holding did not deal with concealed weapons at

7    all.

8            What Heller did hold was that there is a right to

9    possess a handgun in the home for self-defense.  This extends

10   beyond the home.  And even though Heller had language about

11   carrying in one's pocket, no holding -- and the holding in that

12   case and none of the holdings in any court has held that there

13   is a right to carry a concealed weapon in public.

14           Even the cases that plaintiff cites that are state

15   court cases from the 19th Century indicate that if there is an

16   absolute ban on carrying concealed weapons, that the remedy for

17   that is not to have the concealed weapon portion part of that

18   scheme to be held unconstitutional, but for the entire scheme

19   to be looked at and re-assessed.

20           None of the cases, Nunn, Andrews, Chandler and --

21   fourth one -- did I say Andrews -- none of the four cases that

22   plaintiffs cite ban the concealed weapon portion part of that

23   regulation.  In fact, they expressly uphold that saying in as

24   far as regulatory schemes apply to carrying weapons secretly,

25   that it is valid, that section of the law is valid.  So nothing

1    precludes California and Sheriff's policy from being

2    applicable.

3            THE COURT:  Even though it's not precluded, is it, as

4    counsel has alluded to, possible that Sheriff Prieto is

5    applying the law in an unconstitutional manner?

6            MS. SANDER:  No, Your Honor.  Sheriff Prieto's policy

7    -- he is authorized by Penal Code 12050 to create a policy, to

8    publish that policy, which he has done.  He has identified what

9    good cause means.  He has given examples of it.  And his

10   definition of that is in line with what courts have held the

11   definition of proper cause or good cause to mean.

12           In a case that I have for the Court, if the Court

13   wishes to have it, called Bach v. Pataki out of New York, the

14   Second Circuit held that good cause was something

15   distinguishable -- a reason for self-defense distinguishable

16   from the general population's need for self-defense.  And

17   Sheriff Prieto's policy is directly in line with that

18   definition.

19           THE COURT:  But he says you must have a "valid reason

20   to request a permit."  What is a valid reason?  Is it a valid

21   reason on the part of the person requesting, or a valid reason

22   on the part of the sheriff?  If so, does that valid reason

23   change whenever the sheriff changes?  Or is there something

24   else that happens?  How does that apply?

25           MS. SANDERS:  Indeed the policy does say that there

1    needs to be a valid reason, but then Sheriff Prieto specifies

2    what would be valid reasons and what would not be considered

3    valid reasons.

4         One of the items listed on what would not be

5    considered a valid reason is the general desire for

6    self-defense without any particular showing that self-defense

7    is necessary.

8         And plaintiffs do not say that he applied that part

9    of the policy arbitrarily against them.  They admit that they

10   have no particularized need and can identify no threats of

11   violence against them that would be -- would show that their

12   circumstances are other than what Sheriff Prieto's policy

13   indicate.

14        THE COURT:  All right.  Do you have something else

15   that you wish to add?

16        MS. SANDERS:  No, Your Honor.

17        THE COURT:  Response.

18        MR. GURA:  Well, the response is, you know, we had

19   another set of defendants in this case earlier, Your Honor.

20   You might recall the County of Sacramento and its former

21   sheriff.  And we were able to settle that portion of the case

22   because they -- the former sheriff, before he left office, and

23   his successor both took another look and determined that in

24   fact there was a way that they could apply California law in a

25   manner that satisfies the constitutional interest.

1               When people apply now to the County of Sacramento and

2     say that they want a permit to carry a gun, if they assert an

3     interest in self-defense, they get her permits granted unless

4     there is some specific reason to deny those permits.  And there

5     are two former plaintiffs from Sacramento County who have been

6     issued permits, and everyone's happy.

7               But here we have a sheriff who says that -- and I'm

8     quoting here from his policy -- that the issuance, amendments

9     or vacation -- that's a quote -- of a gun-carry license

10    "remains exclusively within the discretion of the sheriff."

11    And it further goes on to say that the gun license may be

12    renewed "if the sheriff or his designee feels there is

13    sufficient reason to renew the license."  He requires three

14    letters of reference as a matter of character references to

15    determine whether you have good moral character.  These are

16    arbitrary standards.

17              What we're asking for is something very simple.

18    We're asking for objective standards and due process.  We have

19    a fundamental, constitutional right at issue.  Of course, like

20    other fundamental rights, subject to regulation.  But the

21    regulation here acts as a prior restraint that gives the

22    sheriff total and absolute arbitrary discretion based upon his

23    feelings and his assessment of people's moral character.

24    That's not appropriate in 2011 with respect to a fundamental

25    right.

1              MS. SANDERS:  The undersheriff's declaration that was

2     submitted in this case shows that there are important interests

3     to Yolo that are distinct from other counties.  In Yolo there

4     is a particular gang problem.  There are more people coming in

5     with gangs, and gang task forces have been implemented in that

6     county.

7              Additionally, undersheriff's declaration states that

8     there are very important government interests in policing an

9     area that has more concealed weapon permits.  Perhaps

10    Sacramento's situation is that they have a greater police force

11    so that they can handle situations like that.  But policing

12    capabilities are distinct to different counties.

13             As far as the discretion that plaintiffs' counsel

14    talks about, Penal Code 12050 authorizes that discretion.  And

15    so for Sheriff Prieto to specify that he has the discretion to

16    issue permits is an entirely on-point recitation of

17    California's law.

18             Plaintiffs' discussion regarding prior restraint

19    raises the issue of the comparison between the First Amendment

20    and the Second Amendment, which is both unprecedented and

21    unwise.  Guns are not the same as speech.  Shooting off one's

22    mouth and shooting a gun have very different repercussions.

23    And in order to apply First Amendment frameworks to Second

24    Amendment context there are very real and very consequential

25    circumstances that will result from that.

1                    MR. GURA:  Your Honor, if I may?

2                    THE COURT:  Yes.  Go ahead.

3                    MR. GURA:  Well, the Third, Fourth, and D.C. Circuits

4      have held First Amendment frameworks are applicable to the

5      Second Amendment because the Supreme Court has -- well, the

6      D.C. Circuit did it before the Supreme Court affirmed it.  And

7      then, of course, the Supreme Court having had the First

8      Amendment framework all over the Heller and McDonald cases, the

9      Third and Fourth Circuit took that hint and adopted the First

10     Amendment as a guide.

11                   In fact, the cases are somewhat broader than counsel

12     alludes to.  Staub versus City of Baxley states that it's

13     constitutional freedoms that cannot be subject to unbridled

14     discretion.  The language is somewhat broader than the First

15     Amendment, although, of course, the First Amendment is where

16     these issues come up most frequently.  That's also a function

17     of the fact that Second Amendment litigation is somewhat in its

18     infancy, Your Honor.  We haven't had Heller to work with for

19     more than a couple years.  This is one of the earlier cases,

20     which, I suppose, makes it somewhat interesting.

21                   Now McDonald did reject completely this notion that

22     the Second Amendment must be treated as a second-class right

23     because guns are dangerous.  We know guns are dangerous.  And

24     the City of Chicago made that argument saying, well, maybe we

25     shouldn't have to follow the Second Amendment.  We need a

1    firmer hand to deal with gun issues because, you know, guns are

2    so dangerous.

3              The Supreme Court rejected that theory.  The Supreme

4    Court said, look, the Bill of Rights makes many policy choices,

5    and every right that limits the ability of police or

6    prosecutors to act in the interest of public safety has some

7    arguable social costs.  But those policy choices have been made

8    by the framers and the people who ratified the various

9    amendments.

10              The one thing that Yolo has in common, not just with

11   Sacramento County but indeed with all the counties in the

12   United States, is that it is subject to the Fourteenth

13   Amendment, and it is part of America, and it is subject to the

14   Second Amendment.

15              And so while every community has problems perhaps

16   with crime, and every community is entitled to experiment in

17   its own way dealing with crime problems, what communities

18   cannot do is take it upon themselves to experiment in the

19   violation of core fundamental civil rights.  Here we have a

20   right which does apply.  It applies equally throughout the

21   United States, even to Yolo County.

22              And so while we respect that people often disagree as

23   to whether or not the Second Amendment is a good idea, and

24   Sheriff Prieto is most certainly entitled to feeling that this

25   is a bad policy, it nonetheless is a policy that's reflected in

1   our constitution and has to be applied.

2         THE COURT:  But like Heller stated:  Like most

3   rights, the Second Amendment right is not unlimited.  It is not

4   a right to keep and carry any weapon whatsoever in any manner

5   whatsoever and for whatever purpose.

6         MR. GURA:  We agree with that.  And we're not saying

7   that you have the right to have any weapon in any manner for

8   whatever purpose.  What we're challenging is the law that let's

9   you -- that does not allow you to carry arms at all.  If you

10  don't have a license from Sheriff Prieto, you can't bear arms

11  in California if you're a Yolo County resident.  It's that

12  simple.

13        So, of course, you know, if the sheriff wants to

14  impose regulations upon the right that satisfy time, place, and

15  manner restrictions --

16        THE COURT:  Isn't that what that is?  Time, place and

17  manner, that is, that you cannot carry a weapon which is

18  concealed on your person.  Isn't that different than saying

19  that you can have the weapon in your home, or you can have it

20  in your garage, you can have it in your backyard, you can have

21  it anyplace else, but when you're in public, the public domain,

22  that there can be a reasonable restriction that if you have a

23  weapon, it is not to be a firearm.  Shouldn't say a weapon.

24  Firearm.  That it must not be concealed for purposes of officer

25  safety, for purposes of other public member safety.

1          I mean, there could be reasonable reasons for that.

2     As an example, we're all very familiar with the situation in

3     Arizona with the congresswoman and the federal judge that were

4     shot and one killed and the other individuals.  Had there been

5     concealed weapons on five people there, and everyone started

6     pointing and started shooting, wouldn't that have created a

7     much more dangerous situation for law enforcement, for other

8     people that are in the area, such that this is one of those

9     things that could be reasonably regulated -- reasonably

10    regulated by local law enforcement and the government.

11         MR. GURA:  We do not challenge -- Your Honor, we

12    would agree that Sheriff Prieto -- if he had the authority --

13    and now we're getting into an issue of the sheriff's actual

14    authority under the California law.  Because the sheriff is not

15    the highest authority here.  The higher authority is the

16    California legislature.  And the sheriff has to work with the

17    what the legislature has given him.  And the legislature has

18    said there will not be any open carrying of functional

19    firearms.  That's the state law.

20         So the sheriff can't say -- he doesn't have the

21    ability, even if he wanted to, he can't say, you know what, I'm

22    going to ban concealed carrying, and I'll let people walk

23    around.  And you can exercise your right to bear arms.  You can

24    exercise it by having the arms out openly.  If the state were

25    to make that policy choice, that would be constitutional, and

1    we would not challenge that.

2              THE COURT:  California is not open carry.

3              MR. GURA:  That's right.  And so the state has made

4    its decision.  It said the way that people are going to

5    exercise the right to bear arms in California is they are going

6    to exercise that right by applying for a license to carry them

7    in a concealed fashion.

8              At that point, that's the only avenue available to

9    the plaintiffs to exercise a fundamental constitutional right.

10   Because, Your Honor, the words keep and bear are separate

11   words.  Keep is what you do inside your home.  Bear is what you

12   do out in public.  There is nothing -- Heller, if anything,

13   instructs that the right extends beyond your doorway.

14             There's discussion that, for example, you have the

15   right to bear arms for purposes of hunting, which never occurs

16   indoors.  There is discussions about sensitive places, which

17   don't exist inside one's home.

18             We know that bear arms means to carry them.  And

19   Heller instructs courts very specifically that we interpret the

20   constitution according to the way that the people who framed it

21   understood those words, what meaning those words had to the

22   people who framed them.

23             THE COURT:  What about when it says in Heller:  In

24   sum, we hold that the district's ban on handgun possession in

25   the home violates the Second Amendment, as does its prohibition

1    against rendering any lawful firearm in the home operable for

2    the purpose of immediate self-defense.  Used the term "in the

3    home" twice.

4         MR. GURA:  Because, Your Honor, that actually -- that

5    was my case, the Heller case.  And those are the facts of the

6    case.  In Heller we only challenged the home possession of

7    guns.  There is --

8         THE COURT:  I understand that.  But you're

9    extrapolating this a little bit farther on than what Heller

10   actually stood for.  Heller did not say that carrying a

11   concealed weapon or requiring a concealed weapon permit was

12   unconstitutional or violative of the Second Amendment.

13        MR. GURA:  And, Your Honor, we don't make any

14   different argument.  We will -- we've conceded that you can ban

15   all concealed carrying, and you can require a license for

16   concealed carrying as well.  Those are not things that we

17   contest.

18        The caveats are if you're going to ban all concealed

19   carrying, you have to allow open carrying.  And if you're going

20   to license the carrying of guns, whether it's concealed or

21   open, you have to do it according to constitutional standards.

22   Not according to unbridled discretion.

23        So, you know, there is no question that you can have

24   a different legal framework, and maybe, you know, there are

25   many different ways to approach this issue.  The state has a

1     lot of flexibility here.  What cannot happen, however, is the

2     complete abrogation of the right or having it hinge upon

3     unbridled discretion.

4                  And so, of course, they could do things differently,

5     but they haven't.  They've done things this way.  This is the

6     law that we have got to work with, and this is the law that the

7     sheriff has to work with.  And given what we've received from

8     the Legislature, the sheriff cannot deny permits to exercise a

9     fundamental constitutional right based upon his assessment of

10    someone's moral character or whether he thinks they have a good

11    enough reason to exercise a right.

12                 THE COURT:  Thank you.

13                 MR. GURA:  You're welcome.

14                 THE COURT:  Anything else?

15                 MS. SANDERS:  Your Honor, plaintiff keeps referring

16    to the fundamental right in applying the frameworks of the

17    First Amendment to this, quote, unquote, fundamental right.

18    But no court has held that there is even a right at all under

19    the Second Amendment to carry a loaded, concealed weapon in

20    public let alone a fundamental right to do so.

21                 Furthermore, I bring the Court's attention again to

22    the structure of plaintiffs' argument.  They are conceding that

23    it is constitutional to ban all concealed carry weapons, and at

24    that point in the analysis evaluation ends.  Under Marzzarella

25    it states that once something is found to be outside of the

1      ambit of the Second Amendment, analysis ends.

2              That plaintiffs choose not to bring in the open carry

3      portion of California's framework does not make it -- it does

4      not require this Court focus on the concealed weapons portions

5      part of the law and to hold that to be unconstitutional, even

6      if an absolute ban theory exists, which is entirely based on

7      four state court cases from the 19th Century.

8              THE COURT:  Thank you.  Anything else?

9              MR. GURA:  Well, Your Honor, I think that we've gone

10     over this.  What I would like to leave here today with, though,

11     is just this.  There is a right to keep and bear arms.  Bear

12     arms means to carry them in public.  Whatever the relation

13     might be has to be according to constitutional standards.

14             And, yes, they can ban the way in which you carry

15     guns.  But so long as there is a licensing regime imposed, that

16     licensing regime has to meet constitutional standards, and this

17     one does not.

18             THE COURT:  I've understood the argument.  Anything

19     else final?

20             MS. SANDERS:  Your Honor, Sheriff Prieto's policy

21     does meet constitutional standards.  The Southern District of

22     California court upheld a very similar policy, and we request

23     that this Court recognize that and so hold.

24             THE COURT:  Recognizing, of course, that the Southern

25     District of California is not persuasive on this Court.

1            And just in the interest of full disclosure to all

2    parties at this point, I'm going to advise that I do, myself,

3    have a concealed carry permit.  It was issued by Sacramento

4    County approximately nine -- twelve years ago.

5            That, however, does not have any effect whatsoever on

6    my thoughts, thinking, or decision-making as it affects this

7    particular case.  This case will turn on the merits of the

8    constitutionality as this Court sees fit.  And I do not have

9    any connection with Sheriff Prieto or Yolo County whatsoever.

10            Any questions that you have regarding that issue,

11   counsel?

12            MR. GURA:  No, Your Honor.

13            THE COURT:  Thank you.  Any questions you have?

14            MS. SANDERS:  No, Your Honor.

15            THE COURT:  I will have this matter stand submitted.

16

17                          CERTIFICATION

18

19            I, Diane J. Shepard, certify that the foregoing is a

20   correct transcript from the record of proceedings in the

21   above-entitled matter.

22

23

24                          /S/ DIANE J. SHEPARD
                            DIANE J. SHEPARD, CSR #6331, RPR
25                          Official Court Reporter
                            United States District Court