UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ADAM RICHARDS et al.,                    No. 2:09-cv-01235 MCE-DAD

        Plaintiffs,

    v.                                   **MEMORANDUM AND ORDER**

COUNTY OF YOLO and YOLO COUNTY
SHERIFF ED PRIETO,

        Defendants.

----oo0oo----

    Plaintiffs Adam Richards, Brett Stewart, the Second Amendment
Foundation, Inc., and The Calguns Foundation, Inc. (collectively,
"Plaintiffs") seek redress from Sheriff Ed Prieto and the County of
Yolo (collectively, "Defendants") after Plaintiffs Richards and
Stewart were denied gun permits under Yolo County's, and by
extension Sheriff Prieto's, concealed weapon licensing policy.

    Both Plaintiffs and Defendants have filed Motions for Summary
Judgment.  A hearing on the matter was held on March 10, 2011.  For
the reasons set forth below, Plaintiffs' Motion is denied and
Defendants' Motion is granted.

**BACKGROUND**

**A.   Concealed Weapon License Policy**

California law generally prohibits individuals from carrying a concealed firearm in public.[1]  See Cal. Penal Code §§ 12025(a)(2), 12027.  With a permit and for self-defense purposes, one can obtain a license in California to carry a firearm "capable of being concealed upon the person."  Penal Code § 12050(a)(1)(A)(i).  However, applicants for such a license must provide good cause for applying, and demonstrate they are of "good moral character."  Penal Code § 12050(a).  Other requirements include a background check and completion of a training course.  See id.  Beyond these basic requirements, the state grants each municipal or county authority wide latitude to determine both the appropriate criteria for issuing a license and the need to impose any reasonable restrictions on the licensee.  Penal Code § 12050(b).

///
///
///
///
///
///
///

---

[1] However, there are a number of exceptions carved out by the statute.  For example, nothing prevents a person from carrying a weapon, concealed or otherwise, in their home, place of business or on other designated private property.  Penal Code § 12026(a). There are also a number of designated uses for firearms outside the scope of Yolo County's policy and lawful under California law, such as the use of a firearm for hunting or for sport as part of a gun club.  See Penal Code § 12027.

1    Plaintiffs are not challenging the California statute itself[2], but

2    instead challenge Yolo County's interpretation of their statutory

3    authority, namely its Concealed Weapon License Policy.

4         Consistent with the regulations under California Penal Code,

5    Yolo County and Defendant Prieto, as the Sheriff, have created a

6    policy regulating the issuance of concealed weapon licenses to Yolo

7    County residents.  Sheriff Prieto retains "discretion to issue a

8    license to carry a concealed firearm to residents within Yolo

9    County." (See Policy, ECF No. 60-1, at 1.)  The policy, accessible

10   to the public, clearly enumerates the criteria for obtaining the

11   license, and an applicant must, among other things, demonstrate

12   that they have a valid reason to request the permit in the first

13   place. (Id.)  Examples of valid reasons listed in the policy

14   "include, but are not limited to:" credible threats of violence

15   against the applicant, and being a business owner who carries large

16   sums of cash. (Id. at 1-2.)  Examples of invalid reasons include

17   hunting, fishing, or self-defense "without credible threats of

18   violence." (Id. at 2.)  The issuance of a license ultimately bears

19   on whether the "Sheriff or his designee feels there is sufficient

20   reason to grant the license." (Id.)

21   ///

22   _____

23   [2] The State of California and/or its legislature is not a party to
     the action.  Plaintiffs appear to be challenging Defendants'

24   exercise of state law at the local level. (See e.g. Sec. Am.
     Compl., ECF No. 48 (hereinafter, "SAC").)  However, Yolo County's

25   policy derives its authority from the legislature's framework, and
     there is substantial overlap between the policy and California law.

26   In addition, Plaintiffs' Motion for Summary Judgment specifically
     challenges portions of California's Penal Code. (ECF No. 54-1 at

27   21.)  Recognizing the close overlap, this Court interprets
     Plaintiffs' arguments as those ultimately against Defendants, and

28   not the state legislature or, by extension, the California Penal
     Code.

1

2

### B.   Plaintiffs

3

Plaintiffs Second Amendment Foundation, Inc. and The Calguns Foundation, Inc. are non-profit organizations designed to promote the rights of firearm holders, and more generally anti-gun control advocates. (SAC 2.)  Both Plaintiffs Richards and Stewart are members and supporters of both organizations. (Id. at 1.)

In March 2009, Plaintiff Richards contacted the Yolo County Sheriff's office to inquire about the procedure to obtain a permit to carry a handgun.  Defendant was told that he could not obtain a concealed weapon license for self-defense purposes because that would not constitute good cause under the terms of the policy. (Id. at 4.)  In addition, since Plaintiff Richards resides in Davis, the Yolo County Sheriff's office informed him that he would first have to apply for a concealed weapon license from the Chief of Police in the City of Davis. (Id.)

Similarly, in March 2010, Plaintiff Stewart applied for a concealed weapon license from Yolo County, after first being told that Davis police had discontinued issuing Carry Concealed Weapon permits. (Id. at 5.)  On April 27, 2010, Plaintiff Stewart was informed in writing that he was being denied a permit by Yolo County because his application did not "'meet the criteria'" for granting a license, as outlined in the policy. (Id.)

///

///

///

///

///

4

**STANDARD**

The Federal Rules of Civil Procedure[3] provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party.  U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).  Once the moving party meets the requirements of Rule 56 by showing that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

Each party seeking summary judgment bears "the initial responsibility of informing the district court of the basis for its motion."  Celotex, 477 U.S. at 323.  However, genuine factual issues must exist that "can be resolved only by a finder of fact, because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250.

///

---

[3] Unless otherwise noted, all further references to Rule or Rules are to the Federal Rules of Civil Procedure.

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. See T.W. Elec. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-631 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

**ANALYSIS**

**A.   Second Amendment**

    **1.   Heller and the Scope of Protection**

Plaintiffs argue that, by maintaining a policy that deprives Plaintiffs Richards and Stewart of a concealed weapon license, Defendants are infringing on their Second Amendment right to bear arms, as the Yolo County license policy effectively acts as a complete ban on an individual's right to carry.  They challenge the policy both on its face, and as applied.  (See Mot. Summ. J. Hr'g Tr. 9:15-17, March 10, 2011, ECF No. 70.)  Defendants, on the other hand, believe that the Second Amendment has never been interpreted as granting citizens the right to carry a concealed weapon in public, and restrictions on firearm possession has been the status quo in the United States for many years.  Further, Defendants contend that Yolo County's policy does not violate the Second Amendment, because it is not a total ban on the possession of handguns.

///
///
///
///

6

1     The Second Amendment protects an individual's right to "keep
2  and bear arms."  U.S. Const. amend. II.  Rights bestowed under the
3  Second Amendment are "fundamental," and apply "equally to the
4  Federal Government and the States."  McDonald v. City of Chicago,
5  130 S. Ct. 3020, 3050 (2010).  Specifically, the Second Amendment
6  "protects a personal right to keep and bear arms for lawful
7  purposes, most notably for self-defense in the home."  McDonald,
8  130 S. Ct. at 3044.  See also United States v. Heller, 554 U.S.
9  570, 635 (2008) ("the District's ban on handgun possession in the
10  home [for self-defense purposes] violates the Second Amendment.");
11  United States v. Vongxay, 594 F.3d 1111, 1115 (9th Cir. 2010)
12  (explaining the scope of Heller was limited to the right to
13  register and keep a loaded firearm in the home for self-defense).
14     However, as the Supreme Court of the United States recently
15  clarified in a landmark case, the "right secured by the Second
16  Amendment is not unlimited.  From Blackstone through the 19th-
17  century cases, commentators and courts routinely explained that the
18  right was not a right to keep and carry any weapon whatsoever in
19  any manner whatsoever and for whatever purpose."  Heller, 554 U.S.
20  at 626.  In fact, the Court was careful to explain that their
21  decision did not, in any way, invalidate many of the longstanding
22  state and federal prohibitions on firearm possession.
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

1  <u>Id.</u> at 627.[4]   Based upon this, <u>Heller</u> cannot be read to invalidate

2  Yolo County's concealed weapon policy, as the Second Amendment does

3  not create a fundamental right to carry a concealed weapon in

4  public.

5       Furthermore, the policy does not create a total ban on

6  carrying a firearm, such that the policy completely infringes on

7  the rights protected by the Second Amendment.  Since the Supreme

8  Court has yet to articulate the appropriate standard of review, the

9  Ninth Circuit has determined that only regulations that

10  "substantially burden the right to keep and bear arms trigger

11  heightened scrutiny under the Second Amendment." <u>Nordyke v. King</u>,

12  No. 07-15763, 2011 WL 1632063, at *6 (9th Cir. May 2, 2011)

13  (evaluating whether a restriction on gun sales substantially

14  burdens Second Amendment rights).  It then follows that if the

15  regulation does not place a substantial burden to an individual's

16  fundamental right, then rational basis review applies.

17  ///

18

―――――――――――――――――

19  [4] Plaintiffs' implicit argument is that <u>Heller</u> stands for the general right to carry a concealed weapon for self-defense purposes

20  in public.  (<u>See</u> Hr'g Tr. 23:9-13 ("There is a right to keep and bear arms.  Bear arms means to carry them in public.").)  The

21  Supreme Court does explain that the historical inference of the word "bear" should be interpreted to mean that there is a right to

22  carry "upon the person or in the clothing or in a pocket" a "weapon for a particular purpose – confrontation." <u>Id.</u> at 584-85.

23  However, <u>Heller</u>'s ultimate holding is not the Court's interpretation of the historical significance of the Second

24  Amendment's language.  To the contrary, the Court, both in <u>Heller</u>, and subsequently in <u>McDonald</u>, took pain-staking effort to clearly

25  enumerate that the scope of <u>Heller</u> extends only to the right to keep a firearm <u>in the home</u> for self-defense purposes. <u>See</u> <u>supra</u>

26  (emphasis added).  This Court does not infer that <u>Heller</u> grants any right that "extends beyond the home," as Plaintiffs contended

27  during oral argument.  (Hr'g Tr. 11:8-10.)  Courts "often limit the scope of their holdings, as such limitations are integral" to

28  understanding the holdings' reach. <u>Vongxay</u>, 594 F.3d at 1115.

1  <u>Id.</u> at *6 (In "a variety of contexts" the Supreme Court "applies

2  mere rational basis scrutiny to laws that regulate, but do not

3  significantly burden, fundamental rights.").[5]

4      In determining whether government action "substantially

5  burdens" a constitutionally-protected right, courts "typically ask

6  whether the restriction leaves open sufficient alternative avenues"

7  for exercising the right.  <u>Id.</u> at *7-8.  The appropriate inquiry

8  here, under a substantial burden analysis, is whether Yolo County's

9  restrictions leave Plaintiffs with "reasonable alternative means"

10  to obtain and keep a firearm "sufficient for self-defense

11  purposes."  <u>Id.</u> at *7.

12      California Penal Code has carved out a number of exceptions

13  that allow individuals to possess and carry <u>loaded</u> firearms in

14  public settings, including for use in hunting, or in a situation

15  where someone who believes they are in "immediate, grave, danger

16  and that the carrying of the weapon is necessary for the

17  preservation of that person or property."  Penal Code

18  § 12031(j)(1).[6]

19  _____

20  [5] In their Summary Judgment Motion, Plaintiffs interpret <u>Heller</u> to
    mean that rational basis review could not, under any circumstances,
21  be used to evaluate the merits of a policy regulating portions of
    the Second Amendment.  (ECF No. 54-1 at 26.)  Indeed, the Ninth
22  Circuit previously interpreted <u>Heller</u> the same way; namely that
    rational-basis scrutiny would not be appropriate to review Second
23  Amendment restrictions.  <u>See</u> <u>Vongxay</u>, 594 F.3d at 1118 n.5.
    However, earlier this month, the Ninth Circuit read <u>Heller</u> as
24  "insisting that a Second Amendment backed <u>only</u> by rational basis
    review would have 'no effect,'" and heightened scrutiny is only
25  appropriate for claims that substantially burden the right to bear
    and keep arms.  <u>Nordyke</u>, 2011 WL 1632063, at *10 (citing <u>Heller</u>,
26  554 U.S. at 627 n.27) (emphasis added).

27  [6] Immediate is defined as "the brief interval before and after the
    local law enforcement agency, when reasonably possible, has been
28  notified of the danger and before the arrival of its assistance."
    <u>Id.</u>

1  A regulation or policy "does not substantially burden a

2  constitutional right simply because it makes the right...more

3  difficult to exercise."  <u>Nordyke</u>, 2011 WL 1632063, at *8.

4      Under the statutory scheme, even if Plaintiffs are denied a

5  concealed weapon license for self-defense purposes from Yolo

6  County, they are still more than free to keep an unloaded weapon

7  nearby their person, load it, and use it for self-defense in

8  circumstances that may occur in a public setting.  Yolo County's

9  policy does not substantially burden Plaintiffs' right to bear and

10  keep arms.  Therefore, rational basis review applies.

11      A regulation is constitutional under rational basis review if

12  it bears "a reasonable relationship to a legitimate government

13  interest."  <u>United States v. Whitlock</u>, 2011 WL 1651232, at *5 (9th

14  Cir. April 28, 2011) (citing <u>United States v. LeMay</u>, 260 F.3d 1018,

15  1031 (9th Cir. 2001)).  As Defendants contend, regulating concealed

16  firearms is an essential part of Yolo County's efforts to maintain

17  public safety and prevent both gun-related crime and, most

18  importantly, the death of its citizens.  Yolo County's policy is

19  more than rationally related to these legitimate government goals,

20  and Plaintiffs' Motion for Summary Judgment fails as to this

21  portion of their argument.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

10

1        **2.   Defendants' "Good Cause" Discretion**

2

3        Plaintiffs also assert that the portions of Yolo County's

4    concealed weapon license policy evaluating an applicant's good

5    moral character and good cause for seeking a permit, gives the

6    government "unbridled discretion" in violation of the Second

7    Amendment.   In applying traditional First Amendment analysis,

8    Plaintiffs contend the statute is a prior restraint on the freedom

9    to keep and bear arms.   Defendants, in turn, believe any analogy of

10   the Second Amendment to the First is improper because it "ignores

11   the fundamental difference between regulation of speech and guns."

12   (Def's. Mot. for Summ. J. 24, ECF No. 59.)

13       In a facial challenge[7] to a statute outside of the First

14   Amendment context, a plaintiff must demonstrate that "no set of

15   circumstances exists under which" the statute would be valid, "i.e.

16   that the law is unconstitutional in all of its applications."

17   Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442,

18   450 (2008).   See also Hotel & Motel Ass'n. of Oakland v. City of

19   Oakland, 344 F.3d 959, 971 (9th Cir. 2003) ("To bring a successful

20   facial challenge outside the context of the First Amendment, the

21   challenger must establish that no set of circumstances exists under

22   which the statute would be valid." (internal citations omitted));

23   Nordyke, 2011 WL 1632063, at *7 n.11 ("A facial challenge" is "the

24   most difficult challenge to mount successfully.").

25   _____

26   [7] Plaintiffs characterized this portion of their argument as a
     "facial challenge" during oral argument, and the pleadings support
27   such an interpretation. (See Hr'g Tr. 9:15-10:8)  An as-applied
     constitutional challenge to Yolo County's policy was not asserted
28   under the analogous First Amendment analysis.

11

1    Courts are instructed to first determine whether "the

2    enactment reaches a substantial amount of constitutionally

3    protected conduct" by examining "the ambiguous as well as the

4    unambiguous scope of the enactment." Village of Hoffman Estates v.

5    Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494 & n.6 (1982).

6    Such an inquiry must be "examined in the light of the facts of the

7    case at hand," which should ultimately demonstrate that the

8    regulation is patently invalid because "no standard of conduct is

9    specified at all." Id. at 495 n.7 (internal citations omitted).

10   An exception to the rigidity of the facial challenge test

11   exists for issues involving the First Amendment.  A law involving

12   First Amendment protections "may be overturned as impermissibly

13   broad because a substantial number of its applications are

14   unconstitutional, judged in relation to the statute's plainly

15   legitimate sweep." Wash. State Grange, 552 U.S. at 449 n.6

16   (internal citations omitted).  Plaintiffs suggest the Court turn to

17   case precedent established from examining the rights and

18   regulations carved from the First Amendment as a framework for

19   assessing those rights indicated under the Second Amendment.

20   However, Plaintiffs do not address the exception in their papers,

21   but cite cases entrenched in First Amendment constitutional

22   analysis.  The Court sees no reason to analogize rights under the

23   Second Amendment to those under the First, as plenty of case

24   authority exists to provide a clear framework of analysis to facial

25   challenges, without poaching precedent from another Amendment's

26   framework.

27   ///

28   ///

1    Therefore, this Court cannot invalidate the good cause and

2  good moral character portions of Yolo County's policy as

3  unconstitutional on their face.  Plaintiffs cannot demonstrate that

4  there are zero circumstances under which Sheriff Prieto could

5  clearly issue a concealed weapon permit to someone who demonstrates

6  plausible good cause under the terms of the policy, and is also of

7  objective good moral character.  Any inquiry into the facial

8  constitutionality of Yolo County's policy is futile, for it is both

9  "undesirable" and near impossible for the Court to "consider every

10  conceivable situation which might possibly arise in the application

11  of complex and comprehensive legislation." Gonzales v. Carhart,

12  550 U.S. 124, 168 (2007) (internal citations omitted); Nordyke,

13  2011 WL 1632063 at *7.  Facial challenges are also disfavored for

14  many reasons, most notably because they "rest on speculation."

15  Wash. State Grange, 552 U.S. at 450.

16    Moreover, Yolo County's policy does contain a standard of

17  conduct; applicants are clearly instructed to be of good moral

18  character (and submit application documents corroborating such

19  character), and demonstrate good cause for requiring the license.

20  The policy goes further by providing examples of the types of good

21  cause that satisfy the terms of the policy.  While Plaintiffs are

22  entitled to dislike the qualifications and standards created by

23  Sheriff Prieto and Yolo County's policy, they cannot demonstrate

24  that the policy itself is void for facial vagueness.  For each of

25  the above reasons, Plaintiffs' Motion for Summary Judgment on the

26  Second Amendment claim fails and Defendants' Motion for Summary

27  Judgment is granted.

28  ///

13

1    **B.    Equal Protection**

2

3         Plaintiffs insist that Yolo County's concealed weapon license
4    policy is subjective because Sheriff Prieto has discretionary
5    authority to determine what constitutes "good cause."  Plaintiffs
6    also believe the policy is arbitrary and violates Equal Protection
7    because some individuals are granted the right to bear arms for
8    self-defense, while others are not.  Defendants maintain that Yolo
9    County's interest in preventing crime and ensuring public safety
10   merits the policy's language and renders it constitutional.

11        The Equal Protection Clause of the Fourteenth Amendment
12   requires that all "persons similarly situated" be treated the same
13   under the law.  <u>City of Cleburne v. Cleburne Living Center, Inc.</u>,
14   473 U.S. 432, 439 (1985); <u>Freeman v. City of Santa Ana</u>, 68 F.3d
15   1180, 1187 (1995).  Modern equal protection analysis is a two step
16   process: the first step is identifying the classification of
17   groups, namely that a law is "applied in a discriminatory manner or
18   imposes different burdens on different classes of people."  <u>Id.</u>

19        The second step requires the court to "assess the legitimacy
20   of a discriminatory statute under the appropriate level of
21   scrutiny."  <u>Sagana v. Tenorio</u>, 384 F.3d 731, 740 (9th Cir. 2004).
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

14

1  Where an ordinance does not "purposefully operate to the detriment

2  of a suspect class, the only requirement of equal protection is

3  that the ordinance be rationally related to a legitimate

4  governmental interest.  <u>Nordyke</u>, 2011 WL 1632063, at *14 (internal

5  citations omitted).[8]

6      Plaintiffs' equal protection claim fails for two reasons.

7  First, the policy does not treat similarly situated individuals

8  differently.  All law-abiding citizens who apply for a permit are

9  not the same because some can demonstrate they have good cause and

10  are of good moral character, and some cannot.  Second, Defendants'

11  good cause and good character clauses in the policy are clearly

12  rationally related to Yolo County's goals of reducing the incidence

13  of unlawful public shootings, prevent police from safely responding

14  to dangerous situations, generally preventing crime, and ensuring

15  public safety.

16

17                          **CONCLUSION**

18

19      Compared to many of this country's constitutional protections,

20  the scope of rights under the Second Amendment is ambiguous and no

21  doubt subject to change and evolution over time.  Nonetheless, even

22  in light of <u>Heller</u> and <u>McDonald</u>, Yolo County's concealed license

23  policy is constitutionally valid.

24  _____

25  [8] Though the right to keep and bear arms for self-defense is a
   fundamental right, "that right is more appropriately analyzed under
   the Second Amendment.  <u>Id.</u> (citing <u>Albright v. Oliver</u>, 510 U.S.

26  266, 273 (1994) ("Where a particular amendment provides an explicit

27  textual source of constitutional protection against a particular
   sort of government behavior, that Amendment, not the more

28  generalized notion of substantive due process, must be the guide
   for analyzing those claims." (internal citations omitted))).

                              15

1  Plaintiffs' Motion for Summary Judgment (ECF No. 54) is DENIED.

2  Defendants' Cross Motion for Summary Judgment (ECF No. 58) is

3  GRANTED.  The Clerk of Court is accordingly directed to enter

4  judgment in favor of Defendants Yolo County and Yolo County Sheriff

5  Ed Prieto.

6        IT IS SO ORDERED.

7  Dated:  May 13, 2011

8

9                                    _____
                                     MORRISON C. ENGLAND, JR
10                                   UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28